UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD WRIGHT,

                                        Petitioner,

                                                            9:18-cv-1063
v.                                                          (MAD/TWD)

JAMIE LAMANNA, Superintendent; Green
Haven Correctional Facility,

                                        Respondent.
_____

APPEARANCES:                            OF COUNSEL:

RONALD WRIGHT
Petitioner, *pro se*
11-A-3130
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

LETITIA JAMES                           MARGARET A. CIEPRISZ, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, NY 10005

**THÉRÈSE WILEY DANCKS, United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**

        This matter has been referred for a Report and Recommendation by the Hon. Mae A.

D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local

Rule 72.3(c).  Ronald Wright ("Wright" or "Petitioner"), a New York State prisoner proceeding

*pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. No. 1.)

Respondent has answered the petition, and Wright has replied.  (Dkt. Nos. 13-15, 22.)  For

reasons explained below, the Court recommends that the petition be denied and dismissed.

## I.    BACKGROUND/PRIOR PROCEEDINGS

On September 20, 2010, Wright, along with thirty-nine others, was charged in a 195-count indictment as a result of a wiretap and surveillance investigation the Organized Crime Task Force ("OCTF") conducted from April 8 through September 15, 2010, of the "Bloods Drug Distribution Operation," which allegedly trafficked narcotics throughout New York State.  (Dkt. No. 15-1 at 75-131.[1])  In particular, Wright was charged with twenty-eight felonies.  He was charged with enterprise corruption (Count 1) based on his association with and participation in the Bloods Drug Distribution Enterprise.  The indictment alleged twenty-seven pattern criminal acts committed by Wright.  Each pattern act was also charged as a stand-alone felony offense: twenty counts of criminal sale of a controlled substance in the third degree (Counts 90, 92, 93, 95, 97, 99, 101, 103, 104, 106, 108, 110, 113, 115, 117, 118, 121, 123, 125, 127), and one count each of criminal sale of a controlled substance in the second degree (Count 112), attempted murder in the second degree (Count 129), conspiracy in the second degree (Count 194), criminal possession of a controlled substance in the third degree (Count 114), attempted criminal possession of a controlled substance in the third degree (Count 91), criminal possession of a weapon in the third degree (Count 156), and conspiracy in the fourth degree (Count 195).

On September 23, 2010, Wright was arraigned on the charges and entered a plea of not guilty.  (Dkt. No. 15-2 at 7-11.)  On October 25, 2010, Wright rejected the prosecution's proposal that he plead guilty to one count of enterprise corruption in full satisfaction of all charges in return for an indeterminate prison sentence of twelve to twenty-four years.  *Id*. at 13-15.  Subsequently, by Decision and Order dated January 11, 2011, the court partially granted Wright's omnibus motion and dismissed Count 156, the weapons possession count.  (Dkt. No.

---

[1]  Citations to filings refer to the pagination CM/ECF automatically generates.

15-1 at 279-82.)  Thereafter, Wright's counsel sought to withdraw from her representation due to conflicts of interest.  (Dkt. No. 15-2 at 20-23.)  On March 23, 2011, the court assigned replacement counsel for Wright.  *Id*. at 25-28.

On May 20, 2011, during a conference to address any remaining issues in advance of trial, the prosecution moved to dismiss one count of third degree criminal sale (Count 113) on venue grounds, which was granted.  *Id*. at 59-60.

Wright and codefendant Eric Cochran (aka "E-Murder") were jointly tried in Albany County Court from May 23 through June 7, 2011.  *Id*. at 72-1810.  The People alleged that Wright, who was based in Long Island, was a heroin supplier for members of the Bloods gang, including Cochran, who shared the common purpose of selling narcotics, which were then sold to individuals in the Albany area.

During its case-in-chief, the prosecution presented approximately 200 intercepted telephone and text conversations, which were obtained pursuant to an eavesdropping warrant. Dennis Guiry, the lead OCTF investigator, testified about the purpose, structure, and hierarchy of the Bloods gang, the business of narcotics trafficking, the investigation, and interpreted many of the intercepted telephone calls and text messages admitted into evidence.  Numerous other law enforcement witnesses testified as to their physical surveillance, seizure of heroin from Cochran's residence, and the shooting of Myles Jackson, a Bloods gang member suspected of being an informant.  Four lay witnesses also testified pursuant to cooperating witness agreements: Benjamin Brook and Jason Lance, two of Cochran's heroin customers; Rachel Gagliardi, Cochran's girlfriend, and Ashlie Hudson, an acquaintance of Cochran.

At the close of the People's case, Wright sought a trial order of dismissal on the ground that the evidence was legally insufficient as to all counts against him.  *Id*. at 1438; *see also id.* at 1474-75.

With respect to Count 90, selling heroin to Cochran on July 6, 2010, Wright argued that the People had produced no proof "that any drugs were actually sold" or "that [defendant] had the ability . . . to complete the transaction. "  *Id*. at 1438-39.  Similarly, with respect to Count 91, attempting to possess heroin with intent to sell it on July 6, 2010, Wright claimed an absence of proof "that [defendant] himself actually possessed the drugs."  *Id*. at 1439.

As to Count 92, 93, 95, 97, 99, 101, 103, 104, 106, 108, and 110, selling heroin to Lance, Brooke, and others on various dates, Wright maintained that there was no proof "that [he] in any way acted in concert to consummate th[ese] sale[s]."  *Id*. at 1440-41.

Wright sought dismissal of Count 112, selling at least ½ ounce of heroin to Cochran on July 12, 2010, arguing that there was insufficient proof of an "offer" or "agreement" to sell and there were "[n]o drugs . . . produced here that were actually transferred."  *Id*. at 1441-42.  With respect to Count 114, possessing heroin with intent to sell it on July 13, 2010, Wright argued that, apart from telephone calls, there was no proof "that anyone possessed heroin."  *Id*. at 1442-43.

As to Counts 115, 117, 118, 121, 123, 125 and 127, selling heroin to Brooke and Baxter on various dates, Wright contended there was no proof "that the heroin alleged to have come from [Wright] or a third party, even, ever made its way through [ ] E-Murder to any of those . . . buyers."  *Id.* at 1443-44.

Wright sought dismissal of Count 129, attempted murder in the second degree, arguing the lack of proof and emphasizing that the gun had been found on another individual and it was undisputed that Wright was not the shooter of Myles Jackson. *Id*. at 1444-45.

With respect to Count 194, conspiracy to commit a class A felony, Wright maintained the People had failed to prove "that a Class A felony has been committed and that he conspired with E-Murder to do that." *Id*. at 1445-46.

Lastly, as to Count 1, enterprise corruption, Wright argued the People had not established "a pattern of criminal activity," as opposed to "isolated incidents," or that Wright was "part of this criminal enterprise. " *Id*. at 1446-47.

The trial court granted the motion as to Count 195, fourth degree conspiracy, and denied the motion as to all other counts. *Id*. at 1437-38. The court observed that the proof was sufficient to create an issue of fact for the jury as to whether Wright acted in concert with Cochran in selling heroin. *Id*. at 1448. In regard to Count 112, the court observed that defendant's conversations with Cochran were "clearly" legally sufficient evidence of "an agreement to sell." *Id*.

Neither Wright or Cochran called any witnesses, nor did they testify on their own behalf. *Id*. at 1475.

During the charge conference, the court, *inter alia*, denied Wright's request for an agency instruction with respect to the sale charges contained in Counts 90 and 112. *Id*. at 1467-68.

The jury found Wright and Cochran guilty of numerous crimes. Specifically, the jury acquitted Wright of Count 129, attempted murder in the second degree, and Counts 92 and 103,

third degree criminal sale, and convicted him on all other counts.  *Id*. at 1752-99.[2]  On July 5, 2011, the trial court sentenced Wright, as a second felony offender, to an aggregate term of 141 ½ years' imprisonment, together with post-release supervision.  *Id*. at 1812-19.

Through new counsel, Wright appealed arguing that: (1) his convictions were unsupported by legally sufficient evidence and were against the weight of the evidence; (2) the trial court erred in denying his request for a jury instruction on the agency defense; (3) he was denied the constitutional right to the effective assistance of counsel; and (4) his sentence was harsh and excessive and was imposed in retaliation for his exercise of his constitutional right to a trial.  (Dkt. No. 15-1 at 1-68.)  Wright also filed a *pro se* direct appeal brief in which he contended that: (1) the trial court's jury instruction on enterprise corruption constructively amended the indictment; (2) the prosecutor's redaction of the indictment violated his constitutional rights; and (3) trial counsel was ineffective for failing to object to the enterprise corruption instruction and to the prosecutor's redaction of the indictment.  (Dkt. No. 15-1 at 502-17.)

The Appellate Division of the New York Supreme Court modified Petitioner's judgment by reversing his convictions of second degree criminal sale of a controlled substance, Count 112, and second degree conspiracy, Count 194, on sufficiency of the evidence grounds in a reasoned decision issued on May 5, 2016.  *People v. Wright*, 31 N.Y.S.3d 633 (N.Y. App. Div. 2016). The Appellate Division further held that Petitioner's sentence, subject to the 30-year sentencing cap given the reversal of his conviction for second degree criminal sale of a controlled substance,

---

[2]  Cochran was also found guilty of enterprise corruption and numerous other charges.  He received a statutorily-capped sentence of thirty years' imprisonment pursuant to N.Y. Penal Law § 70.30(1)(e).  *People v. Cochran*, 34 N.Y.S.3d 189 (N.Y. App. Div. 2016).

was neither harsh nor excessive.  The Appellate Division otherwise unanimously affirmed the judgment of conviction.

Wright sought leave to appeal to the New York Court of Appeals arguing: (1) the evidence supporting his drug conviction was legally insufficient because it consisted almost entirely of intercepted communications and no drugs had been recovered and tested; and (2) the prosecution presented insufficient evidence to convict him of enterprise corruption.  (Dkt. No. 15-2 at 663-67).  The Court of Appeals denied leave to appeal, but granted leave to renew the application after the court issued a decision in an unrelated pending case, *People v. Whitehead*. *Id*. at 670.  Wright's renewed leave application was summarily denied by the Court of Appeals on June 12, 2017.  *Id*. at 671-73, 676.  This action followed.  (Dkt. No. 1.)

## II.    GROUNDS RAISED

Petitioner raises three grounds for habeas relief: (1) his convictions were based on legally insufficient evidence and were against the weight of the evidence (*id*. at 4-7); (2) the trial court erred in refusing to give a jury instruction on agency (*id*. at 8); and (3) his trial counsel was ineffective (a) for failing to request a geographic jury instruction and (b) not moving to suppress wiretap evidence (*id*. at 9-11).

## III.   LEGAL STANDARDS FOR HABEAS RELIEF

### A.    Exhaustion of State Court Remedies

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state courts.  *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must exhaust[ ] the remedies available in the courts of the State.") (internal quotation marks omitted).  "The exhaustion requirement 'is principally designed to protect the state courts' role in the

enforcement of federal law and prevent disruption of state judicial proceedings." *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Proper exhaustion has both a procedural and a substantive component. *Trimm v. Sheahan*, No. 14-CV-905, 2014 WL 3670723, at *1 (N.D.N.Y. July 23, 2014). Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *Rose*, 455 U.S. at 520. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unexhausted claims are generally barred from habeas review by the rules concerning procedural default. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

### B.    Procedural Default

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753. Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility

of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

### C.    Standard of Review of State Court Decisions

Assuming a petitioner can successfully navigate his or her claims through the maze of rules governing exhaustion and procedural default, those claims are reviewed under the standard laid out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d). Under the AEDPA, a federal court may grant habeas relief with respect to a charge adjudicated on the merits in state court only if, based upon the record before the state court, the

state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 409-10 (2000). A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08. A petitioner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington*, 562 U.S. at 102).

Additionally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny

relief." *Harrington*, 562 U.S. at 98.  In those cases, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.* at 102; *see also Shinn v. Kayer*, ––– U.S. ––––, 141 S. Ct. 517, 524 (2020) ("[W]e must determine what arguments or theories . . . could have supported the state court's determination . . . .  Then, we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories") (internal quotation marks omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).  In so doing, the Court presumes the state court decided the claim on the merits and the decision rested on federal grounds.  *See Coleman*, 501 U.S. at 740; *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez*, 458 F.3d at 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama*, 235 F.3d at 810-11 (same).

## IV.    DISCUSSION

### A.    Legal Sufficiency and Weight of the Evidence (Ground 1)

Wright first argues, as he did on direct appeal, that the verdict was against the weight of the evidence and unsupported by legally sufficient evidence.  (Dk. No. 1 at 4-7; *see also* Dkt. No. 22 at 18-29.)  Generally, with respect to his drug convictions, Wright argues there was no proof that the substance he supplied to Cochran was heroin because "there was no heroin analyzed" and the evidence failed to establish that Wright supplied the heroin to Cochran.  (Dkt. No. 1 at 4-6.)  With respect to his enterprise conviction, Wright argues the evidence failed to establish a connection between him and the criminal enterprise, the Bloods Drug Distribution Enterprise. *Id*. at 6-7.  Respondent argues Petitioner's challenge to the legal sufficiently of the evidence is partially barred from habeas review on an adequate and independent state law ground, partially unexhausted, and entirely without merit.  (Dkt. No. 13 at 31-45.)  Respondent further contends Petitioner's weight of the evidence claim is not cognizable on habeas review.  *Id*. at 45-46.

### 1.    Weight of the Evidence

As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review.  *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011).  "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available."  *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).  "A weight of the evidence argument is a pure state law claim grounded in [New York Criminal Procedure law ("CPL")] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the

evidence determinations." *Id.* (citation and internal quotation marks omitted). Therefore, the Court recommends denying Wright's weight of the evidence claim on that basis.

### 2.    Sufficiency of the Evidence

A convicted defendant seeking federal habeas review for sufficiency of evidence to support his conviction bears a heavy burden, given the considerable deference owed to a jury's verdict at both the state and federal levels. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam); *Fama*, 235 F.3d at 811 (2d Cir. 2000); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994). A petitioner invoking this ground is entitled to relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Coleman*, 566 U.S. at 651; *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam).

When making its analysis concerning sufficiency of the evidence, a court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.3d at 811. This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

In response to a habeas petition, a federal court may overturn a state appellate court's finding of evidence sufficiency only if, when judged against this standard, the decision was objectively unreasonable, even though if considering the matter *de novo* the federal court may have reached a different result. *Coleman*, 566 U.S. at 651; *Garbutt v. Conway*, 668 F.3d 79, 81 (2d Cir. 2012) (a legal sufficiency claim on federal habeas review is "doubly deferential"). Thus, where the state courts have denied on the merits a petitioner's legal sufficiency claim, a district court "may not grant the writ unless [it] conclude[s] that no reasonable court could have held that

any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt*, 668 F.3d at 82.

> i.    *Legal Sufficiency of the Drug Convictions*

Respondent first argues Petitioner's legal sufficiency claim as to his convictions for seventeen counts of third degree criminal sale is procedurally barred by an independent state law ground.  (Dkt. No. 13 at 32-34.)  The Court agrees.

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim."  *Harris*, 489 U.S. at 262.  Moreover, and contrary to Petitioner's assertion (*see* Dkt. No. 22 at 25), if a state court explicitly finds that a petitioner failed to preserve an argument for appellate review, but alternatively, or "in any event," rules the argument is without merit, the procedural bar still applies.  *Fama*, 235 F.3d at 810 n.4.

Under New York Law, challenges to the sufficiency of the evidence must be properly preserved for appellate review.  *People v. Hawkins*, 872 N.Y.S.2d 395, 399 (N.Y. 2008) ("To preserve for [ ] review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged[.]" (citing, *inter alia*, *People v. Gray*, 86 N.Y.3d 10, 19 (N.Y. 1995))).  Pursuant to New York's contemporaneous objection rule, CPL § 470.05(2),[3] which has long been an "adequate and independent ground" that bars federal habeas review, *Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011), "appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings."  *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

---

[3] CPL § 470.05(2) is variously referred to as New York's "contemporaneous objection rule" or "preservation rule."

Here, the Appellate Division rejected Petitioner's sufficiency of the evidence challenge as to his seventeen convictions for criminal sale of a controlled substance in the third degree due to his failure to preserve it. *Wright*, 31 N.Y.S3d at 637-38. Specifically, the Appellate Division stated that with respect to the legal sufficiency of his drug convictions, Petitioner "preserved this contention at trial with the requisite 'specifically directed' argument *only* as to the criminal possession and attempted criminal possession charges (*People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 [1995] [internal quotation marks omitted])." *Id.* at 637 (emphasis added). As the record supports that defense counsel did not raise this particular contention before the trial court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and Petitioner's claim must be denied on that basis.[4]

This bar to federal review may be lifted, however, if Petitioner can show cause for the default and resulting prejudice, or that the failure to review the claim will result in a "miscarriage of justice," i.e., that he is actually innocent. *House*, 547 U.S. at 536-39; *Maples*, 132 S. Ct. at 922, *Schlup*, 513 U.S. at 327. To establish cause, Petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples*, 132 S. Ct. at 922.

---

[4] Petitioner has not argued the Appellate Division's application of the preservation rule was inadequate to preclude federal habeas review. Nor does the Court find anything in this record to conclude that the Appellate Division's application of the preservation rule in this case was an "exorbitant misapplication" that does not serve a "legitimate state interest." *Downs*, 657 F.3d at 102 (citing *Walker v. Martin*, 562 U.S. 307 (2011); *Lee v. Kemna*, 534 U.S. 362 (2002)); *see also Green v. Haggett*, No. 13-CV-0016, 2014 WL 3778587, at *5 (N.D.N.Y. July 31, 2014) (listing New York cases applying the preservation rule to parties arguing on appeal that the evidence was legally insufficient).

Here, Petitioner has not alleged or shown cause for the default of his sufficiency claim as to the seventeen convictions of third degree criminal sale of a controlled substance. (*See* Dkt. No. 22 at 26-29.) The Court notes that although Petitioner raises an ineffective assistance of counsel claim in his habeas petition, he does not identify his trial counsel's failure to preserve this aspect of his sufficiency claim as a basis for that claim. (Dkt. No. 1 at 9-11.) Furthermore, as discussed below, Petitioner's ineffective assistance of trial counsel claim is without merit, and therefore does not serve as "cause" for a procedural default.[5] *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Therefore, having failed to raise or demonstrate cause, the Court need not decide whether Petitioner suffered actual prejudice. *Id*. at 495-96.

Additionally, on the record before the Court, there is no basis to conclude that the failure to consider the merits of Petitioner's procedurally defaulted claims would result in a fundamental miscarriage of justice. (*See* Dkt. No. 22 at 26-29.) Petitioner has not produced any new evidence that he is actually innocent. *Schlup*, 513 U.S. at 324; *Whitley*, 317 F.3d at 225. To the contrary, Petitioner's argument is that the "the evidence [at trial] simply was not sufficient." (Dkt. No. 22 at 26-29.)

Accordingly, the procedural default bars federal review of Petitioner's legal sufficiency claim as to the seventeen convictions of third degree sale of a controlled substance.[6] *House*, 547

---

[5] The ineffectiveness of counsel for not preserving a claim in state court may be sufficient to show cause for a procedural default, but only when counsel's performance was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

[6] In any event, the Court notes the Appellate Division considered "the evidence adduced as to each of the elements of the challenged crimes" for which Petitioner was convicted because he also raised a state-law weight of the evidence claim which, unlike sufficiency of the evidence, did not require preservation. *Wright*, 31 N.Y.S.3d at 638; *see also Parker v. Ercole*, 666 F.3d 8309, 833-34 (2d Cir. 2012) (sufficiency claim procedurally barred where state court held it was unpreserved, even though "to the extent the Appellate Division decided that [petitioner's]

U.S. at 536-39; *Schlup*, 513 U.S. at 327.  The Court recommends the Petition be denied and dismissed on this ground.

Respondent next argues Petitioner did not exhaust one aspect of his legal sufficiency challenge to his drug convictions: that he supplied heroin to Cochran on July 6 and July 15, 2010.  (Dkt. No. 13 at 34.)  The Court agrees.

As set forth above, in his application for leave to appeal to the New York Court of Appeals, Wright only argued that the evidence supporting his drug convictions was insufficient because it was "based almost entirely upon intercepted electronic communications and lacking actual narcotics for testing and weighing . . . ." (Dkt. No. 15-1 at 665-66.)  Thus, Wright's failure to raise the claim the evidence was insufficient to show that he was Cochran's supplier in his leave application renders this claim unexhausted.  Petitioner cannot now exhaust this claim because he had the one leave application to which he was entitled, and CPL § 440.10(2)(c) bars him from raising a record-based claim in a post-conviction motion.  Consequently, this aspect of his legal sufficiency claim is procedurally barred from habeas review.

Here, as set forth above, Petitioner does not identify any cause for his default and having failed to raise or demonstrate cause, the Court need not decide whether Petitioner suffered actual prejudice.  *Murray*, 477 U.S. at 488-89.  Nor is there any basis to conclude that the failure to consider the merits of Petitioner's claim would result in a fundamental miscarriage of justice.

---

conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict").  As set forth in Part IV.A.2, *supra*, Petitioner's weight of the evidence claim is not cognizable on federal habeas review.  However, inasmuch as the Appellate Division ruled that the elements of each crime was proven, that ruling was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Jackson*, 443 U.S. at 324.

*House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327.  Therefore, this aspect of Petitioner's legal

sufficiency claim is partially procedurally defaulted and cannot be a basis for habeas relief.

Accordingly, the Court recommends denying Wright's sufficiency of the evidence claim

on that basis.

Lastly, Respondent contends Petitioner's sufficiency of the evidence of his drug

convictions is meritless.  (Dkt. No. 15 at 35-42.)  This Court agrees.  As set forth above,

Petitioner challenges the sufficiency of the evidence of his drug convictions on two grounds: (1)

proof that the substance he supplied to Cochran was heroin was absent because "there was no

heroin analyzed"; and (2) the evidence failed to established that Wright supplied the heroin to

Cochran.  (Dkt. No. 1 at 5-6.)  The Appellate Division rejected this argument:

> As for the merits, the People are not required to recover drugs for
> testing in order to prove possession or sale of a controlled
> substance; rather, they may rely on other evidence that establishes
> the nature of the drugs in question beyond a reasonable doubt (*see
> People v. Whitehead*, 130 A.D.3d 1142, 1144–1145, 13 N.Y.S.3d
> 642 [2015], *lv. granted* 26 N.Y.3d 1043, 22 N.Y.S.3d 173, 43
> N.E.3d 383 [2015]).  Here, Guiry testified that Cochran and
> defendant used slang terms for heroin in the intercepted
> communications, negotiated prices that corresponded with the
> going prices for heroin, arranged to obtain a cutting agent used
> only with heroin, and referenced packaging methods used solely
> for that drug.  Additionally, two customers who bought drugs from
> Cochran immediately after his transactions with defendant—both
> of whom were experienced users of heroin and other drugs—
> testified that the substance they purchased was heroin.  Finally, lab
> analysis of a substance seized from one of the customers
> immediately after he purchased it confirmed that it was heroin.
> Accordingly, the People proved beyond a reasonable doubt that the
> substance possessed and sold by Cochran and defendant was
> heroin (*see People v. Williams*, 138 A.D.3d 1233, 1234, 29
> N.Y.S.3d 647 [2016]; *People v. Whitehead*, 130 A.D.3d at 1145,
> 13 N.Y.S.3d 642).

*Wright*, 31 N.Y.S.3d at 638 (unaltered text).  As pointed out by Respondent, there is no

categorical rule under New York law, much less Supreme Court law, that evidence of drug sale

or possession cannot be legally sufficient in the absence of direct evidence in the form of

recovered drugs.  (Dkt. No. 13 at 37-38 (citing *People v. Whitehead*, 29 N.Y.3d 956, 958 (N.Y.

2017), *People v. Samuels*, 99 N.Y.2d 20, 24 (N.Y. 2002)).  Indeed, the Supreme Court "ha[s]

never questioned the sufficiency of circumstantial evidence in support of a criminal conviction,

even though proof beyond a reasonable doubt is required."  *Desert Palace, Inc. v. Costa*, 539

U.S. 90, 100 (2003).  The *Jackson* standard may be satisfied "entirely by circumstantial

evidence," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996), including where the question is

whether the defendant was dealing narcotics, *see United States v. Sureff*, 15 F.3d 225, 228 (2d

Cir. 1994).

Although it might have been possible to draw a different inference from the evidence,

this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S.

at 326.  As set forth above, Wright bears the burden of establishing by clear and convincing

evidence that these factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  He has failed to

carry such burden.  The record does not compel the conclusion that no rational trier of fact could

have found proof that Wright was guilty of the crime of criminal sale of a controlled substance,

especially considering the double deference owed under *Jackson* and the AEDPA.

Thus, the Court is satisfied the Appellate Division's ruling was neither contrary to, nor an

unreasonable application of, clearly established federal law, nor was it an unreasonable

determination of the facts in light of the entire record.  (*See* Dkt. No. 13 at 38-42.)

Accordingly, in light of the foregoing, the Court recommends that Wright's petition be

denied and dismissed on this ground.

<em>ii.    Legal Sufficiency of Enterprise Conviction</em>

Wright next argues that the prosecution failed to establish a connection between him and the criminal enterprise, the Bloods Drug Distribution Enterprise.  (Dkt. No. 1 at 6-7.)  Respondent argues this claim is meritless because the prosecution proved both the existence of the enterprise and Petitioner's knowing participation in it.  (Dkt. No. 13 at 42-45.)  The Court agrees with Respondent.

The crime of enterprise corruption is committed when a defendant, "having knowledge of the existence of a criminal enterprise and the nature of its activities, and being employed by or associated with such enterprise, . . . intentionally conducts or participates in the affairs of an enterprise by participating in a pattern of criminal activity."  N.Y. Penal Law § 460.20(1)(a).  A criminal enterprise, in turn, is "a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents."  Penal Law § 460.10(3)).

In support of his claim, Wright avers that the People failed to present <em>any</em> information or evidence that connected him to the enterprise.  (Dkt. No. 1 at 6, emphasis added.)  Specifically, he argues "none of the surveillance captured recorded Petitioner participating in any activity with this enterprise: Petitioner never attended any meetings; or communicated with any of the leaders."  <em>Id</em>. at 6-7.  Wright points out that the "only person that the investigation had petitioner communicating with is Cochran during the three week period in July 2010."  <em>Id</em>. at 7.  The Appellate Division rejected this claim on the merits, stating:

> The People submitted proof of the activities and organizational structure of "G-Shine," a sect of the Bloods street gang that was engaged in the common purpose of making money through narcotics trafficking in and around Albany.  Guiry described the

20

> customs, rules and organizational structure of the Albany group as
> revealed in intercepted communications among its members,
> including particular speech patterns, the use of the color red for
> identification, initiation requirements, a loyalty oath, scheduled
> meetings, and rules such as prohibitions against cooperation with
> law enforcement.  Members of the Albany group had specialized
> functions in supplying and selling various drugs and obtaining
> customers, and certain members occupied leadership roles with the
> authority to schedule meetings, enforce rules and punish violations.
> This evidence established the existence of a distinct criminal entity
> with an ascertainable structure that went beyond "mere[ ] patterns
> of criminal conduct" (*People v. Western Express Intl., Inc.*, 19
> N.Y.3d 652, 658, 954 N.Y.S.2d 763, 978 N.E.2d 1231 [2012]).

*Wright*, 31 N.Y.S.3d at 638-39 (unaltered text, alterations in original). The Appellate Division

continued:

> Although defendant was not based in the Albany area and did not
> attend the Albany group's meetings, the People nevertheless
> established his participation with evidence that, among other
> things, he interacted with Cochran and other group members in
> drug-trafficking activities, regularly used slang terms indicating his
> membership in the Bloods street gang, and was knowledgeable
> about the group's structure and leadership.  In the intercepted calls,
> defendant referred to himself as a "Big Homie"—a term that,
> according to Guiry, means a boss within the rank structure of the
> Bloods; he further stated that it was his "job" to enforce the rule
> against cooperating with law enforcement and that he had the
> authority to kill other Bloods.
>
> When one of the Albany group's leaders was shot in what the
> People alleged was retaliation for his suspected cooperation with
> law enforcement, someone who was involved in the shooting
> immediately reported it to defendant, who, in turn, discussed the
> ramifications of the shooting upon the Albany group's leadership
> structure with Cochran.  In other conversations, defendant and
> Cochran discussed the evidence that this individual had been
> cooperating with law enforcement, as well as the effect upon the
> Albany group of another group leader's arrest.  Guiry further
> described a call between defendant and another member of the
> Bloods who was allegedly a cocaine supplier for the Albany group,
> in which defendant told this individual that his suspected activities
> as a "snitch" had interfered with a drug transaction that defendant
> had authorized, reminded the individual of the prohibition against

> cooperating with law enforcement and warned that violations were
> "serious s* * *."
>
> This evidence, as well as the previously-discussed evidence that
> defendant supplied narcotics to Albany group members for resale
> in the Albany area, was legally sufficient to establish defendant's
> knowing and intentional participation in a criminal enterprise and
> thus to support his conviction for enterprise corruption (*see* Penal
> Law § 460.20[1][a]; *People v. Keschner*, 25 N.Y.3d 704, 720-721,
> 16 N.Y.S.3d 187, 37 N.E.3d 690 [2015]; *People v. Kancharla*, 23
> N.Y.3d 294, 305–306, 991 N.Y.S.2d 1, 14 N.E.3d 354 [2014]).

*Id*. at 639 (unaltered text but footnote omitted).

Here, Wright bears the burden of establishing by clear and convincing evidence that these

factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  He has failed to carry such burden.

The record does not compel the conclusion that no rational trier of fact could have found proof

that Wright committed the charged offense, especially considering the double deference owed

under *Jackson* and the AEDPA.  The evidence and testimony against Wright was more than

sufficient to satisfy the *Jackson* standard.  Wright therefore cannot prevail on his insufficiency of

the evidence claim.

After careful consideration, the Court is satisfied that the Appellate Division's ruling was

neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it

an unreasonable determination of the facts.  Therefore, the Court recommends habeas relief be

denied on this ground.

### B.    Jury Instruction on the Agency Defense (Ground 2)

Wright next avers that he was denied due process when the trial court refused his request

for a jury instruction on the defense of agency.  (Dkt. No. 1 at 8; Dkt. No. 22 at 30-37.)

According to Wright, "[t]he evidence shows that Petitioner neither solicited nor initiated

Cochran's efforts to obtain narcotics.  The evidence shows that Cochran contacted Petitioner to

allegedly purchase heroin [and that] Petitioner simply relayed purported prices, amounts and form of substance available from potential sources."  (Dkt. No. 1 at 8.)  In his traverse, Wright further explains:

> As to the agency defense, [the prosecution] stated that there were numerous calls where there was discussion about how much money Mr. Wright was going to make out of each particular transaction.  In fact, there were no phone calls where any discussion or statement was made that shows where Petitioner was to profit off of any alleged transactions.  Indeed, there was no proof of any profit made by Petitioner.

(Dkt. No. 22 at 5.)

The adequacy of a state court's jury instructions is generally a matter of state law.  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Habeas relief requires a petitioner to base his claims on a violation of the federal Constitution, and Petitioner must therefore show that the trial court's failure to give a certain jury instruction violated a right guaranteed to him by the Fourteenth Amendment.  *Id*. at 146.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Lanza v. Lewin*, No. 9:04-CV-0678 (LEK), 2008 WL 4104454, at *16 (N.D.N.Y. Sept. 3, 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (other citation omitted)).  A habeas petitioner carries an "especially heavy" burden in order to succeed on a claim that a jury instruction was erroneously refused because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at 155; *see Carroll v. Hoke*, 695 F. Supp. 1435, 1437 (E.D.N.Y. 1988) (noting that standard on habeas review is particularly rigid where claim of prejudice stems from failure to give an instruction), *aff'd*, 880 F.2d 1318 (2d Cir. 1989).

With regard to a claim of a refusal to instruct, the Second Circuit has established that a habeas petition under 28 U.S.C. § 2254 is warranted only when a petitioner satisfies three requirements. *See Harris v. Alexander*, 548 F.3d 200, 203 (2d Cir. 2008); *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (citing *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001)). First, the petitioner must show that he "was erroneously deprived of a jury instruction to which he was entitled under state law." *Jackson*, 404 F.3d at 621 (quoting *Strack*, 270 F.3d at 123). Second, the petitioner must demonstrate that the omitted instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp*, 414 U.S. at 147 (1973)). In other words, an erroneous jury instruction under state law, without a due process violation, "is not a basis for habeas relief." *Id*. at 71-72. Finally, the petitioner must show that the relevant state appellate court's affirmance of his conviction in spite of the trial court's refusal to instruct the jury constituted an objectively unreasonable application of the Supreme Court's rulings on due process. *See Harris*, 548 F.3d at 203 (citing *Strack*, 270 F.3d at 124).

When deciding whether the evidence requires a jury instruction under state law, district courts must defer to state court interpretations of its own laws as long as the state court's interpretation is constitutional. *Davis*, 270 F.3d at 123 n.4. To find that the failure to give a jury instruction on a particular defense violated a petitioner's due process rights, "a court must first find that the habeas petitioner was 'erroneously deprived of a jury instruction to which he was entitled under state law.'" *Graham v. Lape*, 476 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (quoting *Davis*, 270 F.3d at 123). This occurs when the denial of the charge was "sufficiently harmful to make the conviction unfair." *Jackson*, 404 F.3d at 624 (quoting *Cupp*, 414 U.S. at 147). Of

course, where a proposed jury instruction is not supported by the evidence, due process does not require that it be given. *See Blazic v. Hendeson*, 900 F.2d 534, 541 (2d Cir. 1990).

Here, as Respondent correctly points out, and contrary to Wright's assertion in his reply, Petitioner's jury charge claim is unexhausted. (Dkt. No. 13 at 46-51; Dkt. No. 22 at 35.) First, although Wright raised his jury charge claim on direct appeal, he did not do so in federal terms; rather, he only aruged that the failure to give the agency defense instruction violated state law. (*See* Dkt. No. 15-1 at 47-50.) Thus, Wright did not "fairly present" his due process claim in state court, and it is unexhausted. *See Baldwin*, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

Second, Petitioner failed to raise his jury charge claim at all in his application for leave to appeal to the Court of Appeals. (Dkt. No. 15-1 at 663-67, 671-73.[7]) *See Boerckel*, 526 U.S. at 845 (holding a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Adsit v. Annucci*, No. 16-CV-0817, 2018 WL 1175090, at *7 (N.D.N.Y. Jan. 11, 2018) (explaining that any claims that were presented to the Appellate Division but omitted from the leave application were considered abandoned for exhaustion purposes); *see also Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000) ("[c]ounsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly

---

[7] Petitioner's assertion that this claim is exhausted because Respondent also addresses the merits is misplaced. (*See* Dkt. No. 22 at 35-37.) *See Davila v. Davis*, —— U.S. ——, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

pointed out in the application for leave."). As such, Petitioner did not "fairly present" his federal due process claim in each appropriate state court (including a state supreme court with powers of discretionary review), and it is unexhausted.

Further, the claim is procedurally defaulted because Petitioner can no longer raise it in any state forum. Petitioner already utilized the direct appeal to which he is entitled and, because the claim was reviewable from the record, he cannot raise it in a motion to vacate the judgment. *See Grey*, 933 F.2d at 120-21 (explaining that where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, the "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements . . ."); *see also Aparicio*, 269 F.3d at 91.

As set forth above, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or shows that the denial of habeas relief would result in a fundamental miscarriage of justice. *House*, 547 U.S. 518, 536–39 (2006); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Here, Petitioner does not identify any cause for his default, and he does not argue that he is actually innocent. Because cause was not established, no discussion of prejudice is necessary. Thus, there is nothing that can save Petitioner's procedurally defaulted claim, and habeas relief is precluded.

Traditionally, a mixed petition that contains both exhausted and unexhausted claims, is dismissed without prejudice to refiling another federal habeas corpus action after all claims have been exhausted. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000). However, the Court is empowered to consider whether the unexhausted claims are unquestionably meritless and dismiss the petition with prejudice. *See Flores v. Officer in Charge, Buffalo Fed. Det. Facility*, No. 11 CIV. 7977 RA, 2014 WL 1568843, at *2 (S.D.N.Y. Apr. 17, 2014); *Keating v. New York*,

708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010) (collecting cases); *Rowe v. New York*, No. 99 CIV 12281 GEL, 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002) (citation omitted).

Here, even if Petitioner's jury charge claim was properly exhausted, and/or if he could show cause for his default, the Court agrees with Respondent that the claim lacks merit.  (*See* Dkt. No.13 at 47-51.)  Petitioner has failed to establish a violation of his federal constitutional rights and, as the Appellate Division found, the trial court "did not err in refusing defendant's request for an instruction regarding an agency defense, as there was no 'evidence, however slight, to support the inference that [defendant] was acting, in effect, as an extension of the buyer' (*People v. Argibay*, 45 N.Y.2d 45, 55, 407 N.Y.S.2d 664, 379 N.E.2d 191 [1978], *cert. denied* 439 U.S. 930, 99 S.Ct. 317, 58 L.Ed.2d 323 [1978]; *see People v. Ortiz*, 76 N.Y.2d 446, 448, 560 N.Y.S.2d 186, 560 N.E.2d 162 [1990]; *People v. Nowlan*, 130 A.D.3d 1146, 1147, 13 N.Y.S.3d 646 [2015])."  *Wright*, 31 N.Y.S.3d at 639-40 (unaltered text).

Under New York law, the "agency defense" provides that "[o]ne who acts solely as the agent of his buyer cannot be convicted of the crime of selling narcotics."  *People v. Chong*, 45 N.Y.2d 64, 73, 407 N.Y.S.2d 674, 379 N.E.2d 200 (1978) (quoting *People v. Branch*, 13 A.D.2d 714, 213 N.Y.S.2d 535 (N.Y. App. Div. 1961)).  "[T]he underlying theory of the agency defense in drug cases is that one who acts as procuring agent for the buyer alone is a principal or conspirator in the purchase rather than the sale of the contraband."  *People v. Roche*, 45 N.Y.2d 78, 82, 407 N.Y.S.2d 682, 379 N.E.2d 208 (1978).  To be considered an agent, "a narcotics merchant must be a mere extension of the buyer"; that is, "[h]e may act to procure what the buyer wants because the buyer has asked him to do so, but not out of any independent desire or inclination to promote the transaction."  *People v. Argibay*, 45 N.Y.2d 45, 53-54 (1978).

The New York Court of Appeals has explained that an agency instruction is not automatic; it lends an element of flexibility to the resolution, by judge or jury, of the relationship to a particular drug transaction of a participant who does not fit neatly into the mold of buyer or seller. *See New York v. Roche*, 379 N.E.2d 208, 211 (N.Y. 1978). Thus, unless some reasonable view of the evidence supports the theory that the defendant was acting only on behalf of the buyer, a court is not required to instruct the jury on the agency defense. *New York v. Herring*, 632 N.E.2d 1272, 1273 (N.Y. 1994). A middleman who acts as a broker between a seller and buyer, largely for his own or the seller's benefit, cannot properly be termed an agent of the buyer. *See New York v. Argibay*, 379 N.E.2d 191, 194-95 (N.Y.1978) (noting that the defendant's degree of loyalty to the buyer is relevant).

Here, despite Petitioner's claim that he was an agent, the Appellate Division found:

> The evidence clearly established that defendant and Cochran had previously engaged in drug transactions as part of a business relationship and that both parties expected that defendant would earn commissions for his assistance. Viewing the proof in the light most favorable to defendant, as we must (*see People v. Delaney*, 309 A.D.2d 968, 970, 765 N.Y.S.2d 696 [2003]), there was no reasonable view of the evidence that supported a possible finding of the agency defense (*see People v. Herring*, 83 N.Y.2d 780, 782-783, 610 N.Y.S.2d 949, 632 N.E.2d 1272 [1994]; *People v. Ortiz*, 76 N.Y.2d at 449-450, 560 N.Y.S.2d 186, 560 N.E.2d 162; *People v. Hamilton*, 135 A.D.3d 500, 501, 22 N.Y.S.3d 835 [2016]).

*Wright*, 31 N.Y.S.3d at 639-40 (unaltered text).

A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state

law . . . .").  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.  *See Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988) (noting that state appellate court's determination of state law is binding and must be given deference).  Thus, the Court is bound by that determination.

Since the evidence at trial did not support an agency instruction under New York law, the trial court's failure to instruct the jury did not amount to a violation of due process.  *See Blazic*, 900 F.2d at 541.  Further, in holding that New York law did not require granting Wright's request for an agency instruction, the Appellate Division did not unreasonably apply the Supreme Court's ruling on due process in *Estelle*.  In sum, the Appellate Division's rejection of Petitioner's procedurally barred jury charge claim was not contrary to, nor based on an unreasonable application of, Supreme Court precedent, nor was it based on an unreasonable application the facts.

Accordingly, in light of the foregoing, the Court recommends denying the habeas petition on this ground.

### C.       Ineffective Assistance of Counsel (Ground 3)

Finally, Wright argues trial counsel was ineffective.  (Dkt. No. 1 at 9-11; Dkt. No. 22 at 37-41.)  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id*.  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95. Thus, Wright must show that his counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*,

474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

Further, when ineffective assistance claims are considered under AEDPA, the reviewing

court affords a "doubly" deferential standard regarding the state court opinion. *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009). In other words, when § 2254(d) applies, "[t]he pivotal

question" for the federal habeas court "is whether the state court's application of the *Strickland*

standard was unreasonable." *Richter*, 562 U.S. at 101.

Here, Wright avers counsel was ineffective for failing to request a geographic jurisdiction

instruction and failing to challenge as improper the eavesdropping warrant issue for Cochran's

cellular telephone. (Dkt. No. 1 at 9-11; Dkt. No. 22 at 37-41.) Respondent argues Petitioner's

claim is unexhausted and procedurally barred and thus provides no basis for habeas relief and, in

any event, is meritless. (Dkt. No. 13 at 52-61.)

### 1.    Instruction on Geographic Evidence

According to Wright, counsel should have asked for an instruction on geographic

jurisdiction because the evidence showed that he "was never in Albany County at any time

relevant to any of the charges in question," and, after the jury posed a question to the trial court

regarding venue for certain charges, counsel should have asked the court to read the venue

instruction.  (Dkt. No. 1 at 9.)  The Appellate Division rejected this claim on direct appeal as

follows:

> Defendant finds fault with his trial counsel's failure to request an
> instruction on geographic jurisdiction.  Notably, defense counsel
> argued in summation that defendant was never in Albany County,
> and objected when, immediately thereafter, the People asked
> County Court to instruct the jury that jurisdiction was obtained by
> defendant's participation in a telephone conversation with an
> individual in Albany County.
>
> "[T]o prevail on a claim of ineffective assistance of counsel, it is
> incumbent upon a defendant to establish that alleged errors by
> counsel demonstrate the absence of a legitimate strategy or
> explanation" (*People v. Welch*, 137 A.D.3d 1313, 1313, 26
> N.Y.S.3d 398 [2016]; *see People v. Benevento*, 91 N.Y.2d 708,
> 712, 674 N.Y.S.2d 629, 697 N.E.2d 584 [1998]).  It appears that
> defendant's trial counsel may have reasonably chosen to avoid the
> instruction, as geographic jurisdiction is established when a
> preponderance of the evidence indicates that an element of the
> offense occurred in the jurisdiction—such as, here, a statement
> over the telephone to a person in Albany County in furtherance of
> a drug transaction (*see* CPL 20.40[1]; 20.60 [1]; *People v. Muniz*,
> 215 A.D.2d 881, 883, 627 N.Y.S.2d 115 [1995]).  Thus,
> defendant's current disagreement with this strategy does not
> establish that he did not receive meaningful representation (*see
> People v. Hawkins*, 130 A.D.3d 1298, 1305, 15 N.Y.S.3d 485
> [2015], *lv. denied* 26 N.Y.3d 968, 18 N.Y.S.3d 604, 40 N.E.3d 582
> [2015]).

*Wright*, 31 N.Y.S.3d at 640 (unaltered text).  However, as indicated above, this argument was not

advanced by Petitioner in his counseled request for leave to appeal to the Court of Appeals.

(Dkt. No. 15-2 at 663-67).  As such, this sub-claim of ineffective assistance of counsel is

unexhausted.

Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted

because Petitioner has no state court forum in which to raise it.  Petitioner has already perfected

the state court appeal to which he is entitled, and he cannot properly present his claim in a §

440.10 motion because it is record based and, therefore, could have been raised on direct appeal.

*See Boerckel*, 526 U.S. at 845; *see also Aparicio*, 269 F.3d at 91.  Thus, this Court must determine whether cause and prejudice exists as a result of the procedural bar, or if the failure to consider Petitioner's claim will result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750.

Petitioner advances no cause for his default, and there is nothing in the record to suggest that Wright was precluded from appealing his attorney's allegedly deficient representation to the Court of Appeals relative to the failed request for instruction on geographic jurisdiction.  Nor has Petitioner alleged that appellate counsel was ineffective for failing to raise this issue. Furthermore, Petitioner has not come forward with new evidence tending to demonstrate that he is factually innocent, and so cannot fulfill the requirements of the fundamental miscarriage of justice exception.  *Schlup*, 513 U.S. at 324; *Whitley*, 317 F.3d at 225.  Accordingly, Petitioner's claim on this basis is subject to an unexcused procedural default and should be dismissed.

In any event, the Court agrees with Respondent that this sub-claim fails on the merits because Petitioner cannot make the required showing that no legitimate strategic or other reasons existed for counsel's decision not to request such an instruction before the jury was charged or to refuse a venue instruction when the jury submitted a note regarding venue, or any resulting prejudice.  (Dkt. No. 13 at 53-55.)  *See Strickland*, 466 U.S. at 690 ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement."); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 ("[F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt.").

In sum, the foregoing ineffective assistance of counsel claim is unexhausted, procedurally defaulted, and meritless.[8]  Therefore, the Court recommends that Wright's request for habeas relief on this ground be denied.

### 2.    Eavesdropping Warrant

Wright also contends that counsel should have challenged the "improper issuance of the amended and extended eavesdropping warrants."  (Dkt. No. 1 at 10-11; Dkt. No. 22 at 40-41.) Specifically, Petitioner argues the eavesdropping warrant issued for Cochran's cellular telephone was lacking in "probable cause" on the ground that the prosecution failed to follow "controlling legal authority, N.Y.C.P.L. 700.65 – for when a warrant can be retroactively amended to authorize interceptions related to inadvertently discovered crimes."  *Id*. at 11.  The Appellate Division also rejected this claim on direct appeal:

> Further, defendant was not deprived of the effective assistance of counsel by the failure of both his initial assigned counsel and the subsequent trial counsel who later replaced her to challenge the eavesdropping warrants that authorized the interception of Cochran's telephone calls, as counsel will not be found to be ineffective for failing to make an argument that has little or no chance of succeeding (*see People v. Stultz*, 2 N.Y.3d 277, 287, 778 N.Y.S.2d 431, 810 N.E.2d 883 [2004]; *People v. Garcia*, 131 A.D.3d 732, 734-735, 14 N.Y.S.3d 809 [2015]).
>
> Here, the People discovered after obtaining an eavesdropping warrant for a telephone purportedly used by another individual that the telephone was actually used by Cochran and that his conversations with defendant referenced crimes beyond the scope of the original warrant.  They sought to amend the warrant to retroactively authorize the interception of conversations related to these crimes and at the same time notified the court that the telephone was used by Cochran.  Although captioned as an

---

[8]  As discussed, *supra*, Section 2254 "prohibits federal courts from granting relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies."  *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).

amendment, the contents of the People's application met the
statutory and constitutional requirements to establish probable
cause for an eavesdropping warrant on a new telephone and new
telephone number (*see* CPL 700.20); accordingly, defendant did
not establish that a challenge on this ground would have
succeeded.  Defendant's counsel provided vigorous representation
that included, among other things, obtaining an acquittal upon a
charge of attempted murder in the second degree and two other
charges.  Viewing the evidence as a whole, we find that defendant
received meaningful representation (*see People v. Baldi*, 54
N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 [1981];
*People v. Gokey*, 134 A.D.3d 1246, 1248, 21 N.Y.S.3d 462
[2015]).

*Wright*, 31 N.Y.S.3d at 640-41 (unaltered text).  Inasmuch as Petitioner did not present this

argument in his counseled request for leave to appeal to the Court of Appeals (*see* Dkt. No. 15-2

at 663-67), this sub-claim of ineffective assistance is also unexhausted.  *Aparicio*, 269 F.3d at 90.

As discussed above, Petitioner's unexhausted claim should be deemed exhausted but

procedurally defaulted, because Petitioner has no state court forum in which to raise it.  *See*

*Boerckel*, 526 U.S. at 845; *see also Aparicio*, 269 F.3d at 91.  Again, Petitioner advances no

cause for his default and has not produced any new evidence that he is actually innocent.

*Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 324; *Whitley*, 317 F.3d at 225.  Accordingly,

Petitioner's claim on this basis is subject to an unexcused procedural default and should be

dismissed.

In any event, the Court also agrees with Respondent that this sub-claim fails on the merits

because the Appellate Division reasonably applied Supreme Court law in making this

determination.  (*See* Dkt. No. 13 at 55-61.)  It is well established that, "[w]here an ineffective

assistance of counsel claim is premised on counsel's failure to make a suppression motion, a

showing of prejudice under *Strickland* requires that the underlying suppression claim was

'meritorious' and that 'there is a reasonable probability that the verdict would have been

different absent the excludable evidence.'"  *Parisi v. Artus*, No. 08-CV-1785 (ENV), 2010 WL

4961746, at *6 (E.D.N.Y. Dec. 1, 2010) (quoting *Maldonado v. Burge*, 697 F. Supp. 2d 516, 525

(S.D.N.Y. 2010)) (other citations omitted).

　　　A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious

defense or application.  *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he

failure to make a meritless argument does not rise to the level of ineffective assistance, *see*

*United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), *cert. denied*, 506 U.S. 979 (1992), and

"strategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable[.]"  *Strickland*, 466 U.S. at 690.

　　　The state court's decision was reasonable and should not be disturbed.  Specifically, the

Appellate Division premised its decision on the conclusion that Wright could not satisfy the

prejudice prong because there is no indication such a motion "would have succeeded."  *Wright*,

31 N.Y.S.3d at 641.  Moreover, the Appellate Division found no error of state law in the wiretap

application at issue.  *Id*. at 640-41.  That finding is clearly not unreasonable and, in the context of

a claim involving ineffective assistance of counsel, the Appellate Division determined that

failure to file such a meritless motion provided no basis for ineffective assistance of counsel

relief.

　　　Counsel cannot now be deemed ineffective for failing to make an argument or objection

that stood little chance of success.  *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)

("Failure to make a meritless argument does not amount to ineffective assistance."), *cert. denied*,

531 U.S. 811 (2000); *Maldonado*, 697 F. Supp. 2d at 530 ("Obviously, if the suppression motion

was denied, the outcome of the trial could not have been different.").  Thus, this sub-claim of

ineffective assistance of counsel also fails on the merits.

In sum, this sub-claim of ineffective assistance of counsel claim is also unexhausted, procedurally defaulted, and meritless.  Therefore, the Court recommends that Wright's request for habeas relief on this ground be denied.

## V.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of the claims set forth in the petition as Petitioner has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984

---

[9]  If you are proceeding *pro se* and are served with this Report-Recommendation and Order and by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:  April 21, 2021
        Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 38 of 87
Trimm v. Sheahan, Not Reported in F.Supp.3d (2014)
2014 WL 3670723

2014 WL 3670723
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dustin J. TRIMM, Petitioner,

v.

Michael SHEAHAN, Respondent.

No. 9:14–CV–0905 (TJM/DEP).
|
Signed July 23, 2014.

**Attorneys and Law Firms**

Dustin J. Trimm, Comstock, NY, pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

 **\*1** On or about July 7, 2014, petitioner Dustin J. Trimm filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Western District of New York. Dkt. No. 1, Petition ("Pet."). On July 15, 2014, the petition was transferred to this court. Dkt. No. 2, Decision and Order, Skretny, J. Petitioner is confined at the Great Meadow Correctional Facility and has paid the required filing fee. For the reasons that follow, this action is dismissed without prejudice.

**II. THE PETITION**

In his petition, petitioner challenges a 2013 judgment of conviction in the St. Lawrence County Court, upon his guilty plea, of first degree manslaughter and related charges. Pet. at 2. He argues that his guilty plea was involuntary and was made without an understanding of the consequences (Grounds One and Three), and his conviction was obtained in violation of his right to equal protection (Ground Two). Pet. at 7–8. Petitioner states that he plans to present his claims to the Appellate Division in his direct appeal, and has counsel to represent him, but that his appeal has not yet been perfected. *Id.* at 3, 6, 8–9. For a complete statement of petitioner's claims, reference is made to the petition.

**III. DISCUSSION**

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker,* 458 F.3d 130, 149 (2d Cir.2006) (quoting *Rose v. Lundy,* 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs.,* 235 F.3d 804, 808 (2d Cir.2000). Finally, the petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985); *Barton v. Fillion,* No. 9:03–CV–1377 (DNH/GJD), 2007 WL 3008167 at \*5 (N.D.N.Y. Oct. 10, 2007).

In this case, exhaustion requirement has not been met because none of petitioner's claims have been presented to the state courts. Pet. at 3, 6. There is no basis on the record before this court to conclude that there is an absence of available State corrective process (*e.g.,* where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect petitioner's rights (*e.g.* where further pursuit would be futile). 28 U.S.C. § 2254(b)(1)(B) (I), (ii); *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000). Petitioner has state court remedies available to him, and is in the process of exhausting those remedies by appealing his conviction with the assistance of appellate counsel. *See* Pet. at 8–9. It is not futile to require him to complete exhaustion of his state court remedies prior to pursuing a federal habeas petition. [1]

---

[1]     Under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), in certain circumstances, federal courts have discretion to review and deny on the merits any unexhausted

claims that are "plainly meritless" (*Rhines v. Weber,* 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski,* 421 F.Supp.2d 619, 621 (W.D.N.Y.2006); *Wheeler v. Phillips,* No. 1:05–CV–4399, 2006 WL 2357973 at *5 (E.D.N.Y. Aug. 15, 2006); 28 U.S.C. § 2254(b)(2). Stated another way, unexhausted claims may be reviewed on the merits only if the habeas court is going to deny the entire petition. 28 U.S.C. § 2254(b)(2).

**\*2**  In sum, petitioner filed this federal habeas petition prematurely and it is therefore dismissed without prejudice to re-filing it in the appropriate district court once he has exhausted his state court remedies. [2] *See Diguglielmo v. Senkowski,* 42 F. App'x. 492, 496 (2d Cir.2002) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so. Accordingly, we dismiss DiGuglielmo's petition without prejudice. This will allow DiGuglielmo to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted); *Nash v. Evans,* No. 9:10–CV–0361 (GLS), 2010 WL 1423196 at *1 (N.D.N.Y. Apr. 9, 2010) (declining to review and deny unexhausted claims presented in the petitioner's petition, and dismissing habeas petition without prejudice where the claims were "presently awaiting appellate review[.]"); *Foster v. Spitzer,* No. 9:07–CV–0103, 2007 WL 1531904 at 1–2 (N.D.N.Y. Mar. 5, 2007) (habeas petition dismissed where petitioner was in the "preliminary stages of the appellate process" and had not yet completed state appellate review of his claims). [3]

[2]  The timeliness of any subsequent habeas petition under the AEDPA appears not to be a concern in this case. Review of petitioner's claims in state court has not yet concluded, and thus the one-year statute of limitations during which to file a habeas petition has not begun to run. 28 U.S.C. § 2244(d)(1)(A)-(D); *Foster v. Spitzer,* No. 9:07–CV–0103 (LEK/DRH), 2007 WL 1531904 at *2 (N.D.N.Y. Mar. 5, 2007). Finally, if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second

or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart,* 549 U.S. 147, 155 (2007) (citing *Slack v. McDaniel,* 529 U.S. 473, 478 (2000) ("[A] habeas petition which is filed after an initial petition was dismissed without adjudication on the merits for failure to exhaust state remedies is not a 'second or successive' petition' as that term is understood in the habeas corpus context.")).

[3]  Petitioner is advised that any renewed habeas petition must be accompanied by either the required filing fee ($5.00) or an application to proceed in forma pauperis that has been certified or signed by an appropriate prison official with regard to the balance, and average balance, in any account in petitioner's name at the facility. Rule 3(a) of the Rules Governing Section 2254 Cases in the United States District Courts. To avoid any problems with the statute of limitations, petitioner should promptly file any renewed section 2254 habeas petition upon exhaustion of his state court remedies. 28 U.S.C. § 2244(d)(2).

## IV. CONCLUSION

**WHEREFORE,** it is

**ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies; and it is further

**ORDERED,** that no certificate of appealability shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c) (2); and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order upon petitioner in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3670723

End of Document                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4104454
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert LANZA, Petitioner,

v.

Donna LEWIN, Acting Superintendent, Respondent.

No. 9:04–CV–0678 (LEK).
|
Sept. 3, 2008.

**Attorneys and Law Firms**

Robert Lanza, Amsterdam, NY, for the Petitioner.

Hon. Andrew M. Cuomo, Office of the Attorney General, Steven H. Schwartz, Esquire, Ass't Attorney General, of Counsel, Albany, NY, for the Respondent.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**I. *Introduction***

 **\*1** Petitioner Robert Lanza, a former New York State prison inmate as a result of a 1999 conviction on two counts of third degree criminal sale of a controlled substance (N.Y. PENAL LAW § 220.39(1)), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) the indictment was defective; (2) the trial court improperly denied his motion to vacate his conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10 in violation of his right to due process; (3) the evidence was insufficient; and (4) the trial court committed several errors resulting in the denial of a fair trial. Dkt. No. 1 at 5–6; Dkt. No. 10, Traverse at 4–23. For the reasons that follow, the petition is **DENIED.**

**II. *Background***

 **A. *Facts***

According to the testimony adduced at trial, Petitioner sold crack cocaine to Columbia County Sheriff Deputy Wendy J. Guntert on March 17 and March 19, 1999. *See* Transcript of Trial of Robert Lanza ("Trial Tr.") at R285–306.[1] Senior Investigator Frederick Kane, assigned to the Columbia County Drug Task Force, supervised both transactions.

[1]     "R" followed by a number refers to the pages of the hearing and trial transcripts included as part of the Record on Appeal presented to the Appellate Division. Dkt. No. 6, Ex. 17. The type-written numbers appear on the bottom center of each page.

Prior to the March 17, 1999 transaction, Deputy Guntert met with Investigator Kane, who showed her a photograph of Petitioner. He identified Petitioner by name, and told Guntert that Petitioner was the person she would meet that day to purchase crack cocaine. Trial Tr. at R 218–20, 287–88. Deputy Guntert and Investigator Kane each recognized Petitioner from prior police contact. *Id.* Guntert was given $100.00 in buy money[2] and a body wire. Guntert and a confidential informant went to a parking lot of a grocery store, and the informant contacted Petitioner by phone. The informant ordered two pieces of crack cocaine, and asked Petitioner to meet him in the parking lot. *Id.* at R313–14.

[2]     "Buy money" refers to money used in a controlled narcotics purchase. The serial numbers of buy money are recorded for identification. Trial Tr. at R288.

Petitioner parked his car next to Deputy Guntert's van. Trial Tr. at R289–90. Deputy Guntert was sitting inside the passenger side sliding doors of the van. *Id.* Petitioner exited his vehicle and the informant introduced Petitioner and Guntert. Petitioner sat next to Guntert and opened a metal cigarette lighter. He poured out ten individually wrapped pieces of crack cocaine, picked out two of them, and handed them to Guntert in exchange for $100.00. *Id.* at R290–94.

Deputy Guntert and the informant met with Petitioner again on March 19, 1999 in the same grocery store parking lot. This time, Petitioner got into the front passenger seat of Deputy Guntert's vehicle and handed her two pieces of crack cocaine in exchange for $100.00. Trial Tr. at R297–302.

Investigator Kane and Sergeant Paul Knott of the Columbia County Sheriff's Department conducted surveillance of both transactions. They recorded the conversations between Deputy Guntert and Petitioner on audiotapes and also made a videotape of the March 19 transaction. Trial Tr. at R227–31, 237–41, 243–45, 258.

Deputy Guntert met with Investigator Kane within minutes of each purchase and turned the crack cocaine over to him. Trial Tr. at R295–96, 318. Investigator Kane field tested

the items and then sealed them with tape. *Id.* at R224–25. Guntert initialed and dated each piece on the tape. *Id.* at R224, 295. Investigator Kane then placed the cocaine in sealed evidence bags, labeled them, and assigned each bag a specific case number unique to Petitioner. *Id.* at R226–27, R247–49. Investigator Kane took the evidence bags to the task force office, where they were locked in a safe. On March 23, 1999, Investigator Kane removed the evidence bags and transported them to the New York State Police Crime Lab for forensic testing. *Id.* at R248–50. At the Crime Lab, Investigator Kane handed the bags to the receiving technician, who placed the bags into larger bags, sealed them, and gave Kane a receipt. *Id.* at R249.

**\*2** Senior Forensic Chemist Patricia C. Rose was assigned to test the substances delivered to the lab on March 23, 1999 by Investigator Kane. Trial Tr. at R264–266. She signed the evidence out of the Crime Lab's inner vault on April 21, 1999, took it to her work area, and placed it in a locked box to which only she had the combination. *Id.* at 266–68. On or about May 5, 1999, Rose performed three chemical tests on the items recovered on March 17 and 19 in order to determine their molecular and chemical content. All three tests indicated the presence of cocaine. *Id.* at R267–69, 275. Infared tests performed on items from each date showed "a fingerprint" of "cocaine freebase," which is "known in the street as crack." *Id.* at R269, 275.

**B. *State Court Proceedings***

On July 13, 1999, Petitioner was indicted on two counts of third degree criminal sale of a controlled substance (N.Y. PENAL LAW § 220.39(1)) and two counts of seventh degree criminal possession of a controlled substance (N.Y. PENAL LAW § 220.03). Dkt. No. 6, Ex. 1, Indictment. On September 24, 1999, a combined *Wade* [3]/*Sandoval*/[4] *Ventimiglia* [5] hearing was held. The court also conducted an audibility hearing the same day to determine the admissibility of the two audiotapes and the videotape taken during the surveillance of the narcotics transactions. Dkt. No. 6, Ex. 9; Ex. 17, Hearing Tr. at R103–181. After hearing the testimony of Investigator Kane and Sergeant Knott, and listening to the tapes, the trial court found that the tapes were admissible because they were "sufficiently intact and audible to go to a jury." Dkt. No. 6, Ex. 17 at R155. The court noted that there were no mechanical errors or gaps in the recordings, that they accurately reflected the depicted events as they unfolded, and that the entirety of each transaction was recorded from "beginning to end." *Id.* at R153–54. The court found that the

video clarity was "excellent" and that any audibility problems with the videotape were moot because the audio tape of the same transaction was "quite audible." *Id.* at R154.

3  *United States v. Wade,* 388 U.S. 218 (1967). The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive. *See Blas v. Herbert,* No. 02 Civ. 6257, 2003 WL 22480093, at \*3 n. 2 (S.D.N.Y. Oct. 21, 2003).

4  *People v. Sandoval,* 314 N.E.2d 413 (1974). A *Sandoval* hearing is an evidentiary hearing held in state court to determine whether, if the defendant testifies, his prior convictions or bad acts may be admitted to impeach his credibility. *See Brown v. Duncan,* No. 00–CV–290, 2006 WL 1977469, at \*19 (N.D.N.Y. Jul. 11, 2006) (Sharpe, D.J., adopting Report—Recommendation of Lowe, M.J.).

5  *People v. Ventimiglia,* 420 N.E.2d 59 (1981). A *Ventimiglia* hearing is held to determine the admissibility "of evidence of prior conduct, other than direct proof of a defendant's prior crime, which tends to implicate the defendant in the commission of the charged crime." *Chanowitz v. Miller,* No. 05–CV–120, 2008 WL 2323388, at \*2, n. 3 (N.D.N.Y. Jun. 2, 2008) (Scullin, S.J.).

At the conclusion of the *Wade* portion of the hearing, the trial court held that there had been no improper procedures used in identifying Petitioner. The only photograph in question was that shown to Deputy Guntert on March 17. The court noted that Guntert recognized Petitioner from police contact on March 16, that she had an "excellent ability to see" Petitioner during the March 17 transaction that lasted six minutes, that viewing the photograph did not "taint or undermine" her ability to recognize and identify Petitioner, and that her ability to identity Petitioner was based upon her own observations. Dkt. No. 6, Ex. 17 at R172–73. Finally, the court ruled on the admissibility and use of certain prior criminal convictions and uncharged crimes, and denied the prosecutor's request to introduce evidence of a drug transaction allegedly committed by Petitioner on March 16, 1999. *Id.* at R173–81.

**\*3** A jury trial was held on October 4 and 5, 1999. Trial Tr. at R189–343. The jury found Petitioner guilty of both counts of criminal sale of a controlled substance. *Id.* at R418–19. On

November 5, 1999, Petitioner was sentenced as a predicate felon to serve an indeterminate term of eight to sixteen years on each count to run concurrently. Dkt. No. 6, Ex. 12; Ex. 17, Sentencing Tr. at R436–443.

On November 21, 2000, Petitioner filed a Notice of Motion and Affidavit in which he asked the trial court to inspect the grand jury minutes in camera to determine whether the grand jury proceeding was defective and requested an Order directing that a transcript of the grand jury proceedings be provided to him for inclusion in the record on appeal. Dkt. No. 6 at Ex. 14. In a Decision and Order dated January 11, 2001, the trial court denied the motion, stating that it had already reviewed the grand jury minutes in determining Petitioner's pre-trial omnibus motion and "upheld the subject determination." *Id.* at Ex. 16.

Petitioner filed his first CPL § 440.10 motion on or about May 22, 2001. Dkt. No. 6, Ex. 19. Petitioner alleged that (1) the trial court lacked jurisdiction over his case because the grand jury proceedings were defective; and (2) the prosecutor misrepresented evidence to the grand jury such that the integrity of the proceedings was impaired. *Id.* The motion centered around Petitioner's argument that Crime Lab reports were not properly certified at the time of the grand jury presentation and, as a result, the evidence presented at grand jury regarding the identity of the substance recovered from him was insufficient. The prosecutor opposed the motion in an affidavit dated June 7, 2001. *Id.* at Ex. 21.

In a decision dated July 27, 2001, the trial court denied the motion. Dkt. No. 6 at Ex. 22. The court explained that its review of the grand jury minutes revealed that the Crime Lab reports in question were recited therein as being "New York State Police Crime Laboratory Reports, each with attached certification." *Id.* at 2. The court did not have the grand jury exhibits before it when it decided Petitioner's omnibus pre-trial motion, and relied upon that information. *Id.* The court further noted Petitioner's assertion that the only certifications he could find were dated after the conclusion of the grand jury proceedings. *Id.* The court assumed, *arguendo,* that Petitioner was correct that the lab reports lacked the requisite certifications when they were submitted to the grand jury, but nonetheless found that "any claim pertaining to alleged insufficiency of Grand Jury evidence is foreclosed" because Petitioner was convicted "upon legally sufficient evidence" after trial. *Id.* The court also noted that there was other testimony before the grand jury, including that of the undercover officer regarding the purchase of what was

represented as and understood to be crack cocaine, and that items were field tested. *Id.* at 3. In light of that evidence, the court concluded that there had been no jurisdictional defect. *Id.* Petitioner appealed, leave was granted, and the appeal was consolidated with Petitioner's direct appeal of his conviction. *See Lanza,* 749 N.Y.S.2d at 618.

**\*4** On direct appeal, Petitioner re-asserted the claims presented in the CPL § 440 motion and further argued that (1) the chain of custody was insufficient to show that the substance sold to Deputy Guntert was the same substance tested at the Crime Lab; (2) the trial court erred when it denied the CPL § 440 motion; (3) Petitioner was not given an agency defense; (4) the audio and video tapes of the transactions were improperly admitted into evidence; (5) the trial court infringed upon Petitioner's right to a fair trial and the right to confront his accusers when it interfered with cross-examination, injected facts not in the record, and made erroneous evidentiary rulings; and (6) the sentence was excessive. Dkt. No. 6, Ex. 24.

The Appellate Division, Third Department affirmed, finding that evidence presented at trial was "sufficient to establish a complete chain of custody." *People v. Lanza,* 749 N.Y.S.2d 618, 620 (N.Y.App.Div., 3d Dep't.2002). The court rejected Petitioner's argument that references in the Crime Lab reports to "powder" demonstrated that the substance tested could not be the same substance Petitioner sold to Deputy Guntert, which had the appearance of crack cocaine, because the chemical analysis of the substance revealed that it was crack cocaine. *Id.* Accordingly, the discrepancy based upon the term "powder" was relevant to the weight of the evidence and not its admissibility. *Id.* For the same reason, the court rejected Petitioner's arguments that the weight of the items submitted by Investigator Kane was different than the weight listed on the lab reports. It noted that Petitioner argued this theory to the jury, which rejected it. *Id.* at 621. The court concluded that any error in the admission of the audio and video tapes was harmless in light of the testimony of the undercover officer and the "weight and nature of the proof of defendant's guilt without" them. *Id.* The court further found no evidence to support an agency defense, and rejected Petitioner's claim that the sentence was excessive. *Id.* Finally, the court ruled that, based upon its review of the record, there was no merit to Petitioner's "claims that the Crime Lab reports submitted to the grand jury were not certified." *Id.* Petitioner's remaining arguments were "considered and rejected." *Id.* The New York Court of Appeals denied leave on May 29, 2003 (*People v. Lanza,* 793 N.E.2d 419 (N.Y.2003),

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

and denied reconsideration on June 23, 2003. *People v. Lanza,* 795 N.E.2d 46 (N.Y.2003). *See* Dkt. No. 6, Exs. 28–29.

On or about August 13, 2003, Petitioner filed a second CPL § 440 motion. Dkt. No. 6, Ex. 31. Petitioner again argued that the evidence presented at the grand jury was defective because the Crime Lab reports were not properly certified at the time they were presented to the grand jury. *Id.* He further argued that the "submission of the alleged uncertified Crime Lab reports constituted prosecutorial misconduct, divested [the trial court] of jurisdiction, prevented the prosecution from providing the Grand Jury with adequate legal instructions and, further, violated [Petitioner's] due process rights under the respective constitutions of the United States and New York State." Dkt. No. 6, Ex. 33 at 2, n. 1. In a Decision and Order dated September 16, 2003, the trial court denied the motion pursuant to CPL § 440.10(2)(a) because the "linchpin" of the motion was that the lab reports were uncertified at the time of grand jury, and the Appellate Division had rejected that argument on the merits. *Id.* at 2–3. The court further noted that each of the arguments in the motion appeared on the record and "could have been addressed" on appeal. *Id.* at 3 (citing CPL § 440.10(2)(c)). The Appellate Division denied leave to appeal on December 8, 2003. Dkt. No. 6, Ex. 34. The New York Court of Appeals dismissed Petitioner's application for leave on February 4, 2004 (*Lanza,* 808 N.E.2ed 1287 (2004)), and denied reconsideration of that dismissal on April 16, 2004. *Lanza,* 811 N.E.2d 43 (2004). *See* Dkt. No. 6, Exs. 36–39.

### C. *Proceedings in This Court*

**\*5** Petitioner filed his Petition for a writ of habeas corpus on June 14, 2004. Dkt. No. 1. On November 8, 2004, the Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed a response and memorandum of law in opposition to the Petition, along with the relevant state court records. *See* Dkt. No. 6. Petitioner filed a Traverse on January 27, 2005. Dkt. No. 10.

## II. *Discussion*

### A. *Lanza's Release from Prison*
According to publicly available records maintained by the New York State Department of Correctional Services ("DOCS"), and Petitioner's Notice of Change of Address letter, Petitioner was released from state custody on the conviction at issue on November 14, 2005. *See* http://nysdocslookup.docs.state.ny.us; Dkt. No. 11, Notice of

Change of Address letter. It also appears that Petitioner has now completed his sentence. According to the DOCS website, Petitioner had a "Parole Board Discharge Date" of July 9, 2007, which "indicates that the parolee has been discharged from parole supervision before the maximum expiration date or the maximum expiration date for parole supervision. The parolee's sentence is deemed completed as of this date." *See* http://nysdocslookup.docs.state.ny.us, Inmate Information Data Definitions.

Since Petitioner was released from custody and apparently completed his sentence pending the disposition of his habeas petition, the Court has not been briefed by the parties on whether it lacks jurisdiction over the Petition, or whether it has been rendered moot. However, "[w]hether a federal court has subject matter jurisdiction is a question that 'may be raised at any time ... by the court *sua sponte.*' " *McGinty v. New York,* 251 F .3d 84, 90 (2d Cir.2001) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000)).

Habeas corpus relief is available to a state prisoner if he is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Regardless of a petitioner's subsequent release, it is within the jurisdiction of a federal court to issue a writ of habeas corpus if the petitioner was "in custody" at the time his application for relief was filed. *Carafas v. LaVallee,* 391 U.S. 234, 237–38 (1968). Petitioner was in custody at the time he filed his Petition, and thus, the Court retains jurisdiction over the Petition. *Id.; see Stephens v. Superintendent,* No. 04–CV–1443, 2008 WL 755278, at \*3 (N.D.N.Y. Mar. 19, 2008) (McAvoy, S.J., adopting Report–Recommendation of Bianchini, M.J.) (retaining jurisdiction over petition after the petitioner's release because it was filed while the petitioner was incarcerated).

Subject matter jurisdiction, however, is limited by Article III, Section 2 of the United States Constitution to cases that present a "case or controversy." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998); *Baur v. Veneman,* 352 F.3d 625, 631–32 (2d Cir.2003). Habeas petitioners no longer in custody and whose sentences have expired must demonstrate the existence of a "concrete and continuing injury" or some " 'collateral consequence' of the conviction" in order for a petition to be granted. *Spencer v. Kemna,* 523 U.S. 1, 7 (1998) (quoting *Carafas,* 391 U.S. at 237–38).

**\*6** The Supreme Court has stated that a challenge to the underlying conviction itself carries the presumption

that a collateral, adverse consequences exists. *Spencer,* 523 U.S. at 12 ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' ") (quoting *Sibron v. New York,* 392 U.S. 40, 55 (1968)). That is true "even after the expiration of the sentence that was imposed as a result of the conviction." *Casler v. United States,* No. 04–CV–1157, 2005 WL 3088699, at *3 (N.D.N.Y. Nov. 17, 2005) (Mordue, C.J.) (citing *Spencer* and *Sibron* ); *See Evitts v. Lucey,* 469 U.S. 387, 391 n. 4 (1985) (habeas petition not moot despite the expiration of the petitioner's sentence and despite the fact that "his civil rights, including suffrage and the right to hold public office, [had been] restored" because "respondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding...."); *Benton v. Maryland,* 395 U.S. 784, 791 (1969) ("[B]oth of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial."). Whether Petitioner will actually suffer these consequences is irrelevant, as is the fact that Petitioner has a prior felony conviction. *Benton,* 395 U.S. at 790–91; *Sibron,* 392 U.S. at 56 ("we see no relevance in the fact that Sibron is a multiple offender."). Additionally, the Supreme Court has "expressed its disapproval of requiring a citizen to suffer a legal disability based on a prior conviction before enlisting federal aid to attack the validity of that conviction." *Velez v. People of the State of New York,* 941 F.Supp. 300, 309 (E.D.N.Y.1996) (quoting *Sibron,* 392 U.S. at 57).

Petitioner's Petition does not appear to have been rendered moot by his release from prison and the completion of his sentence, since he is challenging the underlying conviction and "collateral consequences can be presumed when challenging a felony conviction[.]" *Cobos v. Unger,* 534 F.Supp.2d 400, 403 (W.D.N.Y. Feb. 14, 2008) (citing *Sibron,* 392 U.S. at 54–56). *See Spencer,* 523 U.S. at 12; *DeFayette v. Superintendent,* No. 05–cv–722, 2008 WL 755822, at *1 n. 1 (N.D.N.Y. Mar. 19, 2008) (Sharpe, D.J., adopting Report–Recommendation of Peebles, M.J.) (citing *Spencer* and *Sibron* ). The Court will therefore address the Petition.

### B. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. [6] *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006), *cert. denied* 127 S.Ct. 1267 (2007); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005) (citing 28 U.S.C. § 2254(d)), *cert. denied,* 546 U.S. 884 (2005). AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001).

[6]     "Clearly established federal law" refers only to the holdings of the Supreme Court, and "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." *Rodriguez v. Miller,* No. 04–pr–6665, 2008 WL 3010107, at *3 (2d Cir. Aug. 6, 2008) (citing *Williams,* 529 U.S. at 412 and *Carey v. Musladin,* 127 S.Ct. 649, 652–53 (2006)).

**\*7** A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (citing *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000)). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Earley,* 451 F.3d at 74 (citing *Williams,* 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001). Objectively unreasonable means " 'some increment of incorrectness beyond error' " is required in order to grant a federal habeas application. *Earley,* 451 F.3d at 74 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

### C. *Defects in Grand Jury Proceedings*

Petitioner first argues, as he did in the state courts, that during grand jury proceedings, the Crime Lab reports were not properly certified at the time they were presented to the grand jury. Petitioner further alleges that the prosecutor (1) permitted a "false entry" to be made into the grand jury record that the reports were, in fact, certified; (2) failed to give the grand jury appropriate legal instructions; and (3) made false statements that the reports were certified in the People's response to his omnibus motion seeking to dismiss the indictment. Petitioner argues that the indictment was thus defective, and the trial court therefore lacked jurisdiction. Dkt. No. 1, Pet. at 5; Dkt. No, 10, Traverse, Memorandum of Law ("Mem.") at 4–6.

Alleged errors in a state grand jury proceeding, including claims that evidence was not properly certified for presentation to the grand jury and that the evidence presented to the grand jury was insufficient, are not cognizable on federal habeas review. *Lopez v. Riley,* 865 F.2d 30, 33 (2d Cir.1989) ( "The particular claims of impropriety before the grand jury in this case concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" which were cured by petitioner's conviction by a "petit jury" and, therefore, were not cognizable on habeas review); *Cadilla v. Johnson,* 119 F.Supp.2d 366, 371–72 (S.D.N.Y.2000) ("Petitioner's claim that hearsay in the grand jury proceeding undermined the legal sufficiency of the indictment" is "not a constitutional claim that is cognizable under federal habeas review, because petitioner was convicted by a jury after a trial."); *Spulka v. Walker,* No. 97 Civ. 1879, 1998 WL 274287, at *2 (S.D.N.Y. May 27, 1998) (petitioner's claim that a laboratory report lacking proper certification was erroneously submitted to the grand jury was without merit, because guilty verdict cured any defect in the grand jury proceeding); *Hogan v. Ward,* 998 F.Supp. 290, 294 (W.D.N.Y.1998) ("the right to have evidence properly certified for presentation to a grand jury is a matter of New York State law and as such is not reviewable on a petition for federal habeas corpus.").

**\*8** The same is true of Petitioner's claims that the prosecutor engaged in misconduct during the grand jury proceedings, that there was error in the instructions given to the grand jury, and that the trial court lacked jurisdiction over him because the indictment was allegedly obtained using hearsay. *United States v. Mechanik,* 475 U.S. 66, 70 (1986) ("any error in the grand jury proceeding connected with the charging decision" was rendered harmless where the defendant was

convicted after a jury trial); *Lopez,* 865 F.2d at 33, *Campbell v. Poole,* 555 F.Supp.2d 345, 367–68 (W.D.N.Y.2008) (claim that prosecutor lied to the grand jury was not cognizable on habeas review where petitioner was found guilty after a jury trial); *Reid v. Phillips,* No. 04 Civ. 1338, 2004 WL 1920218, at *4 (S.D.N.Y. Aug. 26, 2004) (petitioner's claim that the trial court "lacked jurisdiction over him, apparently because his grand jury indictment was allegedly obtained through the presentation of hearsay and false evidence" was not a basis for habeas relief because, "[r]egardless of whether the indictment was defective, it is well established that a petit jury's guilty verdict renders any errors by the grand jury harmless[.]"); *People v. Miles,* 632 N.Y.S.2d 74, 75 (N.Y.App. Div., 1st Dep't 1995) ("The hearsay nature of the lab report presented to the grand jury as proof that the substance defendant was charged with selling and possessing contained cocaine did not render the indictment jurisdictionally defective."), *lv. denied* 666 N.E.2d 1070 (N.Y.1996).

Even if there were error, Petitioner's subsequent conviction by a jury cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *Montalvo v. Annetts,* 02 Civ. 1056, 2003 WL 22962504, at *17 (S.D.N.Y. Dec. 17, 2003); *see Mechanik,* 475 U.S. at 70 ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); *Davis v. Mantello,* 42 Fed. Appx. 488, 490–91 (2d Cir.2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), *cert. denied* 538 U.S. 986 (2003). The claims in Ground One of the Petition are therefore dismissed.

### D. *Trial Court Improperly decided Petitioner's First CPL § 440 motion*

Petitioner next asserts that the trial court improperly denied his first section 440 motion (Ex. 19) in violation of his due process rights. Specifically, Petitioner claims that the court failed to address issues of prosecutor misconduct during grand jury proceedings, refused to treat his motion as *pro se,* admitted to relying on misrepresentations made by the prosecutor during grand jury in deciding trial motions, and improperly denied an evidentiary hearing. Dkt. No. 6, Ex. 19. Petitioner raised these arguments on direct appeal and they were rejected. *Lanza,* 749 N.Y.S.2d at 621 (stating that the "remaining arguments, ... have been considered and rejected."). That determination is entitled to AEDPA

deference. *See Velazquez v. Poole,* No. 04–CV–478, 2007 WL 3240550, at *19 (E.D.N.Y. Oct. 30, 2007) ("The Appellate Division's conclusion that petitioner's remaining claims were without merit, including those relating to alleged prosecutorial misconduct, qualifies as an adjudication on the merits for purposes of AEDPA deference.") (citing *Sellan,* 261 F.3d at 311–12) (internal quotations omitted).

**\*9** State prisoners have no federal constitutional right to post-conviction proceedings in state court. *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987). Thus, to the extent that Petitioner is challenging alleged procedural errors by the trial court in deciding his section 440 motion, including his claim that the court denied the motion without holding a hearing, those claims are not cognizable on habeas review. *Ferrer v. Superintendent,* No. 05–CV–1010, 2008 WL 2967633, at *11 (N.D.N.Y. Jul. 25, 2008) ("[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.") (internal quotation omitted); *see Parker v. New York,* No. 05 Civ. 3347, 2006 WL 864272, at *5 (S.D.N.Y. Apr. 5, 2006) ("procedural errors in state post-conviction proceedings are not cognizable on federal habeas review."); *Jones v. Duncan,* 162 F.Supp.2d 204, 217 (S.D.N.Y. Apr. 3, 2001) (stating that "habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings", and denying habeas relief on claim that trial court failed to hold an evidentiary hearing on post-conviction motions. Further, the Appellate Division granted Petitioner leave to appeal the trial court's denial of his section 440 motion, and that appeal was consolidated with Petitioner's direct appeal. Petitioner raised and fully litigated each of these claims regarding the denial of his section 440 motion on appeal. "[T]hus he was not prejudiced by any alleged violation [of state procedural rules]." *Parker,* 2006 WL 864272, at *5.

In any event, Petitioner's claims are without merit. Under New York law, a trial court may deny a section 440.10 motion without a hearing if the moving papers do not allege any ground constituting legal basis for the motion. *See* CPL § 440.30(4)(a). Here, the trial court summarily denied the motion after finding that the allegations therein did not warrant relief. Dkt. No. 6, Ex. 22. Its actions were based on, and in compliance with, state statutory law. The trial court's failure to hold a hearing before denying Petitioner's section 440 motion is thus insufficient to constitute a denial of Petitioner's constitutional rights.

Petitioner's next argument, that the trial court admitted to relying on a notation in the grand jury minutes that the lab reports had been certified when it denied his motion to dismiss the indictment, and that its reliance was improper, is equally unavailing. The Appellate Division specifically rejected the premise upon which this claim is based—that the lab reports were uncertified—stating "[o]ur review of the record also reveals the lack of merit in [Petitioner's] claims that the Crime Lab reports submitted to the grand jury were not certified." *Lanza,* 749 N.Y.S.2d at 621. Thus, the trial court could not have improperly relied upon a notation that the reports were certified.

Contrary to Petitioner's assertion, the trial court did address his claims of prosecutor misconduct during the grand jury proceedings, and assumed, *arguendo,* that the basis for that claim—that the lab reports were uncertified —was true. The trial court concluded, however, that Petitioner's subsequent conviction after trial rendered his claims regarding sufficiency of the evidence presented to the grand jury foreclosed, and that in light of other evidence presented, there was no jurisdictional defect. Dkt. No. 6, Ex. 22 at 2–3. The Appellate Division affirmed. *Lanza,* 749 N.Y.S.2d at 621 (rejecting Petitioner's remaining claims not otherwise specifically discussed in its decision). The state court's rejection of this claim was not an unreasonable application of clearly established Supreme Court precedent. *See, e.g., Mechanik,* 475 U.S. at 70 (alleged errors during grand jury proceedings rendered harmless by the defendant's subsequent conviction by a jury).

**\*10** Finally, Petitioner is generally correct that submissions by *pro se* litigants must be held "to less stringent standards than formal pleadings" drafted by attorneys. *Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *see McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (a reviewing court must read *pro se* submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *Taylor v. Poole,* 538 F.Supp.2d 612, 618 (S.D.N.Y.2008)) (same). There is no indication, however, that the trial court here failed to consider Petitioner's *pro se* status or that his status affected the trial court's decision.

For all of the foregoing reasons, Ground Two of the petition is dismissed.

### E. *Sufficiency of the evidence*

Petitioner next argues that there was insufficient proof that the substance tested at the crime lab and admitted at trial was the same substance the police obtained from him due to "contrary weights and contrary physical descriptions." Dkt. No. 1, Ground Three; Dkt. No. 10, Traverse, at 14–19. Although Petitioner makes a conclusory assertion that the evidence should not have been admitted at trial due to defects in the chain of evidence, it appears that his main argument is that because of the alleged deficient chain of custody, there was insufficient proof as to the nature of the substance he sold to Deputy Guntert and that the evidence therefore cannot support the jury's finding that he sold crack cocaine.

To the extent that Petitioner challenges the admission into evidence of the crack cocaine based upon an alleged insufficient chain of custody, that claim fails. Claims that the chain of custody was inadequate to permit the admission of evidence at trial generally present questions of state evidentiary law that are not amendable to habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (reemphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Allen v. Costello,* No. 03 CV 4957, 2008 WL 89747, *3 (E.D.N.Y. Jan. 7, 2008) (claim that evidence was improperly admitted into evidence due to gaps in the chain of custody was a challenge to a state evidentiary ruling that did not result in a fundamentally unfair trial) (citations omitted); *Tirado v. Senkowski,* 367 F.Supp.2d 477, 487 (W.D.N.Y.2005) (holding that the petitioner's "chain of custody argument presents a question of State evidentiary law that generally is not amendable to habeas review") (citation omitted). Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998), *cert. denied* 525 U.S. 840 (1998) (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)); *see Rosario v. Kuhlman,* 839 F.2d 819, 924 (2d Cir.1988) (habeas relief may not be granted for erroneous evidentiary rulings unless it was "an error of constitutional dimension" that resulted in a fundamentally unfair trial); *Jones v. Conway,* 442 F.Supp.2d 113, 130 (S.D.N.Y.2006). Petitioner "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude ." *Sierra v. Burge,* No. 06 Civ. 14432, 2007 WL 4218926 at *5 (S .D.N.Y. Nov. 30, 2007) (quoting *Copes v. Shriver,* No. 97–2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997) (citation omitted). Petitioner has not met his burden because, as set

forth below, the prosecutor established an adequate chain of custody and, as the Appellate Division concluded, there was no state evidentiary error.

**\*11** A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *United States v. Quattrone,* 441 F.3d 153, 169 (2d Cir.2006); *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White,* 531 U.S. 225, 228–29 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993) (emphasis in original). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup v. Delo,* 513 U.S. 298, 323 n. 38 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.[7] "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.' " *Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999), *cert. denied* 528 U .S. 1170 (2000)).

7    The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver,* 140 F.Supp.2d 265, 276 n. 5 (E.D.N.Y.2001) (citing *Francis S.,* 221 F .3d at 114) (other citation omitted); *see also Santana v. Kuhlmann,* 232 F.Supp.2d 154, 166–67 (S.D.N.Y.2002).

Under New York law, the state had to prove that Petitioner knowingly and unlawfully sold crack cocaine, a narcotic drug. N.Y. PENAL LAW § 220.30(1). Here, the prosecution sought to prove the identity of the substance sold to Deputy Guntert by establishing a chain of custody for the substance, and by establishing that Crime Lab tests confirmed that the substance was crack cocaine. *See, e.g., Archer v. Connell,* No. 06–CV–2961, 2008 WL 434266, at *11 (E .D.N.Y. Feb. 14, 2008) (the

authenticity of fungible, real evidence, such as crack cocaine, may be established by a chain of custody that begins from the time the object came under the control of the police to its admission at trial); *People v. McGee,* 399 N.E.2d 1177, 1183 (N.Y.1979) ("Accuracy or authenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it.").

The Appellate Division rejected Petitioner's argument that a deficient chain of custody rendered the evidence insufficient. *See Lanza,* 749 N.Y.S.2d at 620–21. The court first noted that Petitioner did not dispute that the "substance contained in the two exhibits admitted at trial was the substance sold by him, as demonstrated by the undisputed testimony of the undercover officer and Kane, and the forensic chemist testified that those two exhibits were the ones from which she obtained the substance for testing." *Id.* at 620. As the Appellate Division further found, the evidence established that:

**\*12** [a]fter each sale, the undercover officer gave the substance to another member of the drug task force team, Frederick Kane, who placed the substance in a plastic evidence bag, labeled the bag and locked it in a task force safe. Kane thereafter removed the two evidence bags from the safe and transported them to the Crime Lab where he watched an evidence receiving technician weigh each bag and place them in separate, large plastic bags, which the technician then sealed and labeled.

Although the technician did not testify, the record contains a certified copy of the Crime Lab receipt record for each of the two items of evidence delivered by Kane. According to the documents, both bags were secured in the Crime Lab vault. A forensic chemist employed at the Crime Lab testified that she retrieved the two bags from the vault and placed them in a locked box to which only she had access. Approximately two weeks later, she removed the bags from the locked box, opened them and took a small amount of material from each for testing.

*Id.* at 620. The court concluded that "this evidence, including the certified Crime Lab record, was sufficient to establish a complete chain of custody." *Id.* Those findings, which are presumed to be correct, are supported by the record. 28 U.S.C. § 2254(e)(1). *See* Trial Tr. at R215–226, 232–33, 236–37, 246–49, 250–57, 258–83, 285–304, 310–22.

Petitioner nonetheless argues that the chain of custody is suspect because there were discrepancies in the physical descriptions and the weights of the items he sold to Deputy Guntert and those tested at the crime lab. First, Petitioner alleges that crack cocaine and powder cocaine have different consistencies. Dkt. No. 10, Traverse, at 18. He asserts that since the Crime Lab reports do not refer to crack cocaine, but instead to "powder," the substances tested could not have been the same substances he sold to Deputy Guntert. *Id.* at 17–19, Dkt. No. 1 at 6, Ground Three. The Appellate Division explicitly rejected this argument, finding that "[r]egardless of the words used in the reports to describe the substance tested (which also included references to compressed powder), the chemical analysis of the substance revealed that it was in fact crack cocaine." *Lanza,* 749 N.Y.S.2d at 620. That finding is consistent with the testimony of the chemist, who stated that one of the three chemical tests performed on the items revealed a "fingerprint" of "cocaine freebase" which is "known in the street as crack." Trial Tr. at R 269–70, 275. The Appellate Division further ruled that "in light of the complete chain of custody proof," this discrepancy was relevant to the "weight of the evidence and not to its admissibility or legal sufficiency." *Lanza,* 749 N.Y.S.2d at 620.

The Appellate Division reached the same conclusion with regard to Petitioner's claims that there were discrepancies in the weight of the items within the Crime Lab reports. *See Lanza,* 749 N.Y.S.2d at 620 (holding that any weight discrepancies went "to the weight of the evidence and not its admissibility or sufficiency."). The Appellate Division noted that the weight discrepancies were explained by Investigator Kane's description of the procedure used by the receiving evidence technician. *Id.* at 621. Finally, the Appellate Division noted that Petitioner argued to the jury that these discrepancies in description and weight "established that there must have been a break in the chain of custody and that, therefore, the People failed to prove that the substance sold by defendant was crack cocaine." *Id. See* Trial Tr. at R362–70. As the Appellate Division correctly pointed out, the jury was free to reject this argument and apparently did so. *Id.* Those determinations were not contrary to clearly established federal law. *United States v. Morrison,* 153 F.3d 34, 57 (2d Cir.1998) ("Breaks in the chain of custody ... bear ... only [upon] the weight of the evidence ...."); *United States v. Hon,* 904 F.2d 803, 810 (2d Cir.1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence.") (citations omitted)); *Linares v. People of the State of New York,* No. 04 Civ. 2973, 2008 WL 2115231, at \*4 (S.D.N.Y. May 14, 2008) ("Any deficiency in the chain of custody affects the weight of the evidence, not its

admissibility."); *Howard v. Keane,* No. CV–91–0723, 1991 WL 352488, *2 (E.D.N.Y. Dec. 9, 1991) (finding chain-of-custody issue not cognizable on habeas review and without merit; whether the packets introduced at the petitioner's trial and analyzed as cocaine were the packets seized was a jury question).

**\*13** In sum, a reasonable jury could have concluded that the prosecution established a complete chain of custody for the crack cocaine, or, at the very least, could have been reasonably assured of the identity and unchanged condition of the crack cocaine, and that Petitioner was the person who sold it to Deputy Guntert. This claim is dismissed.

**F. *Trial Court Errors Deprived Petitioner of a Fair Trial***
Petitioner next asserts, as he did on direct appeal, that the trial court committed several errors that deprived him of a fair trial. Specifically, Petitioner contends that the trial court: (1) improperly curtailed cross-examination regarding breaks in the chain of custody; (2) improperly created a "false scenario" for the chain of evidence by asking leading questions of Deputy Guntert regarding the time that elapsed between the sale and her meeting with Investigator Kane; and (3) failed to give a requested jury instruction on the chain of evidence. Petitioner further asserts that the trial court's failure to give the requested instruction, coupled with its alleged erroneous instruction to disregard Petitioner's evidence, worked "in tandem" to "misinform and deceive the jury." Dkt. No. 1, at 6, Ground 4; Traverse, 15–22. The Appellate Division's rejection of these claims, *Lanza,* 749 N.Y.S.2d at 621 (stating that the "remaining arguments, ... have been considered and rejected."), was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

**1. *Improperly Restricted Cross–Examination:***
A defendant's Sixth Amendment right to confront witnesses is guaranteed in both federal and state criminal proceedings. *Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986); *Pointer v. Texas,* 380 U.S. 400 (1965). The right to cross-examination is not, however, absolute, and a trial court may place reasonable limits on a defense attorney's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Young v. McGinnis,* 411 F.Supp.2d 278, 302 (E.D.N.Y.2006) (quoting *Van Arsdall,* 475 U.S. at 679 (citations omitted)). "Generally speaking, the Confrontation Clause guarantees an *opportunity*

for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (emphasis in original). Cross-examination is not improperly curtailed if "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Roldan–Zapata,* 916 F.2d 795, 806 (2d Cir.1990) (quoting *United States v. Singh,* 628 F.2d 758, 763 (2d Cir.1980), *cert. denied* 499 U.S. 940 (1991)); *see Howard v. Walker,* 406 F.3d 114, 129 (2d Cir.2005) (quoting *Davis v. Alaska,* 415 U.S. 308, 318 (1974)).

**\*14** Here, Petitioner's right to cross-examination regarding the chain of evidence was not improperly curtailed by the trial court's rulings. Defense counsel was able to question Investigator Kane, Deputy Guntert and the chemist extensively about: (1) the identity of the substance, including the differences between crack cocaine and powder cocaine; (2) the chain of custody, including whether the crack cocaine admitted into evidence at trial was in the same condition as when Kane saw it on March 17 and March 19; (3) whether other drug transactions were conducted during the same time frame; and (4) whether other, unrelated evidence was transported to the Crime Lab on the same day as the crack cocaine Petitioner sold to Guntert. Trial Tr. at R250–54, 277–83, 307–320. Counsel elicited evidence that powder cocaine has to be cooked in order to turn into crack cocaine, and that the evidence submitted to the Crime Lab for testing, and later admitted at trial, was in hard pieces. *Id.* at R251–52. Counsel also admitted two Crime Lab reports into evidence that contained references to the items as "powder." *Id.* at R278–79, 281. Finally, counsel elicited testimony from Deputy Guntert that she did not purchase powder cocaine from Petitioner. *Id.* at R310. While the trial court sustained objections to questions concerning what substance is cooked with cocaine in order to produce crack cocaine, questions regarding when Guntert became a police officer, [8] and questions regarding whether the informant was a drug dealer or a drug user [9] (*see* Trial Tr. at R250, 308, 312), those rulings do not appear to have interfered with counsel's ability to challenge the chain of custody. On the record before this Court, no violation of Petitioner's Sixth Amendment rights has occurred, and this ground is denied.

[8]     Defense counsel asked Guntert when she became a police officer, and she replied "August of 1998." Trial Tr. at R307. Counsel asked Guntert if she remembered testifying at grand jury that she

"became a police officer May 8th of 1999," and further stated, "It might just be a typo. I honestly don't know." *Id.* at R308. The court sustained the prosecutor's objection to the question, noting that "since it might be a typo and is not consistent with what has been related by the witness as to her police experience, I think counsel first needs to satisfy themselves as to whether there may have been as defense counsel states possibly a typo." *Id.* Counsel did not further object to this ruling or ask follow-up questions on this point. *Id.*

9      The trial court ruled that counsel could, however, inquire into the conduct of each drug transaction and the arrangements leading to the transactions. Trial Tr. at R312.

### 2. *"False scenario" created by the trial court's questioning of Guntert*

Petitioner also claims that the trial court interrupted the testimony of Deputy Guntert, questioned her itself, and "formed a false scenario" regarding the time frame during which she turned the cocaine over to Investigator Kane. Dkt. No. 1 at Ground Four.

A trial court's actions, including the intervention in the conduct of the trial and questioning of witnesses, will not warrant habeas relief unless it is so severe as to "entirely deny the petitioner the fundamentally fair trial guaranteed him under Due Process Clause." *Messa v. Artus,* No. 04–CV–2724, 2006 WL 3370438, at *5 (E.D.N.Y. Nov. 20, 2006) (citing *Daye v. Attorney General,* 712 F.2d 1566, 1571 (2d Cir.1983), *cert. denied* 464 U.S. 1048 (1983). As the Second Circuit has noted, a "trial is not rendered constitutionally unfair every time a trial judge asks a question obviously intended to permit a witness to emphasize testimony helpful to the prosecution or clearly designed to challenge testimony favorable to the defense." *Daye,* 712 F.2d at 1572. Rather, a judge's participation in the questioning of witnesses will result in reversal of a conviction only when the court's conduct "destroy[s] the impartial, judicious, and, above all, responsible ... courtroom atmosphere in which guilt or innocence [must] be soberly and fairly tested." *United States v. Nazzaro,* 472 F.2d 302, 309–11 (2d Cir.1973) (quotations omitted); *see also Jones v. Donnelly,* 487 F.Supp.2d 403, 410–11 (S.D.N.Y.2007) ("it is abundantly clear that only infrequently does intervention by a trial judge rise to the level of a due process violation.... A trial judge in a criminal trial ... should take part where necessary to clarify testimony

and assist the jury in understanding the evidence.") (quoting *Gayle v. Scully,* 779 F.2d 802, 806 (2d Cir.1985), *cert. denied* 479 U.S. 838 (1986) (citations omitted)).

 *15   Here, the trial court's questioning was well within constitutionally permissible bounds. During his examination of Deputy Guntert, defense counsel asked whether she conducted any drug transactions between the time Petitioner left the parking lot and the time she met with Investigator Kane to turn over the purchased crack cocaine. Trial Tr. at R314–16. The trial court initially sustained the People's objection to these questions, but ultimately permitted it, stating that it "did not fully comprehend that you were inquiring into that exceedingly minute time frame as I understand it to be." Trial Tr. at R316. The court then asked Guntert several questions, which apparently are the subject of Petitioner's complaint:

**The Court:** On March 17th of 1999 as I understand your testimony it includes that you purchased what you have testified was crack cocaine from the defendant; is that true?

**The Witness:** Yes, Sir.

**The Court:** And that's subsequent to your making the purchase, as you've testified, on March 17th of 1999 then very shortly thereafter, as you testified, that very same day, really just a few minutes thereafter, you turned over what you had purchased to Investigator Kane, is that correct?

**The Witness:** Yes, Sir.

**The Court:** And in between your making the purchase on the 17th of March as you've testified and turning it over that same day a few minutes later to Investigator Kane, as you testified, did you have any other drug purchase with any other person?

**The Witness:** No, Sir.

**The Court:** And on March 19th of 1999 as I recollect your testimony you purchased, as you testified, crack cocaine, as you testified, from this defendant, as you testified, is that correct?

**The Witness:** Yes, Sir.

**The Court:** And then shortly after making the purchase that very same day and a few minutes thereafter you turned over what you purchased to Investigator Kane, is that what you testified?

**The Witness:** Yes, Sir.

**The Court:** And in between you making the purchase on March 19th and the turning over to Investigator Kane a few minutes later that same day as you've testified did you have any other drug transaction with any other person?

**The Witness:** No, Sir.

Trial Tr. at R316–17. According to Petitioner, this questioning introduced facts not in evidence—i.e., the short time frame between the purchase of the drugs and their surrender to Investigator Kane, and that these questions led Guntert to falsely testify that she turned the drugs over to Kane within two minutes. Dkt. No. 10, Traverse, at 14–15, 20. Petitioner's challenge to this time frame appears to be based in part upon his assertion that earlier testimony by Investigator Kane established that Guntert turned the drugs over to him after she "went back to the Sheriff's Department on the other side of town." Traverse at 14. The record, however, does not support this assertion. Investigator Kane testified that after each purchase, he and Guntert met at predetermined locations. Trial Tr. at R224, 246. The actual location was not disclosed. *Id.*

**\*16** Moreover, defense counsel, and not the court, asked Guntert what time frame elapsed between each purchase and the subsequent meetings with Investigator Kane. Deputy Guntert responded that the time frame was "just a matter of minutes," or approximately "two to three minutes." Trial Tr. at R318. The trial court then asked questions designed to clarify whether this time frame of "approximately two or three minutes" was distinct from the length of time each drug transaction took. *Id.* at R318–20. Guntert confirmed that the time frame was different from the six-minute transaction on March 17 and the five-minute transaction on March 19. *Id.* at R319–20. Thus, while the trial court asked follow-up questions regarding the time frame, the court did not "create" or suggest it.

This limited intervention by the trial court was not significant and adverse to such a substantial degree that it exceeded constitutional limits. *See, e.g., Gayle,* 779 F.2d at 807 (stating that trial court's questioning did not exceed constitutional bounds despite the fact that the trial transcript revealed "that frequently statements were made by the trial judge which may be described as caustic and sometimes sarcastic [in addition to comments that] were gratuitous and might have been better left unsaid"); *Johnson v. Scully,* 727 F.2d 222, 225–227 (2d

Cir.1984) (finding trial was not unfair despite conceding that the trial court's actions were "troubling" where trial court asked prosecution witness to repeat damaging testimony and questioned the defendant's theory of the case); *Rosario v. Scully,* 679 F.Supp. 384, 387 (S.D.N.Y.1988) ("although the trial judge's conduct may have impaired the ability of both prosecution and defense counsel to try the case as they wished, the overall conduct of the trial was not such that 'public confidence in the impartial administration of justice was seriously at risk.' ") (quoting *Daye,* 712 F.2d at 1572). The trial court's direct questioning of Deputy Guntert did not violate Petitioner's due process right to a fair trial.

### 3. *Jury instructions*

Petitioner next argues that the trial court erred when it refused to instruct the jury that the prosecutor had to prove the identity of the substance he sold to Deputy Guntert by establishing a chain of custody beyond a reasonable doubt. Dkt. No. 1 at 6, Ground 4; Dkt. No. 10, Traverse, at 21; *see* Dkt. No. 6, Ex. 24, App. Br., at 14–15. Petitioner also claims that the failure to give that instruction, coupled with an erroneous instruction that Petitioner did not present evidence in this case, served to mislead the jury. *Id.*

The adequacy of a state court's jury instructions is generally a matter of state law. *Cupp v. Naughten,* 414 U.S. 141, 146 (1973). Habeas relief requires a petitioner to base his claims on a violation of the federal Constitution, and Petitioner must therefore show that the trial court's failure to give a certain jury instruction violated a right guaranteed to him by the Fourteenth Amendment. *Id.* at 146. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Foss v. Graham,* No. 01–CV–420, 2007 WL 2071699, at \*12 (N.D.N.Y. Jul. 17, 2007) (Hurd, J., adopting Report–Recommendation of Bianchini, M.J.) (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977)). On collateral review of a claim that a jury instruction was erroneous, the Supreme Court has instructed that "[t]he only question ... is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (quoting *Cupp,* 414 U.S. at 147). A habeas petitioner carries an "especially heavy" burden in order to succeed on a claim that a jury instruction was erroneously refused because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson,* 431 U.S. at 155.

2008 WL 4104454

See *Carroll v. Hoke,* 695 F.Supp. 1435, 1437 (E.D.N.Y.1988) (noting that standard on habeas review is particularly rigid where claim of prejudice stems from failure to give an instruction), *aff'd without op.,* 880 F.2d 1318 (2d Cir.1989). A jury charge violates the federal constitution only if there is a reasonable likelihood that the jury understood the instructions to allow them to convict even if the government has not established every element of the charged offense beyond a reasonable doubt. *Justice v. Hoke,* 45 F.3d 33, 34 (2d Cir.1995) (citing *Victor v. Nebraska,* 511 U.S. 1, 5 (1994)).

**\*17** When deciding whether the evidence requires a jury instruction under state law, district courts must defer to state court interpretations of its own laws as long as the state court's interpretation is constitutional. *Davis v. Strack,* 270 F.3d 111, 123 n. 4 (2d Cir.2001). To find that the failure to give a jury instruction on a particular defense violated a petitioner's due process rights, "a court must first find that the habeas petitioner was 'erroneously deprived of a jury instruction to which he was entitled under state law.' " *Graham v. Lape,* 476 F.Supp.2d 399, 404 (S.D.N.Y.2007) (quoting *Davis,* 270 F.3d at 123). If so, the court must then determine whether the failure to give the requested charge was so harmful as to make the conviction unfair. *Jackson v. Edwards,* 404 F.3d 612, 621 (2d Cir.2005); *Rustici v. Philips,* 497 F.Supp.2d 452, 470 (E.D.N.Y.2007). The jury charge must be considered in the context of the overall charge given and the evidence presented at trial. *Munoz v. Riley,* No. 91–CV–2730, 1996 WL 575943, at \*3 (E.D.N.Y. Sept. 24, 1996) (citing *Cupp,* 414 U.S. at 146–47.)

Here, defense counsel asked the court to instruct the jury that "the People must prove that the items sold or the item obtained by Deputy Guntert was the same item delivered to Investigator Kane, which was the same item delivered to the lab technician and which is the same item that tested positive for cocaine." Trial Tr. at R347. The trial court denied the request, ruling that no such charge was required, nor was it appropriate to give "some specific charge that is over and above the particular elements of the crime as defined by law that some particular evidentiary matter itself has to be, as it were, proven beyond a reasonable doubt." Trial Tr. at R347. The court reminded counsel that he was free to make that argument to the jury. *Id.* at 347–48. When counsel renewed his objection, the trial court further explained that it would not parse out "individual items of evidence" and give specific instructions "that certain items of evidence somehow have to be proved beyond a reasonable doubt." *Id.* at R349. The court further noted that it was the elements of the crime, and

not specific items of evidence, that had to be proven beyond a reasonable doubt, and that counsel was free to argue his evidentiary points to the jury. *Id.* at R350.

This Court has found no authority-and Petitioner has cited none- to suggest that a defendant is entitled under state law to a jury instruction that each link in a chain of custody of evidence must be established beyond a reasonable doubt. To the contrary, while "the jury must be instructed, as they were here, that the People are required to prove every element of every offense beyond a reasonable doubt, there is no requirement that they be instructed that every fact established at trial must be proven beyond a reasonable doubt." *People v. Foss,* 700 N.Y.S.2d 499, 503 (N.Y.App.Div., 3d Dep't.1999), *lv. denied* 731 N.E.2d 620 (N.Y.2000), *habeas corpus denied sub nom Foss v. Graham,* No. 01–CV–420, 2007 WL 2071699 (N.D.N.Y. Jul. 17, 2007) (Hurd, J., adopting Report—Recommendation of Bianchini, M.J.). *See Young v. McGinnis,* 411 F.Supp.2d 278, 310–11 (E.D.N.Y.2006) ("Because the charge conveyed to the jurors the proper standard of proof, there was no need for the court to charge the jurors specifically that the State had to prove beyond a reasonable doubt that petitioner had made the statements attributed to him."); *People v.. Guidici,* 3 N.E. 493, 496 (N.Y.1885) ("The rule requiring proof beyond a reasonable doubt does not require that the jury be satisfied beyond a reasonable doubt of each separate link in the chain of evidence, isolated from its connection with the other testimony. It is sufficient, taking the testimony all together, if the jury are satisfied beyond a reasonable doubt that the defendant is guilty.") Accordingly, Petitioner was not erroneously deprived of a jury instruction under state law, and the trial court's refusal to give his requested instruction did not deprive Petitioner of due process.

**\*18** Petitioner correctly notes that the trial court instructed the jury that it could not draw any "negative inference whatsoever by reason of his not testifying in this case or not introducing any evidence in this case." *See* Trial Tr. at R383. The court also instructed them, however, that all items of evidence that were "actually received into evidence during the course of the trial" constitute evidence and "are to be considered by you and used as your foundation for your deliberations." *Id.* at 381. That would include, by definition, the two written reports (Defendant's Exhibits A and B) Petitioner introduced into evidence during the cross-examination of the chemist and "received in evidence" by the court. Trial Tr. at R276–78.

Finally, viewing the jury charge as a whole, there does not exist a reasonable likelihood that the jury applied an incorrect standard when determining Petitioner's guilt. *Cupp,* 414 U.S. at 147; *Beverly v. Walker,* 118 F.3d 900, 902–03 (2d Cir.1996), *cert. denied* 522 U.S. 883 (1997). The due process clause requires that a criminal defendant be convicted only if the prosecution proves "beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York,* 432 U.S. 197, 210 (1977). The jury must be instructed accordingly. *See United States v. Desimone,* 119 F .3d 217, 227 (2d Cir.1997) ("[J]ury instructions must be viewed in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable-doubt concept to the jury."), *cert. denied* 525 U.S. 874 (1998).

The trial court instructed the jury that "it is the obligation of the prosecution to establish beyond a reasonable doubt each and every element of a particular alleged crime and to do so from evidence in the case." Trial Tr. at R383–84. The court further instructed the jury that if it concluded that the prosecution failed to establish "any one or more" of the elements of a particular crime, it must return a verdict of not guilty. *Id.* at R384–85. The court instructed the jury extensively on the meaning of reasonable doubt, including that a "doubt of defendant's guilt to be a reasonable doubt must arise either from the nature and quality of the evidence in the case or from the lack or insufficiency of the evidence in the case." *Id.* at R387–90. It then told the jury that in order to find Petitioner guilty, it had to find (1) that he knowingly and unlawfully sold items received into evidence as People's Exhibits one and two and "testified to by prosecution witnesses as containing cocaine," Trial Tr. at R392–93, 401, and (2) that the People established beyond a reasonable doubt that the items sold were cocaine. *Id.* at 393. Viewed as a whole, the trial court's charge was proper, and did not deprive Petitioner of a fair trial.

### 4. *Admission of audio and videotapes*

Petitioner asserts that the audio and video tapes of the undercover drug buys should not have been admitted in evidence. Dkt. No. 10, Traverse, at 20. Evidentiary errors deprive a petitioner of due process only when the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco,* 431 U.S. 783, 790 (1977)). To meet his burden, Petitioner must show that the challenged evidence, in light of the entire record, was "sufficiently material to provide the basis for conviction or

to remove a reasonable doubt that would have existed on the record without it." *Brumfield,* 297 F.Supp.2d at 619 (quoting *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985)). Petitioner has not met his burden.

**\*19** Under New York law, the decision whether to admit audio and video tapes rests within the sound discretion of the trial court. *See People v. Lubow,* 272 N.E.2d 331 (N.Y.1971); *People v. Rivera,* 691 N.Y.S.2d 4, 9 (N.Y.App. Div., 1st Dep't 1999), *aff'd* 729 N.E.2d 339 (N.Y.2000). "If a recording is so unintelligible that the jury will be forced to speculate as to its contents, it must be excluded from evidence." *Rivera,* 691 N.Y.S.2d at 9. If, however, the likelihood of speculation is eliminated, the recording may be admissible even if it contains inaudible or unviewable portions. *People v. Morris,* 819 N.Y.S.2d 359, 361 (N.Y.App. Div., 3d Dep't 2006), *lv. denied* 857 N.E.2d 1144 (N.Y.2006); *Rivera,* 691 N.Y.S.2d at 9.

Here, the court ruled that the tapes were "sufficiently intact and audible to go to a jury." *Id.* at R155. The court further noted that there were no mechanical errors or gaps in the recordings, that they accurately reflected the depicted events as they unfolded, and that the entirety of each transaction was recorded from "beginning to end." *Id.* at R153–54. The court found that the video clarity was "excellent" and that, to the extent that there were audibility problems with the videotape, the audio tape of the same transaction was "quite audible" rendering audibility as to the videotape moot. *Id.* at R154. The trial court did not abuse its discretion in admitting the audio and video tapes into evidence. *Rivera,* 691 N.Y.S.2d at 9.

Even if the tapes were improperly admitted, this Court agrees with the Appellate Division's determination that "[i]n light of the testimony of the undercover officer regarding her participation in the drug transactions, and considering the weight and nature of the proof of defendant's guilt without the audiotapes of the transactions or the transcripts of those tapes," *Lanza,* 749 N.Y .S.2d at 621, the admission of the tapes was harmless and did not have a substantial and injurious effect on the jury's verdict. *Fry v. Pliler,* 127 S.Ct. 2321, 2328 (2007) (a constitutional error in a state-court criminal trial is harmless as long as it did not have a "substantial and injurious effect" on the jury's verdict, and stating that this standard of review applies in section 2254 proceedings regardless of "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard" enunciated in *Chapman v. California,* 386 U.S. 18 (1967))

(citing *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993)). *See Rice v. Senkowski,* No. 04–CV–335, 2007 WL 2789504, at *6 (N.D.N.Y. Sept. 24, 2007) (Kahn, D.J. adopting Report–Recommendation of Peebles, M.J.); *Timberlake v. Taylor,* No. 04–CV–2846, 2008 WL 756160, at *3 (S.D .N.Y. Mar. 20, 2008); *Toland v. Walsh,* No. 04–CV–773, 2008 WL 65583, at *18–19 (N.D.N.Y. Jan. 4, 2008). This claim is thus dismissed.

### III. *CONCLUSION*

**\*20 WHEREFORE,** after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is hereby

**ORDERED,** that Lanza's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

**ORDERED,** that no Certificate of Appealability shall issue with regard to any of Lanza's claims; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4104454

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 55 of 87

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

2018 WL 1175090
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamison ADSIT, Petitioner,

v.

Anthony J. ANNUCCI, Acting Commissioner of
the Department of Corrections and Community
Supervision; Tina M. Stanford, Chairwoman of
the New York State Board of Parole, Respondents.

No. 9:16-CV-00817 (GTS/CFH)
|
Signed 01/10/2018
|
Filed 01/11/2018

**Attorneys and Law Firms**

The Abbatoy Law Firm, PLLC, OF COUNSEL: DAVID M.
ABBATOY, JR., ESQ., 45 Exchange Boulevard, Suite 925,
Rochester, New York 14614, Attorney for Petitioner.

Hon. Eric T. Schneiderman, OF COUNSEL: PAUL B.
LYONS, ESQ. Assistant Attorney General, Attorney General
for the State of New York New York, Office 120 Broadway,
New York, New York 10271, Attorneys for Respondents.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]    This matter was referred to the undersigned for
Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Presently pending before the Court is a petition for
a writ of habeas corpus filed pursuant to 28 U.S.C. §
2254 by petitioner Jamison Adsit ("petitioner"), formerly an
inmate in the custody of the New York State Department
of Correctional and Community Supervision ("DOCCS").
Dkt. No. 1 ("Pet.") at 1. On July 1, 2009, after a jury
trial in Onondaga County Court, petitioner was convicted
of criminal sexual act in the second degree. Id. Petitioner
was sentenced to five years imprisonment, and is currently
serving ten years of post-release supervision. Id. On July
6, 2016, petitioner filed a pro se petition seeking a writ

of habeas corpus on the grounds that (1) his trial attorney
was ineffective, and (2) he is actually innocent. Id. at 5,
7. On September 30, 2016, counsel David M. Abbatoy
appeared on behalf of petitioner. Dkt. No. 7. On March 2,
2017, petitioner's counsel filed a memorandum of law in
support of habeas corpus relief, arguing that petitioner's
trial counsel was ineffective for asserting factually inconsistent
and mutually exclusive defenses at trial. Dkt. No. 16 ("Pet.
Mem. of Law"). Respondents oppose the petition. Dkt. No.
22 ("Resp. Mem. of Law"). For the reasons that follow, it is
recommended that the petition be denied.

**I. Background**

**A. The Trial**

**1. The Prosecution's Case**

On the morning of October 1, 2008, paramedic Eric Bosco
and his partner responded to a 911 call at a pharmacy in
Syracuse, New York after receiving a report of a woman
unconscious in the back of the store. Dkt. No. 24-6 ("Tr. 2(1)")
at 28. [2] The woman, referred to hereafter as "B.N.," appeared
to be unconscious; however, when the paramedics tried to
rouse her, she would "move away." Id. B.N. did not speak, and
Mr. Bosco noted that there was foam around her mouth. Id.
Shortly after the paramedics loaded B.N. into the ambulance,
she began to "seize"—"curl in on herself with her arms and
then start[ ] to violently shake"—for about thirty seconds. Id.
at 29.

[2]    The page numbers following Dkt. No. 24 refer to
the pagination of the header numbers generated
by CM/ECF, not the pagination provided in the
transcripts.

The paramedics brought B.N. to the emergency room
at Crouse Hospital in Syracuse, where Craig Hanifin, a
physician's assistant, was stationed. Tr. 2(1) at 30, 34-35. Mr.
Hanifan noted that B.N. was "awake and alert" and told him
her name, but laid still and "had a gaze in her eyes where
she wasn't focusing on much of anything." Id. at 36, 41, 42.
Mr. Hanifin attempted to communicate with B.N., but she was
unresponsive, aside from stating her first name, and repeating
the phrase "right here" fifteen or twenty times. Id. at 37, 48.
Although she could "follow only simple commands," B.N.
was otherwise not "oriented"—i.e., she did not know the

Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 56 of 87

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

time or her location. Id. at 41, 42. Following Mr. Hanifan's examination, B.N. was sent for a CAT scan, and admitted to the neurology department. Id. at 37, 49. Mr. Hanifan admitted that although it was the hospital's standard policy that, absent emergency situations, a patient must consent prior to admission for treatment, he could not remember whether B.N. consented. Id. at 49-51.

**\*2** Crouse Hospital employed a safety companion program which assigned individuals to sit with confused or disoriented patients. Tr. 2(1) at 54. On B.N.'s first night in the hospital, charge nurse Peggy Romero assigned petitioner to act as B.N.'s safety companion. Id. at 59. On October 2, 2008, Ms. Romero assigned nursing assistant Shontelle Williams to sit with B.N. during her 3:00 P.M. to 11:30 P.M. shift. Id. at 59, 60. Ms. Williams identified that B.N. "could talk[,] but you didn't understand what she was saying because it had a lot to do with numbers and just a lot of rambling that you couldn't make sense of it." Id. at 61-62. B.N. watched television the majority of the time, but stood up and wandered off two times to go to the bathroom, but Ms. Williams had to "stop her and turn her so she would know that's the door to go to the bathroom." Id. at 67, 72. B.N. "would point to things, and [Ms. Williams] didn't know what she was talking about." Id. at 67. Ms. Williams noted that B.N. was not "physically helpless." Id. at 70. Approximately three or three-and-a-half hours into Ms. William's shift, petitioner entered the room and instructed Ms. Williams that the charge nurse assigned her to another patient, and that he would continue watching B.N. Id. at 60.

At approximately 10:50 P.M., Fred Cosby, another safety companion, arrived at the nurses' station to receive his room assignment for his overnight shift. Dkt. No. 24-8 ("Tr. 3") at 7. Mr. Cosby walked to his assigned room, and noticed that the door was closed, which was "kind of strange ... [at the] change of shift time." Id. Upon entering the room, Mr. Cosby noticed that the curtain was pulled to separate the two patients in the room. Id. at 8. Mr. Cosby walked behind the curtain and saw petitioner "kneeling on the bed with one knee on the bed." Id. The woman in the bed was lying on her back, propped up on her elbows with pillows behind her. Id. at 9. Petitioner's "groin area" was positioned "[r]ight to where her face was." Id. Mr. Cosby turned and "bolted" toward the door. Id. Before Mr. Cosby could exit the room, petitioner approached him. Id. at 11, 12. Petitioner stated that he was "glad that [Mr. Cosby] walked in right then because this lady was crazy," and that B.N. had been "pulling on him" and "grabbing his groin" all night. Id. at 12. Petitioner told Mr. Cosby "something to the

effect that 'I'm so glad you got my back' " because they both worked for the same temporary staffing agency. Id. Mr. Cosby thereafter informed Ms. Williams what he had observed. Tr. 2(1) at 62; Tr. 3 at 13. Mr. Cosby and Ms. Williams then reported the incident to Ms. Romero, the charge nurse. Tr. 2(1) at 62-63; Tr. 3 at 13.

Ms. Romero first learned of the incident when petitioner, along with B.N.'s bedside nurse Sara Enders, approached her at approximately 11:00 P.M. to file an incident report. Tr. 2(1) at 75-76. Petitioner alleged that B.N. groped him. Id. Soon after, "it was brought to [Ms. Romero's] attention that something else had happened." Id. at 76. Petitioner remained at the nurses' station past the end of his 11:00 P.M. shift. Id. at 77-78. Ms. Romero described petitioner as "very nervous." Id. at 78.

On the morning of October 3, 2008, Syracuse Police Officer John Tucker received a "sex offense call" from Crouse Hospital. Dkt. No. 24-7 ("Tr. 2(2)") at 15-16. Mr. Tucker first spoke with the nursing supervisor, then Mr. Cosby, and finally, B.N. Id. at 16. Tucker noted that B.N. "seemed very incoherent," and believed that her son was in the room, even though he was not. Id. at 17. Although she was speaking words, "there was nothing that really made any sense." Id. In the ten to fifteen minutes that Mr. Tucker spent in the room with B.N., B.N. pointed to things that were not in the room approximately one dozen times. Id. at 17-18. Mr. Tucker was unable to gather any "meaningful information" from her. Id. at 18. However, Mr. Tucker acknowledged that B.N. did state her name, and informed him that she was not the missing woman reported in the newspaper. Id. at 19, 20.

On October 3, 2008, Detective ("Det.") Brendan Finnerty of the Abused Persons Unit interviewed petitioner at the police station. Tr. 2(2) at 32-33. Petitioner signed a Miranda waiver. Id. at 34. Petitioner told Det. Finnerty that, on the night of October 2, he acted as B.N.'s safety companion. Id. After he escorted her to the bathroom, she climbed back into bed, "grabbed him by the genitals and ... put his penis in her mouth." Id. Det. Finnerty questioned petitioner's story, telling him that it was difficult to "understand how [B.N.] could do that if [petitioner] weren't erect or aroused." Id. at 34-35. Plaintiff acknowledged that he had been thinking about his girlfriend, and, therefore, had been "kind of erect and aroused." Id. at 35. Petitioner informed Det. Finnerty that B.N. said "she wanted it." Id. Petitioner declined to give a written statement, and was released pending further investigation. Id.

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

**\*3** On the night of October 3, 2008, Det. Finnerty interviewed B.N. at the hospital. Tr. 2(2) at 35. Det. Finnerty described B.N. as "totally incoherent." Id. When asked if she knew where she lived, B.N. responded, "apples, triangles, and painting." Id. B.N.'s answers were not responsive to Det. Finnerty's questions. Id. at 36. B.N. remained in bed for the interview. Id.

Doctor Thomas Falci, a consulting psychiatrist at Crouse, first interviewed B.N. on October 3, 2008. Tr. 2(2) at 50, 53. Hospital representatives asked Dr. Falci to determine whether B.N. was able to consent to sexual activity and able to file a police report. Id. at 53. After reviewing her medical and lab reports, Dr. Falci determined that B.N. had a seizure prior to admission to the hospital, and had been confused after the seizure. Id. at 54. During their first meeting, Dr. Falci attempted to converse with B.N., but recognized that, "in basic layman's terms, the lights were on, but nobody was home." Id. at 55-56. Dr. Falci described B.N. as "incoherent," and when he attempted to discuss with her what she was watching on the television, she "just started to ramble about Georgia." Id. at 56. Dr. Falci determined that B.N. was "globally confused" and "not able to interpret her environment." Id.

Dr. Falci described B.N. as being in a postictal state. Tr. 2(2) at 59. He stated that "there was a global dysfunction in the parts of [B.N.'s] brain that control[ ] speech, reception of speech, memory, working memory, executive function, decision making, ... and ... spatial recognition." Id. at 63. She understood some "very simple verbal commands." Id. at 66. Dr. Falci defined "aphasia" as "the difficulty in communicating with words." Id. at 67. B.N. had both "expressive aphasia"—where the patient has "difficulty [ ] expressing herself"—and "receptive aphasia"—in which the patient "cannot interpret what is told to [her]." Id. Dr. Falci recognized that B.N. had no memory of the prior night. Id. at 66. The information that B.N. relayed—her name, where she was born, and that she had a son—were "automatic responses" or "overlearned materials," and not affected by the seizure. Id. at 64-65. Similarly, B.N. could engage in "automatic routine behaviors" like going to the bathroom, but could not find the bathroom without assistance. Id. at 70. Dr Falci met with B.N. a second time on October 6, 2008, and noted that her condition had improved. Id. at 74.

In his assessment, Dr. Falci determined that B.N. could not have physically communicated an unwillingness to engage in

a sexual act on the night of the incident. Tr. 2(2) at 75. Dr. Falci affirmed that, in his opinion, on October 2, 2008, B.N. was "suffering from a mental defect rendering her incapable of appraising the nature of sexual activity." Id. at 76.

On October 3, 2008, nurses took oral and facial swabs from B.N. to collect DNA, and collected her bed linens, nightgown, and hand coverings for testing. Tr. 2(2) at 141. Although forensic science expert Marie Guido found "one sperm" on the facial swab, there was not enough DNA to perform nuclear testing. Tr. 3 at 20, 33. However, Sheila Gentile, senior forensic scientist, testified that upon performing the more sensitive Y STR DNA testing, she "could not exclude Mr. Adist[ ] and his paternal relatives as contributors" of the DNA sample. Id. at 33-34, 81.

### 2. Petitioner's Case

**\*4** Petitioner did not testify at trial. Dr. Richard Kavey, a board certified psychiatrist, considered B.N.'s medical records, police reports, witness statements, grand jury testimony, and other material associated with the case, and concluded that B.N. "suffered from a delirium that was getting rapidly better throughout the course of her hospitalization and that she wasn't physically helpless at the time of the alleged instance." Tr.3 at 103-104, 106. Further, in Dr. Kavey's opinion, B.N. "did have some ability ... to understand her circumstances." Id. However, Dr. Kavey was unsure "to what degree she had ability to appraise a decision to enter into a sexual act—an act of oral sex" because the medical records were "not very clear and contradictory." Id. The medical records fail to demonstrate whether Dr. Falci or any other medical practitioner "specifically attempt[ed] to examine [B.N.] for capacity to engage in a sexual act and capacity to file a complaint, to understand—to ask her about sex." Dkt. No. 24-9 ("Tr. 4") at 18. In addition, Dr. Karvey found that B.N.'s "expressive aphasia ma[d]e it difficult for her to reveal what she understands or for any examiner to get a good appreciation or appraisal ... of what she is capable of thinking." Id.

### 3. Verdict and Sentencing

The jury found petitioner guilty of criminal sex act in the second degree, and not guilty of criminal sex act in the first degree. Dkt. No. 24-10 ("Tr. 5") at 16-17. On August 14, 2009, the Hon. Joseph E. Fahey sentenced petitioner to a

Case 9:18-cv-01063-MAD-TWD   Document 27   Filed 04/21/21   Page 58 of 87

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

determinate sentence of five years, followed by ten years of post-release supervision. Dkt. No. 24-11 ("Sentencing Tr.") at 7.

### B. Petitioner's Motion to Vacate the Judgment

On May 2, 2010, petitioner filed a pro se motion to vacate the judgment of conviction pursuant to N.Y. Crim. Law § 440.10. Dkt. No. 24-1 ("SR1") at 184—Dkt. No. 24-2 ("SR2") at 285. First, petitioner argued that George Hildebrandt, Esq., the attorney who represented petitioner at the pre-trial Huntley hearing, denied him effective assistance of counsel when he failed to hire: (1) an investigator, (2) a forensic expert to review physical evidence and interpret the findings of the prosecution's experts, and (3) a psychologist to interview the victim and interpret her medical records. Id. at 193. Moreover, petitioner argued that Mr. Hildebrandt improperly withdrew from representation. Id. at 199-201. Second, petitioner argued that Michael Spano, Esq., the attorney who represented him at trial, denied him effective assistance of counsel when he failed to: (1) call alleged exculpatory witnesses, (2) cross-examine witnesses, (3) disclose a conflict of interest, and (4) hire expert witnesses to testify and explain the DNA evidence. Id. at 202-215, 227-240. Lastly, petitioner argued that the trial evidence was legally insufficient. Id. at 215-227.

On September 16, 2010, the Onondaga County Court denied petitioner's motion, determining that some of plaintiff's claims were procedurally barred because they could be raised in a direct appeal, and that petitioner "has not met [his] burden of demonstrating the absence of strategic or other legitimate explanations' [sic] for counsel's [3] alleged errors." Dkt. No. 24-3 ("SR3") at 61, 62. On June 24, 2011, the Fourth Department denied petitioner's application for leave to appeal. Id. at 80.

[3]    The September 16, 2010 decision addresses only Mr. Spano's representation. See SR3. at 60-63.

### C. Petitioner's Direct Appeal

Petitioner's attorney on direct appeal argued that: (1) the trial evidence was legally insufficient to support the conviction for criminal sexual act in the second degree; (2) the weight of credible evidence at trial did not support the conviction of criminal sexual act in the second degree; and (3) the

trial counsel was ineffective because he asserted inconsistent defenses. SR1. at 1-34. The People opposed. Id. at 143-75.

In a decision dated February 6, 2015, the Appellate Division, Fourth Department, denied petitioner's appeal. SR1. at 176-77; People v. Adsit, 125 A.D.3d 1430 (N.Y. App. Div. 2015). The appellate panel concluded that the evidence at trial was "legally sufficient to establish that the victim lacked the mental capacity to appraise the nature of her sexual conduct and thus was unable to consent to defendant's actions." SR1. at 117. The panel concluded that the verdict was not against the weight of evidence. Id. The panel further "rejected defendant's contention that he was denied the right to effective assistance of counsel," concluding that "[v]iewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation ... defendant received meaningful representation." Id.

**\*5** Petitioner filed an application for leave to appeal to the New York State Court of Appeals. SR1. at 178-80. By Order dated May 7, 2015 the Court of Appeals denied petitioner's leave application. Id. at 183; People v. Adsit, 25 N.Y.3d 1068 (2015).

## II. Discussion

### A. Actual Innocence

As a preliminary matter, in his pro se petition, petitioner asserted an actual innocence claim, contending that:

> Eyewitness has three different accounts of what he "claimed" he saw; eyewitness's final account of what he stated made the accusation physically impossible to have happened; a fake confession was used against [petitioner] that was completely uncorroborated and disproven [sic] by forensic evidence showing detective committed perjury; [petitioner's] counsel refused to call witness that encountered detective's malicious intent toward [petitioner]; DNA evidence not belonging to [petitioner] was used against [petitioner] at trial;

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

results of evidence collected and rape kit substantiate [petitioner's] claim of innocence; form of DNA testing used (Y-STR) tracks paternal lineage, which produces innumerable results, not isolated results.

Pet. at 7. Petitioner failed to raise this claim in his direct appeal as his appellate "counsel stated that due to the fact an actual innocence claim was not contained in the trial record, it could not be raised."[4] Id. Instead, petitioner contends that he raised this claim in the additional answering affirmation of his CPL § 440.10 Motion to Vacate Judgment. Id.; SR2. at 204-205. Petitioner's counseled memorandum of law does not address the actual innocence claim. See Pet. Mem. of Law.

[4]     To preserve "a question of law on appeal, a party must either make an objection at trial or the trial court makes an express ruling on a specific question." DeLee, 2013 WL 3049109, at *20 (citing N.Y. CRIM. PROC. LAW § 470.05(2); Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007)). "A petitioner is procedurally barred from seeking habeas relief on the basis of a claim not properly preserved in state court unless he provides an adequate justification excusing this error and demonstrates that prejudice has resulted from the alleged violation for which relief is being sought." Ballard v. Walker, 772 F. Supp. 1335, 1338 (E.D.N.Y. 1991) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87(1977)).

In Herrera v. Collins, the Supreme Court of the United States held that an actual innocence claim, "absent an independent constitutional violation occurring in the underlying state criminal proceeding," is not a ground for federal habeas relief. Herrera v. Collins, 506 U.S. 390, 400, 404-05 (1993). In McQuiggin v. Perkins, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid the "expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). The McQuiggin Court cautioned that its holding did "not resolve[ ] whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." Id. at 392 (citation omitted). Instead, the Court recognized that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits

notwithstanding the existence of a procedural bar to relief." Id.

**6** However, "the Second Circuit, citing [House v. Bell], recently suggested that a freestanding actual innocence claim may be valid if it meets the threshold standard set forth in McQuiggin." Ortiz v. Semple, No. 3:17-CV-167 (VLB), 2017 WL 2702245, at *5 (D. Conn. June 22, 2017) (internal quotation marks omitted) (citing Russo v. U.S., 692 Fed.Appx. 75, 76 (2d Cir. 2017) (summary order) ("For the same reason, Russo has not stated a valid freestanding innocence claim, as he has failed to satisfy even the most lenient actual innocence standard, which requires a movant to demonstrate that, 'in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.' ")). Generally, courts within this Circuit have declined to reach freestanding actual innocence claims in light of uncertainty within the federal courts, or have denied the claim based on the petitioner's inability to meet the "extraordinarily high" standard. See Sweeney v. Laffin, No. 12-CV-6483 (KMK) (LMS), 2017 WL 4342138, at *7 (S.D.N.Y. Sept. 28, 2017) (internal quotation marks and citations omitted) ("Insofar as Petitioner advances a freestanding actual innocence claim as a ground for habeas relief, the Court notes that the Supreme Court has never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence. However, even if a freestanding actual innocence claim could warrant habeas relief, Petitioner has failed to make such a showing because the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high,' and such a showing requires more convincing proof of innocence than the showing of innocence necessary to satisfy [Schlup v. Delo[5] ]."); Whitield v. Graham, No. 10-CV-3038 (RJS) (RLE), 2017 WL 4060571, at *3 (S.D.N.Y. Sept. 13, 2017) (citation omitted) (emphasis in original) ("[I]ndeed, the Supreme Court has not definitively pronounced on whether actual innocence is a cognizable independent ground for habeas relief, while the Second Circuit has consistently declined to recognize freestanding actual-innocence claims."); Colon v. Sheahan, No. 13 Civ. 6744 (PAC) (JCF), 2016 WL 3919643, at *15 (S.D.N.Y. Jan. 13, 2016) (internal quotation marks and citations omitted) ("[T]he Supreme Court has not determined that such a claim can be the basis for issuance of the writ. What is clear is that the burden to establish entitlement to the writ based on such a claim would be extraordinarily high—higher than the burden sufficient to overcome a procedural default.... And because Mr. Colon cannot meet that standard, it is unnecessary to

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)
2018 WL 1175090

Case 9:18-cv-01063-MAD-TWD Document 27 Filed 04/21/21 Page 60 of 87

address the question the Supreme Court has refused to answer regarding whether federal habeas relief is ever available for a freestanding claim of actual innocence.").

5      Schlup v. Delo, discussed further below, assesses the credibility of actual innocence claims. See discussion II.A. at 14, infra.

Therefore, even if the undersigned concluded that petitioner's freestanding actual innocence claim is entitled to habeas relief, petitioner has failed to establish a credible claim of innocence. A claim of actual innocence must be "credible and compelling." Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012).

> For the claim to be "credible," it must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. For the claim to be "compelling," the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

Id. (citing Schlup v. Delo, 513 U.S. 298, 324 (1995); House v. Bell, 547 U.S. 518, 537-38 (2006)) (internal quotation omitted). Petitioner has not set forth evidence of "new, reliable evidence" not presented at trial, and the conclusory allegations set forth in his pro se petition do not establish that "no reasonable juror would find him guilty beyond a reasonable doubt." Id.

Accordingly, as petitioner has not properly placed his actual innocence claim before the Court under the statute of limitations scheme set forth in McQuiggin, and, because petitioner fails to meet even the most lenient standard for demonstrating that his actual innocence claim is credible and compelling, it is recommended that petitioner's claim be denied.

**B. Exhaustion**

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). A petitioner need not have cited "book and verse on the federal Constitution" in his claim in state court for the claim to have been exhausted. Picard, 404 U.S. at 278 (quotation omitted). Rather, a petitioner may have fairly presented his claim to the state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegations of a pattern of facts that is well within the mainstream of constitutional litigation.

*7  Daye v. Attorney Gen. of the State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).

As the Second Circuit has held, "to invoke 'one complete round of the State's established appellate review process', a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005) (quoting Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005)) (internal citation omitted). Applicants for leave to appeal must submit legal briefs and other documents to the New York State Court of Appeals, identifying the issues on which the application is based, and must focus on identifying problems of reviewability and preservation of error. See id.

In Smith v. Duncan, the Second Circuit stated that the New York State Court of Appeals would construe a petitioner's leave application as abandoning any claims that were

2018 WL 1175090

presented to the Appellate Division, but not included in the leave application. See Smith, 411 F.3d at 345. In Grey v. Hoke, the Second Circuit held that where a petitioner requested review by the New York State Court of Appeals of only one of the three issues raised in the Appellate Division, the other two issues were not preserved for exhaustion purposes. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). The Court found that it would "undermine the very considerations of comity" to consider a constitutional claim as to which no ruling was requested from the state appellate court. See id. (citation omitted).

If a petitioner has not exhausted his state court remedies, but no longer has remedies available [6] in state court with regard to these claims, they are "deemed" exhausted, but are also procedurally defaulted. [7] See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (citations omitted). A state prisoner who has procedurally defaulted on a federal claim in a state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that the federal court's failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 748-50 (1991). A miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

[6]    "When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (quoting Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997)).

[7]    "A claim is procedurally defaulted when a petitioner fails to raise a claim in state court and can no longer do so." Siao-Pao v. Connolly, 564 F. Supp. 2d 232, 240 (S.D.N.Y. 2009) (citing Washington v. James, 996 F.2d 1442, 1446 (2d Cir. 1993)).

### 1. Ineffective Assistance of Counsel

*8  Presently, petitioner contends that he received ineffective assistance of counsel because his trial attorney: (1) did not investigate petitioner's assertion of innocence; (2) did not consult or seek out witnesses on petitioner's behalf; (3) refused to call witnesses on petitioner's behalf; (4) did not seek out or hire proper experts; (5) took an adverse stance against him and the evidence; and (6) changed trial tactics mid-trial and then back again. Pet. at 5. After retaining counsel, petitioner submitted a memorandum of law in further support of his request for writ of habeas corpus, limiting his ineffective assistance of counsel argument to counsel's factually inconsistent and mutually exclusive defenses at trial. See Pet. Mem. of Law. In his direct appeal to the Appellate Division, petitioner focused his ineffective assistance of trial counsel claim on counsel's "irreconcilable defenses." SR1. at 178-180. Therefore, at the appellate level, petitioner raised only the factually inconsistent defense issue under the ineffective assistance of counsel claim.

Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had. See Daye, 696 F.2d at 190 n.3. "The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." Id. at 192. Although this requirement does not mean that "there can be no substantial difference in the legal theory advanced to explain an alleged deviation from constitutional precepts," id. at 192 n.4, as this Court held in DeLee v. Graham, a petitioner's failure to include all of his ineffective assistance of counsel claims in his direct appeal and leave application to the Court of Appeals, rendered the unraised claims unexhausted for purposes of federal habeas corpus review. See DeLee v. Graham, No. 9:11-CV-653 (MAD/CFH), 2013 WL 3049109, at *7 (N.D.N.Y. June 17, 2013).

Petitioner failed to present all of his arguments regarding ineffective assistance of counsel to the highest state court which may have rendered a decision; thus, petitioner's ineffective assistance claim is only exhausted with respect to the one argument he did raise—factually inconsistent defenses. All other issues under the ineffective assistance claim a re unexhausted. Thus, the undersigned will review only whether trial counsel's presentation of factually inconsistent defenses constitutes ineffective assistance of counsel.

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

## C. Merits

### 1. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas review only if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may not review the habeas petition if the state court's application of Supreme Court precedent was "objectively reasonable." Id. at 409.

### 2. Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel set forth "factually inconsistent and mutually exclusive defenses at trial," first "asking the jurors to conclude that no sexual contact occurred," and then "assert[ing] that the sexual contact did occur, that [B.N.] essentially initiated it, and that she was capable of appraising the nature of her efforts." Pet. Mem. of Law at 19. On direct appeal, petitioner argued solely that his trial counsel's assertion of inconsistent defenses violated his right to the effective assistance of counsel. SR1. at 26. The Appellate Division rejected petitioner's argument, concluding that counsel offered meaningful representation. Id. at 177. Respondents argue that the Appellate Division, Fourth Department correctly denied petitioner's ineffective assistance of counsel claim. Resp. Mem. of Law at 35.

*9 The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To prevail on this claim, a petitioner must satisfy a two-prong test showing that his counsel's performance was (1) deficient, and (2) that such deficient performance caused the petitioner actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" requires the petitioner to show that counsel's performance "fell below an objective standard of reasonableness." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688). "Prejudice" requires the petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. See Premo v. Moore, 562 U.S. 115, 122-23 (2011) (collecting cases). In assessing a habeas corpus claim, "the question is not whether counsel's actions were reasonable ... [but it is] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (internal quotation marks and citation omitted).

Petitioner has failed to establish that the state courts unreasonably applied Strickland when assessing his claim for ineffective assistance. Petitioner's claim that counsel was ineffective for asserting factually inconsistent and mutually exclusive defenses at trial is without merit. Contrary to petitioner's argument, counsel never conceded that petitioner had sexual contact with B.N. Rather, counsel argued that it was the People's burden to prove, beyond a reasonable doubt, each element of the two-count indictment. Tr.4 at 62-63, 69, 82-83. Counsel contended that the People not only failed to prove beyond a reasonable doubt that B.N. was mentally deficient, but also failed to prove that the DNA evidence conclusively established that petitioner had sexual contact with B.N. Id. at 66-68, 76-77, 96-97. As the Appellate Division concluded, and the respondents argue, these theories are not inconsistent. See Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) ("It is of course permissible as a legal matter for an attorney to pursue alternative and even factually inconsistent defenses."); see also Morgan v. Lee, No. 10-

Case 9:18-cv-01063-MAD-TWD   Document 27   Filed 04/21/21   Page 63 of 87

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

CV-3954 (NGG)(RER), 2015 WL 5547796, at *7 (E.D.N.Y. Sept. 18, 2015) (determining that the trial counsel's choice to pursue inconsistent theories did not amount to ineffective assistance of counsel because "numerous strategic choices could have support [the trial counsel's] decision to pursue inconsistent defenses ... [and] [the petitioner] presented no evidence to the state courts indicating that [the trial counsel's] decision to pursue alternative defense was not strategically based."). Relying on the totality of the circumstances and assessing counsel's performance as a whole, the Appellate Division determined that counsel's comments regarding the small amount of DNA found on B.N. did not amount to "an inconsistent defense that no oral sexual conduct occurred." SR1. at 177. Moreover, in denying petitioner's section 440 motion, the trial court concluded that petitioner "failed to meet his burden of demonstrating the absence of a reasonable strategic or other legitimate explanation for counsel's alleged errors," noting that "this ground for relief ... lacks merit." SR3. at 62.

It is well-settled that "[a]ctions or omission by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks and citation omitted). Petitioner's arguments allege nothing more than his disagreement with counsel's trial strategy, which is an insufficient basis for an ineffective assistance of counsel claim. See United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant, of course, may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate."). It was reasonable for petitioner's trial counsel to challenge the People's DNA expert regarding the DNA evidence as a part of his trial strategy; in fact, on direct appeal, petitioner argued in his weight of the evidence claim: "*[a]s defense counsel noted below*, the single sperm cell recovered from the victim's cheek was not scientifically reliably linked to the defendant and, in fact, may have no relevance to the sexual contact alleged in this case." SR1. at 25. As respondents argue, petitioner acknowledged the merits of counsel's questioning in his direct appeal brief, and likely would have faulted counsel had he not challenged the People's experts regarding the DNA evidence on cross-examination. See Resp. Mem. of Law at 6, 40-41. Respondents note that petitioner praised trial counsel for challenging the People's DNA experts in his weight of the evidence claim, and then contends that same line of questioning constituted ineffective assistance of counsel in his ineffective assistance of counsel claim. See id. at 41. Petitioner's acknowledgment of the legitimacy

of trial counsel's same line of questioning in his weight of the evidence claim serves to further demonstrate the shortcomings of his ineffective assistance argument.

**\*10** Even if the undersigned had concluded that trial counsel presented inconsistent defenses, any such error would not be "sufficiently egregious and prejudicial" in comparison to counsel's overall performance. Harrington v. Richter, 562 U.S. 86, 111 (2011) ("And while in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."). As to counsel's overall performance, the undersigned notes that petitioner was acquitted of the top charge in his indictment. Tr.5 at 16; see, e.g., Riddick v. Fischer, No. 04-CV-2230, 2004 WL 2181118, at *4 (S.D.N.Y. Sept. 27, 2004) (rejecting habeas relief based on ineffective assistance of counsel where the "[petitioner] was acquitted of the most serious charges against him[.]"). Indeed, in assessing the strength of the performance of petitioner's trial counsel under the totality of the circumstances, the Appellate Division recognized:

> that defense counsel made a clear and cogent opening statement directed at the People's inability to prove that the victim was incapable of appraising the nature of her conduct, conducted meaningful cross-examination, lodged objections consistent with the defense theory, presented the testimony of an expert who highlighted inconsistencies in the victim's medical records with respect to her coherency and awareness, and obtained an acquittal on the top count of the indictment.

SR1. at 177; see Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 695-96) ("Any counsel errors must be considered in the 'aggregate' rather than in isolation, as the Supreme Court has directed courts to look at the 'totality of the evidence before the judge or jury.' ").

Further, petitioner has not demonstrated that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.

Adsit v. Annucci, Not Reported in Fed. Supp. (2018)

2018 WL 1175090

Strickland, 466 U.S. at 694. In Lopez v. Ercole, the Southern District of New York found that the facts in the record sufficiently supported a defense of extreme emotional disturbance, and the trial counsel's failure to pursue such defense "fell short of the standard of representation required by the Sixth Amendment." See Lopez, 2010 WL 1628994, at *27-28. The Lopez Court determined that, given the facts set forth in the record, "an [extreme emotional disturbance] defense offered the only realistic escape from the likelihood of a conviction for second degree murder." Id. at 28. The trial counsel's choice to pursue only an "unsupportable" justification defense "placed all hope in a [ ] defense that was no defense at all." Id. The Lopez Court concluded that, had the trial counsel set forth an extreme emotional disturbance defense as an alternative to the justification defense, "it is reasonably probable that [the petitioner] would have been convicted of the lesser charge of first degree manslaughter." Id.

Unlike the petitioner in Lopez, petitioner here has not offered evidence to support a conclusion that, but for counsel's decision to argue in the alternative that the People failed to prove that the DNA evidence conclusively established sexual contact, petitioner would have been acquitted of both charges. There is nothing in the record that supports petitioner's contention that the "incompatibility of these positions" trial counsel presented in his summation impeded the jury from understanding the defense. Pet. Mem. of Law at 19; see Morgan v. Lee, No. 10-CV-3954 (NGG) (RER), 2012 WL 12324986, at *11 (E.D.N.Y. Aug, 8, 2012), report-recommendation and order adopted by Morgan v. Lee, No. 10-CV-3954 (NGG)(RER), 2015 WL 5547796 (E.D.N.Y. Sept. 18, 2015) (concluding that the record did not support a finding of prejudice where the trial counsel, during his summation, presented theories inconsistent with the petitioner's statement to the police); Pet. Mem. of L. at 19. Trial counsel's "isolated comments" regarding the DNA evidence did not alter the outcome of the case. See SR1. at 177. Thus, petitioner has failed to establish prejudice from trial counsel's allegedly deficient performance.

*11 Accordingly, because petitioner has failed to establish that the Appellate Division unreasonably applied Strickland, it is recommended that the petition be denied.

### III. Conclusion

For the reasons stated herein, it is hereby,

**RECOMMENDED**, that Jamison Adist's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**; and it is

**RECOMMENDED**, that no certificate of appealability should be issued with respect to any of petitioner's claims as petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), 6(e).

### All Citations

Not Reported in Fed. Supp., 2018 WL 1175090

---

Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 65 of 87

Flores v. Officer in Charge, Buffalo Federal Detention Facility, Not Reported in...

2014 WL 1568843

2014 WL 1568843
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Edison FLORES, Petitioner,
v.
OFFICER IN CHARGE, BUFFALO FEDERAL
DETENTION FACILITY, Respondent.

No. 11 Civ. 7977(RA).
|
Signed April 17, 2014.

*OPINION AND ORDER*

RONNIE ABRAMS, District Judge.

**\*1** *Pro se* petitioner Edison Flores brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for sexual abuse and endangering the welfare of a child on the grounds that he was denied effective assistance of counsel. For the following reasons, the petition is dismissed without prejudice as unexhausted.

## BACKGROUND

Following a non-jury trial in New York State Supreme Court, Flores was convicted of two counts of sexual abuse in the first degree and one count of endangering the welfare of a child, all relating to his conduct with his minor step-granddaughter S.S. [1] Although defense counsel cross-examined the People's witnesses and argued on Flores's behalf during an opening statement and summation, it did not present any affirmative evidence at trial. On January 29, 2009, Flores was sentenced to concurrent prison terms of three and one-half years for each sexual-abuse count and one year for endangering the welfare of a child, as well as ten years of post-release supervision. Flores filed a direct appeal to the New York Appellate Division, First Department, challenging his conviction on the grounds that he was denied effective assistance of counsel. Specifically, he argued that his trial counsel "effectively conceded [his] guilt of all counts charged before and throughout the bench trial, and made no effort to subject the People's case to meaningfully adversarial testing." (Pet'r's Br. 15.)

[1]    Pursuant to New York Civil Rights Law § 50–b, the identity of a victim of sexual assault shall be treated as confidential.

On May 25, 2010, the Appellate Division held that Flores's claim was "unreviewable on direct appeal because it involve[d] matters outside the record concerning defense counsel's choice of trial strategy" and dismissed his appeal. *People v. Flores,* 900 N.Y.S.2d 647, 647 (App.Div.2010). In so doing, it further noted that, "[a]lthough the present, unexpanded record is not conclusive on the matter, it suggests that defendant agreed with the very actions of counsel about which he now complains. In any event, defendant has not demonstrated " 'the absence of strategic or other legitimate explanations' for the manner in which counsel conducted the trial." *Id.* (citation omitted). On June 9, 2010, Flores sought leave to appeal to the New York Court of Appeals, which denied his application without opinion on August 18, 2010. *People v. Flores,* 15 N.Y.3d 804 (2010). The instant petition, dated October 31, 2011, was filed with the Court on November 4, 2011. [2]

[2]    Flores has attached the appellate brief he submitted on his appeal to the New York Appellate Division to his habeas petition bat cites no other grounds on which he is seeking relief in the petition. The Court thus treats the arguments made in that brief as the basis for which he is seeking habeas relief and references "Pet'r's Br." accordingly.

## DISCUSSION

"[A] state prisoner seeking federal habeas relief must first 'exhaus[t] the remedies in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address and correct alleged violations of [the] prisoner's federal rights.' " *Walker v. Martin,* 131 S.Ct. 1120, 1127 (2011) (alterations in original)). In New York, "[t]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440 .10 and then seek leave to appeal to the Appellate Division." *Antholis v. New York,* No. 11 Civ.1908(BMC), 2012 WL 194978, at \*3 (E.D.N.Y. Jan. 23, 2012) (citing *Sweet v. Bennett,* 353 F.3d 135, 140 (2d Cir.2003)).

**\*2** As noted above, the Appellate Division concluded that Flores's ineffective-assistance-of-counsel claim was "unreviewable on direct appeal" because it related to matters outside the record, *Flores,* 900 N.Y.S.2d at 647, thus requiring him to raise the claim in a § 440.10 motion to vacate judgment. Having failed to do so, Flores has not properly exhausted his claim in state court. *See, e.g., Polanco v. Ercole,* No. 06 Civ. 1721(RMB)(DFE), 2007 WL 2192054, at *6–7 (S.D.N.Y. July 31, 2007) (dismissing habeas petition claiming ineffective assistance of counsel as unexhausted where Appellate Division had determined on direct appeal that claim relied on evidence outside the record and petitioner had not filed a § 440.10 motion); *Butti v. Supt. Gowanda Corr. Facility,* No. 99 Civ. 1667(DLC), 2000 WL 280039, at *3 (S.D.N.Y. Mar. 14, 2000) (same).

Where a claim has not been exhausted, the federal court may dismiss the action without prejudice to the refiling of a habeas corpus petition, *see, e.g., Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir.1996), or the action "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Although the Antiterrorism and Effective Death Penalty Act of 1996 "does not set out a standard for denying an unexhausted claim on the merits, and neither the Supreme Court nor the Second Circuit has established one," it has been noted that "[t]he various formulations bandied about in the Second Circuit's district courts have the common thread of disposing of unexhausted claims that are unquestionably meritless.... By contrast, state courts must, as a matter of comity, be afforded the opportunity to first pass upon any *habeas* claim that is at least potentially meritorious." *Keating v. New York,* 708 F.Supp.2d 292, 299 n. 11 (E.D.N.Y.2010) (collecting cases); *see also Rowe v. New York,* No. 99 Civ. 12281(GEL), 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002) ("[I]t cannot be said that [petitioner's] unexhausted claim of ineffective assistance of counsel is 'so patently meritless that [it is] destined for denial.' " (third alteration in original)). On the current record, the Court cannot conclude that Flores's claim is so plainly meritless.

Ineffective assistance of counsel claims are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Pursuant to *Strickland,* the petitioner must first demonstrate that defense counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and second, there must be a "reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different." *Id.* at 688, 694. The

Court shares the Appellate Division's view that evaluation of Flores's claim requires further development of the record as to whether his attorney's trial strategy was objectively reasonable. *See Rose v. Lundy,* 455 U.S. 509, 519 (1982) ("[F]ederal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review."); *Powers v. Bartlett,* No. 08 Civ. 7733(DC), 2009 WL 980266, at *4 (S.D.N.Y. Apr. 13, 2009) (denial of habeas petition containing unexhausted claim on merits was "unwarranted ... because of the undeveloped factual record").

**\*3** In this case, Flores claims that his trial counsel was ineffective because he "volunteered that he had no defense to any of the charges"; "effectively sat mute as the witnesses were called"; "never sought to challenge the damning accusations the children made"; and "explicitly endorsed [the complainants'] credibility." (Pet'r's Br. 21–22.) Based on the current record, it is unclear whether professional judgment or "oversight, carelessness, ineptitude, or laziness" motivated counsel's conduct. *Eze v. Senkowski,* 321 F.3d 110, 112, 136 (2d Cir.2003) (remanding for hearing for allegedly ineffective counsel to "explain her trial strategy"). Indeed, the need for additional information is illustrated by the fact that Flores is left to speculate about the trial strategy utilized by his attorney. (*See* Pet'r's Br. 19, 26 & n. 7 (suggesting that counsel "appeared" and "seem[ed]" to use the trial as a forum to argue for leniency at sentencing).)

"[S]trategic choices made by counsel after thorough investigation ... are virtually unchallengeable, and there is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005) (internal quotation marks and citation omitted) (alteration in original). Nonetheless, based on the present record, the Court cannot determine whether Flores's trial counsel's course of action was based on reasonable professional judgment. *See Eze,* 321 F.3d at 112–13 (noting certain omissions by trial counsel were of "serious concern" but that the court "lack[s] the benefit of an explanation of [petitioner's] trial counsel's reasoning and cannot conclude now that no plausible trial strategy justified [counsel's] actions") (citing *Sparman v. Edwards,* 154 F.3d 51, 52 (2d Cir.1998)). Thus, the Court concludes that Flores's claim is not "unquestionably meritless" such that it would be appropriate to deny it on the merits.

Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 67 of 87
Flores v. Officer in Charge, Buffalo Federal Detention Facility, Not Reported in...
2014 WL 1568843

**CONCLUSION**

For the foregoing reasons, the petition is dismissed without prejudice for failure to exhaust its sole claim. Because Flores has not made a substantial showing of the denial of a constitutional right, appellate review is not warranted. *See* 28 U.S.C. § 2253(c)(2); *Tankleff v. Senkowski,* 135 F.3d 235, 241 (2d Cir.1998). Pursuant to 28 U.S.C. § 1915(a)(3), the Court further finds that any appeal of this Opinion and Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to dismiss the petition and close the case,

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1568843

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.    3

2002 WL 100633
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

George ROWE, Petitioner,
v.
PEOPLE OF THE STATE OF
NEW YORK, Respondent.

No. 99 CIV 12281 GEL.
|
Jan. 25, 2002.
|
As Amended March 4, 2002.

**Attorneys and Law Firms**

George Rowe, New York, NY, pro se.

Bruno V. Gioffre, Jr., Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York), New York, NY, for Respondent.

OPINION AND ORDER

LYNCH, District J.

 **\*1** Petitioner George Rowe applies to this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he was denied the right to effective assistance of trial counsel and that his guilt was not proven beyond a reasonable doubt. On December 13, 2001, United States Magistrate Judge Ronald L. Ellis, to whom the case had been referred, issued a Report and Recommendation ("R & R"), recommending that the petition be dismissed in part without prejudice, for lack of exhaustion of state remedies, and in part with prejudice, for likelihood of procedural default. The R & R also instructed the parties that objections to the recommendation must be filed by December 27, 2001.

The Court received objections from Rowe on December 27, 2001. In that submission, Rowe does not address the procedural issues discussed in the R & R, but instead reiterates the arguments in support of his claims on the merits. Rowe also expressed discontent with the short time frame within which he was required to file his opposition to the R & R, with what he claimed was a failure to give him adequate notice of that deadline, and with the alleged failure of the District

Attorney's office to address mail regarding this case to his correct mailing address.

Rowe's frustration with these logistical issues is understandable—having given this Court formal notice of his change of address on February 29, 2000, he can certainly reasonably expect that the District Attorney's office would use that address in all official correspondence concerning this case. Moreover, Judge Ellis, responding to a similar complaint by Rowe, specifically ordered respondent to do exactly that. *See Rowe v. New York,* No. 99 Civ. 12281(DLC) (RLE) (S.D.N.Y. July 26, 2000) (docket entry no. 11). To the extent that future correspondence with the petitioner is required in this case, the District Attorney is, once again, ordered to use the address that officially has been entered on the Court's docket. As for the ten-day time period within which to file objections to the R & R, Congress has prescribed that period by statute, 28 U.S.C. § 636(b)(1), Judge Ellis' R & R provided clear notice of the deadline, and Rowe was able to and did meet the deadline with his objections.

Nevertheless, the Court is authorized to extend the deadline for filing objections, and under other circumstances would be inclined to construe Rowe's objections liberally as a request for additional time. In this case, however, Rowe's arguments on the merits of his claims are not responsive to the R & R's rather technical conclusions concerning habeas procedure, and the Court therefore concludes that an extension of time for him to elaborate on those arguments is unwarranted. In view of the Court's disposition of the matter, Rowe will have a further opportunity, if he wishes, to address the merits of the case, and to invite Rowe at this stage of the case to submit additional argument on the technical procedural issues now facing the Court would only result in further delay.

 **\*2** We therefore turn to the issues presented by the R & R, which lead us into the familiar but nevertheless intricate procedural labyrinth of habeas corpus law.

*I. Ineffective Assistance*
In his R & R, Judge Ellis concludes that although Rowe did claim raise a claim of ineffective assistance on his direct appeal, his present ineffective assistance claim nevertheless should be deemed unexhausted because it rests on a different set of facts than those presented to the state court. R & R at 7–9. That conclusion is correct. For a habeas court to reach the merits of an ineffective assistance claim, "all of [the] allegations must have been presented to the state courts, allowing them the opportunity to consider *all* the

circumstances and cumulative effect of the claims as a whole." *Caballero v. Keane,* 42 F.3d 738, 740–41 (2d Cir.1994) (internal quotation marks and citation omitted). The whole point of the exhaustion requirement is to permit the state court a fair opportunity to consider a defendant's claims before a federal court undertakes to review the state court judgment. If the state court has not had such an opportunity to assess counsel's performance, because the claim of ineffective assistance that was made on direct appeal did not present a complete picture of the "all the circumstances" and the cumulative effect of the claimed derelictions, then the purpose of the exhaustion requirement has not been served. It is true that "dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented to the state courts." *Caballero,* 42 F.3d at 741. Where, however, the new allegations do "fundamentally alter" the claims presented to and rejected by the state courts, it follows that the new claim has not been properly exhausted.

In this case, Rowe argued on direct appeal that his trial counsel was constitutionally ineffective, and therefore should have been dismissed, because (1) he insisted that he could not represent Rowe effectively due to a breakdown in communication, and (2) he acted against Rowe's interests by repeatedly telling the court, outside the presence of the jury, that the evidence against Rowe was overwhelming and he had no chance of acquittal. R & R at 3–4. Before this Court, Rowe argues that trial counsel was ineffective because (1) he failed to contact witnesses that Rowe claimed would have attested to his innocence, and (2) he failed effectively to cross-examine the State's witnesses concerning inconsistencies in their testimonies. As Judge Ellis correctly concludes, these new factual allegations are not "merely supplemental" to those raised on direct appeal, but could "fundamentally alter" his ineffective assistance claim. *See Caballero,* 42 F.3d at 741. The claims presented in this Court are not only based on different facts than those presented on direct appeal, but one of those claims also rests on facts outside the record. Under these circumstances, the new allegations of ineffective assistance present facts and legal theories that have not been presented to the state courts, and thus have not been exhausted.

*3 Rather than recommend that Rose be required to exhaust this entire claim, however, the R & R proceeds to bifurcate Rowe's ineffective assistance claim into two separate subclaims, one based on failure to contact witnesses and the other based on ineffective cross-examination. The R

& R concludes that the former subclaim, because it is based on evidence outside the trial record, may be raised in a motion to vacate the conviction pursuant to New York Criminal Procedural Law § 440.10, but that the latter subclaim would be collaterally barred by operation of N.Y.Crim. P.L. § 440.10(c)(2), because it is based on evidence contained in the trial record but was not raised on direct appeal. Judge Ellis therefore recommends that the cross-examination claim should be deemed exhausted but procedurally defaulted and dismissed with prejudice. R & R at 9–10.

This approach, however, would result in the distortion of Rowe's ineffective assistance claim. Such a claim by its nature requires a court to " 'consider [ ] all the circumstances' " and "to look at the 'totality of the evidence before the judge and jury' " to determine whether counsel's representation was deficient. *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) (quoting *Strickland v. Washington,* 466 U.S. 668, 688–89, 695–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Stouffer v. Reynolds,* 168 F.3d 1155, 1163–64 (10th Cir.1999). Because a claim of ineffective assistance of counsel "can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together." *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (citing *Strickland v. Washington,* 466 U.S. 668, 695–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). It therefore would be particularly inappropriate to conclude that Rowe has procedurally defaulted certain aspects of his ineffective assistance claim based on an artificial division of that claim which would distort the application of the *Strickland* standard. *Cf. United States v. Arvizu,* —— U.S. —— – – – –, 122 S.Ct. 744, ——L.Ed.2d – – – –, 2002 WL 46773, slip op. at 8 (Jan. 15, 2002) (rejecting, as inconsistent with "totality of the circumstances" standard for evaluating constitutionality of brief investigatory stops under Fourth Amendment, a "divide-and-conquer analysis" by which the court evaluated and rejected several individual factors in isolation from each other). Indeed, no actual state court judgment has found Rowe to be collaterally barred from raising any aspect of his ineffective assistance claim in state court, and it seems unlikely that a state court would whittle away the factual basis for Rowe's claim in the face of *Strickland* 's clear mandate to "consider[ ] all the circumstances" and the "totality of the evidence" when evaluating claims of ineffective assistance of counsel. [1] *Strickland,* 466 U.S. at 688–89, 695–96; *Lindstadt,* 239 F.3d at 199.

[1]    N.Y.Crim. P.L. § 440.10(2)(c) requires denial of a petitioner's motion to vacate a judgment

if "sufficient facts appear on the record ... to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion," but the petitioner "unjustifiabl[y]" failed to raise that ground or issue on direct appeal. That rule cannot bar consideration of Rowe's allegation that his trial counsel was ineffective in failing to contact witnesses, which could not have been raised on direct appeal. Once that allegation has properly been presented, it no longer can be said that "sufficient facts appear on the record" to have permitted review of Rowe's entire ineffective assistance claim without running afoul of *Strickland* 's totality-of-the-circumstances-based standard.

The Court therefore declines to follow the R & R's recommendation that part of Rowe's ineffective assistance claim be dismissed with prejudice as procedurally defaulted. Rather, the Court concludes that the entire ineffective assistance claim presented on habeas has not been properly presented to the state courts, and must be exhausted there before being available for federal habeas review. [2]

[2]    The merit of Rowe's ineffective assistance claim turns significantly on matters outside the present record, including what witnesses Rowe claims could have testified in his behalf, what they would have said at trial, what Rowe told counsel about these witnesses, and what efforts if any counsel made to locate those witnesses (with what result). Rowe's petition addresses none of these issues, asserting only in the most summary way that his attorney told him he "would contact my witnesses," but that Rowe later learned that "he never did." Pet. at 5. His reply papers, however, provide considerable information about these matters. Reply dated 7/22/00, at 4–5. In any state court motion, Rowe would be well advised to provide as much detail as he can about the potential testimony of these witnesses, ideally with supporting affidavits from the witnesses (if they can be found at this late date).

II. *Failure to Prove Guilt Beyond a Reasonable Doubt*

**\*4**  The R & R also recommends that Rowe's second claim, that his guilt was not proven beyond a reasonable doubt, should be deemed procedurally defaulted and, since he has failed to show cause and prejudice for the default, dismissed

with prejudice. R & R at 10 (citing N.Y.Crim. P.L. § 440.10(2) (c)). There is no question that Rowe has failed to exhaust state remedies with respect to that claim—he did not raise the issue on direct appeal, and he has not as yet sought post-conviction relief from any state court. Nevertheless, the R & R essentially recommends that the claim be deemed exhausted but procedurally defaulted because a state court, as an adequate and independent state law ground for dismissal, would likely find the claim collaterally barred under N.Y.Crim. P.L. § 440.10(2)(c). R & R at 10; *see also Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. 2254(b), we deem the claims exhausted."). This recommended characterization of Rowe's second claim appears to be consistent with Second Circuit precedent, which permits a court to deem a claim to be exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001); *see also Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997); *Bossett,* 41 F.3d at 829. *But cf. Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (holding that unexhausted claim must be presented to state court notwithstanding likelihood of procedural bar under state law, since federal courts "have no authority to declare as a matter of state law that an appeal from the denial of [state court motion for collateral relief] is unavailable"); *Bloomer v. Costello,* 2001 WL 62864, at \*3–\*5 (S.D.N.Y. Jan.24, 2001) (discussing tension within Second Circuit precedent between *Pesina* and subsequent case law). It is therefore quite possible that the second claim is ripe for decision in federal court.

Moreover, the record is adequate to permit denial of this claim on the merits. The evidence at Rowe's trial was amply sufficient to permit a reasonable jury to find defendant guilty beyond a reasonable doubt. An undercover police officer testified that he personally bought two vials of crack from Rowe for ten dollars, in broad daylight, and that Rowe had taken the crack from a black film canister hidden in a garbage can. This testimony was corroborated by a second officer who testified that she observed the undercover in conversation with Rowe. The undercover also radioed an accurate description of the crack seller's physical appearance and clothing to a backup team, which promptly arrested Rowe, who perfectly met the description, leaving the scene of the sale in possession of the buy money. A member of the back up team testified that as he prepared to search Rowe after his arrest, he observed a black film canister containing ten vials of crack at Rowe's feet.

**\*5** Rowe argues here, as he argued at trial, that he never sold drugs to the undercover officer, and that the testimony of the officers was false. But it is not for a federal court on habeas review to second-guess the jury's determination of whom to believe. This Court's role is limited to deciding whether the prosecution's evidence, if believed by the jury, would be sufficient to establish guilt beyond a reasonable doubt. Beyond question, it was.

### III. *Disposition*

If Rowe's first claim is unexhausted and his second claim is deemed exhausted but procedurally defaulted or without merit, then Rowe's is a so-called "mixed petition" containing both unexhausted and (constructively) exhausted claims. *See Zarvela v. Artuz,* 254 F.3d 374, 378 (2d Cir.2001). District courts presented with mixed petitions have three basic options. If the petition is "hopeless," in that it is "so patently meritless that [it is] destined for denial," *Jones v. Senkowski,* —— F.3d ——, 2001 WL 1230800, at \*4 (2d Cir. Oct.5, 2001), the district court may exercise limited discretion to deny the petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Plainly, denial of Rowe's petition on the merits under 28 U.S.C. § 2254(b)(2) is not an option in this case. Given that the primary claim of counsel's failure to investigate rests on facts outside the record, it cannot be said that his unexhausted claim of ineffective assistance of counsel is "so patently meritless that [it is] destined for denial." *Jones,* 2001 WL 1230800, at \*4. [3]

[3]    Nor is it clear that the R & R's proposed variant on this approach—dismissing the petition in part without prejudice, as unexhausted, and in part with prejudice, as (constructively) exhausted but (likely) procedurally defaulted—is a viable option. That approach certainly would not have been permitted prior to the 1996 amendments to 28 U.S.C. § 2254. *See Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (mixed petition must be dismissed, without prejudice, in its entirety, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only exhausted claims to the district court") Nor does it appear to be authorized by the current version of § 2254(b)(2), which permits a habeas Court to deny a *petition*—not particular claims within that

petition—on the merits, despite a failure to exhaust state remedies. In any event, the option suggested by the R & R does not seem particularly attractive. A denial of part of Rowe's petition for procedural default would constitute a disposition on the merits and, as such, would potentially prejudice any future petition for federal habeas relief—even on Rowe's unexhausted claim of ineffective assistance —under 28 U.S.C. § 2244(b)'s limitations on "second or successive" petitions. *See Aparicio,* 269 F.3d at 90; *Bloomer,* 2001 WL 62864, \*4 n. 3. This would hardly be fair to petitioner.

That leaves the Court with two options: "either [to] dismiss the petition [in its entirety] without prejudice, or, if appropriate, retain jurisdiction over the petition and stay further proceedings pending the exhaustion of state remedies." *Id.* at \*2; *Zarvela,* 254 F.3d at 382; *see also Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2130, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring); *Newton v. Coombe,* No. 95 Civ. 9437, 2001 WL 799846, at \*9 (S.D.N.Y. July 13, 2001). The former option normally requires the district court to "include in the dismissal order an appropriate explanation to a *pro se* petitioner of the available options and the consequences of not following required procedures," such as the effect of the one-year limitations period set forth in 28 U.S.C. § 2244(d), while the latter option requires the district court's stay to be "explicitly condition[ed] upon ... the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." *Zarvela,* 254 F.3d at 381–82. While the choice between these two options is "generally" to be left to the discretion of the district court, *id.* at 382, in some instances—including those "where an outright dismissal 'could jeopardize the timeliness of a collateral attack' " under the one-year limitations period in 28 U.S.C. § 2244(d)—staying the petition and retaining jurisdiction pending exhaustion "will be the only appropriate course." *Id.* at 380 (*quoting Freeman v. Page,* 208 F.3d 572, 577 (7th Cir.2000)).

**\*6** In this case, *Zarvela* compels the conclusion that the only appropriate course of action is conditionally to stay Rowe's petition and retain jurisdiction pending exhaustion of state remedies. On April 7, 1999, leave to appeal Rowe's state court conviction to the New York Court of Appeals was denied. *People v. Rowe,* 93 N.Y.2d 902 (1999). Rowe's conviction then became final on July 6, 1999, when the ninety-day period to seek direct review from the Supreme Court of the United

States by petition for a writ of certiorari expired. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000); 28 U.S.C. 2244 (d)(1)(A). He acted with dispatch to file the instant federal habeas petition on December 22, 1999--almost 200 days before the end of the one-year limitations period set forth in 28 U.S.C. § 2244(d). However, the limitations period has not been tolled during the considerable period of time—over two years—in which Rowe's habeas petition has been pending before this Court. Duncan, 121 S.Ct. at 2130. [4] Dismissal of Rowe's petition would therefore " 'jeopardize the timeliness of a collateral attack," ' Zarvela, 254 F.3d at 380, since it would immediately render Rowe time-barred from filing any subsequent federal habeas petition that renews the claims asserted here.

[4]    The petition was initially assigned to another judge of this Court, who in turn referred it to the magistrate judge for an R & R on March 8, 2000. It was fully submitted in August 2000; the R & R was eventually issued, as noted above, in December 2001; and petitioner's objections were filed on December 27, 2001, when the matter for the first time became ripe for decision.

Accordingly, it is hereby ORDERED that:

All proceedings on this petition for habeas corpus are stayed, to give petitioner an opportunity to exhaust his state remedies on the ineffective assistance claim, subject to the conditions (1) that petitioner files a motion to vacate his conviction in state court, pursuant to New York Criminal Procedural Law § 440.10, within 30 days of this order, and (2) that petitioner returns to this court to renew his petition within 30 days after the state courts have completed their review of his claims. If petitioner fails substantially to fulfill both of these conditions, the Court will vacate the stay nunc pro tunc as of the day of this order, and his petition may be dismissed. See Zarvela, 254 F.3d 381–82.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 100633

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    5

2010 WL 4961746
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John PARISI, Petitioner,

v.

Dale ARTUS, Superintendent of Clinton
Correctional Facility, Respondent.

No. 08–CV–1785 (ENV).
|
Dec. 1, 2010.

**Attorneys and Law Firms**

John Parisi, Dannemora, NY, pro se.

New York State Attorney Generals Office—Generic, Thomas
C. Costello, Riverhead, NY, for Respondent.

***MEMORANDUM AND ORDER***

VITALIANO, District Judge.

**\*1** Pro se petitioner John Parisi has filed a timely petition
for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For
the reasons stated below, the writ is denied, and the petition
is dismissed.

## I. BACKGROUND

### A. Crime and Conviction

On the evening of February 13, 2001, Melanie Castillo was
in her car, stopped at a red light. A man, whose face was
obscured by a hood, opened the driver's side door and pushed
Castillo towards the passenger seat. She saw that the man was
holding a piece of wood. He demanded all her cash and drove
the car to a wooded area, where he forced her to perform oral
sex and then raped her before fleeing. Castillo was examined
at a hospital that evening, and her sexual assault kit, which
included the underwear she had worn that night, was turned
over to police the next day. Parisi was questioned by the police
immediately after the incident, but he denied any knowledge
of the crime. No arrest was made at that point as the police
concluded there was insufficient cause to arrest Parisi at that
time.

On March 2, 2001, a resident who lived near the intersection
where the car-jacking had occurred saw a man, fitting the
description of the perpetrator in the Castillo rape, acting
suspiciously and following a woman. Around the same time
and place, two other witnesses saw a man fitting this same
description. When two police officers arrived in response to a
radio call, they found a man who appeared highly intoxicated.
Spying the officers, the man started yelling at them and
reached for a "bulge at his right side," (Resp.Memo.10), later
revealed to be a piece of wood. Trying to resist arrest, the
suspect elbowed one officer in the face, and started swinging a
vodka bottle. The men tumbled to the ground, and the suspect
started kicking and punching the officers. With the help of
additional officers, the suspect was subdued and arrested. He
was later identified as petitioner Parisi.

Physical arrest did not fully subdue Parisi, as the restraints
did not prevent him from spitting at the officers. The arresting
officers used a yellow blanket to cover his upper body and
head. Another officer went to the scene of the altercation,
recovered a jacket, and swabbed a number of stains there; she
later recovered the yellow blanket from the garbage can in the
room where Parisi was held. DNA samples from the blanket
and the scene of the altercation were sent to the crime lab to
be compared to DNA from semen found on the underwear
Castillo was wearing on the night of the rape.

On June 6, 2001, the crime lab determined that the DNA
samples collected from the March 2, 2001 altercation matched
the sample from Castillo's underwear. Parisi was indicted on
July 9, 2001, charged with rape in the first degree, sodomy
in the first degree, kidnapping in the second degree, robbery
in the third degree, and unauthorized use of a motor vehicle
in the first degree. Parisi was also separately indicted for the
altercation on March 2, 2001, charged with two counts of
assault in the second degree, one count of menacing in the
second degree, one count of resisting arrest, and two counts
of disorderly conduct.

**\*2** On May 2, 2001, Parisi was indicted again, this time
on an unrelated rape charge. On July 24, 2001, the judge in
the unrelated case ordered petitioner to submit DNA samples;
a buccal swab was taken from him on July 27, 2001.[1] On
July 31, 2001, the Suffolk County District Attorney's Office
requested that the crime lab analyze samples from (1) the
semen on Castillo's underwear, (2) the yellow blanket, and (3)
petitioner's buccal swab, to see if they all came from the same
individual. The DNA results all matched.

1       Petitioner's trial under this unrelated indictment
        commenced in May of 2002; he was acquitted June
        6, 2002.

The indictments for the attack on Castillo and for the police
altercation were consolidated with the consent of petitioner's
trial counsel. At the consolidated trial, Castillo testified
in detail about the events of February 13, 2001; several
other prosecution witnesses testified that they saw a strange
man wearing a hooded sweatshirt, at the same intersection
where Castillo had been abducted at around the time of
the abduction. Other prosecution witnesses gave similar
testimony about seeing a suspicious, inebriated man on March
2, 2001. One of those witnesses testified further that the
suspicious man appeared to be following a young woman.
The officers involved in the altercation with Parisi testified
about their resulting injuries. Finally, the People presented the
evidence of the DNA match.

On August 29, 2002, the jury convicted Parisi of rape in the
first degree, sodomy in the first degree, kidnapping in the
second degree, robbery in the third degree, unauthorized use
of a motor vehicle in the first degree, one count of assault in
the second degree, menacing in the second degree, resisting
arrest, and one count of disorderly conduct. The jury acquitted
Parisi of one count of assault in the second degree and one
count of disorderly conduct. On November 6, 2002, Parisi was
sentenced as a second violent felony offender and given an
aggregate sentence of 57 years, later administratively lowered
to 50 years.

**B. Post–Conviction Procedural History**

Parisi appealed his convictions to the Appellate Division,
Second Department, where he argued: (1) that the trial court's
failure to instruct the jury regarding circumstantial evidence
required reversal of his conviction; (2) that he had been denied
effective representation of counsel because counsel failed to
object to the consolidation of the indictments and failed to
request a jury charge on circumstantial evidence; (3) that the
People had failed to prove guilt beyond a reasonable doubt;
(4) that his sentence was illegal under New York law; and (5)
that his sentence was harsh and excessive.

While his direct appeal was pending, Parisi filed a motion to
vacate judgment in Suffolk County Supreme Court, pursuant
to New York Criminal Procedural Law § 440.10, arguing that
he had received ineffective assistance of counsel because his
counsel had failed to move (1) to suppress the DNA evidence
obtained from the yellow blanket and (2) for a protective

order preventing the prosecution from using the buccal swab
collected in the unrelated rape case. On January 31, 2005,
Supreme Court denied the motion on procedural grounds,
finding that sufficient facts appeared on the record for the
Appellate Division to review adequately the issues brought
in the § 440 motion. On March 23, 2005, Parisi applied to
the Second Department for leave to appeal Supreme Court's
adverse decision. His application was denied on November
22, 2005. Parisi then filed a pro se supplemental brief in his
pending direct appeal to the Second Department in which he
repeated the arguments he made in his § 440 motion.

**\*3** The Appellate Division rejected all of Parisi's claims
on March 20, 2007. *People v. Parisi,* 38 A.D.3d 799, 833
N.Y.S.2d 129 (2d Dep't 2007). The court found that (1)
the evidence was legally sufficient to establish Parisi's guilt
beyond a reasonable doubt; (2) the issue regarding a jury
instruction on circumstantial evidence was not preserved for
appellate review; (3) the imposition of consecutive sentences
was proper under New York law; (4) the sentences imposed
were not excessive; and (5) the remaining contentions were
without merit. On June 5, 2007, Parisi's application for leave
to appeal was denied by the New York Court of Appeals.
*People v. Parisi,* 9 N.Y.3d 849, 840 N.Y.S.2d 775, 872 N.E.2d
888 (2007).

Parisi filed the instant pro se petition on April 28, 2008,
raising the identical issues he advanced on his direct appeal.
He also argues, for the first time, that the state court abused
its discretion when it denied his § 440.10 motion without a
hearing.

**II. STANDARD OF REVIEW**

This petition is subject to the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), which provides that
a federal writ of habeas corpus may not be granted to a
state prisoner with respect to any claim that was adjudicated
on the merits by a state court unless the decision was (1)
"contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States," or (2) "based on an unreasonable
determination of the facts in light of the evidence presented."
28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S.
362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)
(under AEDPA, habeas relief is only available if "the state
court arrive[d] at a conclusion opposite to that reached by
[the Supreme] Court on a question of law or if the state court
decide[d] a case differently than [the Supreme] Court has on a
set of materially indistinguishable facts." (citation omitted)).

In the AEDPA context, the term "clearly established federal law" is construed as " 'refer[ring] to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.' " *Carey v. Musladin,* 549 U.S. 70, 74, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. at 1495). Further, to be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.' " *McKinney v. Artuz,* 326 F.3d 87, 96 (2d Cir.2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." *Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001) (quotation omitted). Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.' " *Smith v. Herbert,* 275 F.Supp.2d 361, 365–66 (E.D.N.Y.2003) (quoting 28 U.S.C. § 2254(e) (1)).

### III. DISCUSSION

#### A. Jury Instruction on Circumstantial Evidence

**\*4** Petitioner first argues that the trial court erroneously failed to instruct the jury regarding the difference between direct and circumstantial evidence. This claim is not cognizable on federal habeas review. There is no federal constitutional right to a circumstantial evidence charge. *See Martinez v. Reynolds,* 888 F.Supp. 459, 464 (E.D.N.Y.1995) (denying habeas relief in part because "the constitutional right to due process does not require a court to give ... special jury instructions when a case is founded on circumstantial evidence.") (citing *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)). The absence of a circumstantial evidence charge presents no federal constitutional infirmity. To the extent petitioner's claim is grounded in state law exclusively, the claim is unreviewable by a federal habeas court. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). [2]

2    Additionally, petitioner did not request this jury charge during the trial, and the Appellate Division held that it was unpreserved for appellate review. *People v. Parisi,* 38 A D 3d 799 N.Y.S.2d 129 (2d Dep't 2007). Any claim on this ground, therefore, was also procedurally defaulted. *See,*

*e.g., Richardson v. Greene,* 497 F.3d 212, 219 (2d Cir.2007).

#### B. Ineffective Assistance of Counsel

Parisi raised his claims of ineffective assistance of trial counsel on direct appeal, supplemented by the arguments made in his failed § 440.10 motion. He contends that counsel (1) agreed to the consolidation of two indictments when no strategic reason existed to do so, (2) failed to request a jury instruction regarding circumstantial evidence, (3) failed to move to suppress the DNA collected from the March 2, 2001 incident, and (4) failed to move to suppress the buccal swab collected in the unrelated rape case.

It is unchallenged that this claim was exhausted in the state courts, since it clearly was presented to the highest state court with sufficient particularity to alert the court as to its constitutional nature. *See Ramirez v. Attorney General of State of NY* 280 F.3d 87, 94–95 (2d Cir.2001). Although the Second Department did not specifically address the ineffective assistance of counsel argument, it did find that petitioner's "remaining contentions [were] without merit." *People v. Parisi,* 38 A.D.3d 799, 800, 833 N.Y.S.2d 129, 129 (2d Dep't 2007). As a result, the claim is to be analyzed with AEDPA deference. *See Sellan,* 261 F.3d at 311–12 (2d Cir.2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.") (quotation omitted).

For ineffective assistance claims under AEDPA, it is well-settled that *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny sets the applicable federal standard. The question presented is whether the state court adjudication of Parisi's claim involved an "unreasonable application" of the *Strickland* standard to the facts of his case. *See Sellan,* 261 F.3d at 314–15 & n. 6.

In *Strickland,* the Supreme Court held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under *Strickland,* to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation."

*Carrion v. Smith,* 549 F.3d 583, 588 (2d Cir.2008) (quotations omitted).

**\*5** To establish subpar performance, a habeas petitioner must overcome the "strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Brown v. Greene,* 577 F.3d 107, 110 (2d Cir.2009) (quotations omitted). The presumption is overcome only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068.

The state courts determined that the *Strickland* standard had not been offended, and those determinations were neither contrary to, nor unreasonable applications of, *Strickland* and its progeny. The Court addresses each of petitioner's specific ineffectiveness arguments in turn.

#### 1. *Failure to Object to Consolidation*

Petitioner argues that trial counsel was ineffective for failing to object to consolidation of two of his indictments, that is, the two charging the attack on Castillo and the altercation with police, for no "apparent strategic reason." (Pet.3.) Yet Parisi's counsel stated that, even if the People had not moved to join the cases, he would have done so as a matter of defense strategy. (Pet. Brief to App. Div. 30.) Strategic choices, if reasonable at the time they were made, cannot constitute a basis for an ineffective assistance claim. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Counsel's actions or omissions fall outside the range of reasonableness only if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude or laziness." *Eze v. Senkoski,* 321 F.3d 110, 112 (2d Cir.2003). There is no evidence that counsel's consent to consolidation arose from indolence, incompetence, or oversight; rather the record suggests the presence of a strategic defense plan. Thus the state courts were reasonable in rejecting this claim.

#### 2. *Failure to Request Jury Instruction*

Petitioner argues that his trial counsel was ineffective for failing to seek a jury instruction on circumstantial evidence. New York state law affirms entitlement to a circumstantial evidence charge in some cases. *See People v. Benzinger,* 36 N.Y.2d 29, 32, 324 N.E.2d 334, 364 N.Y.S.2d 855 (1974). But even if it is assumed that the charge was warranted and that failure to seek it constituted ineffective assistance, petitioner's argument fails because he was not prejudiced by the absence of the charge. "[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus." *Gersten v. Senkowski,* 426 F.3d 588, 611 (2d Cir.2005) (citing *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001)). When a circumstantial evidence charge would not have changed the jury's guilty verdict, no prejudice exists. *See, e.g., Clark v. Kelly,* No. 98–CV–6230, 2002 WL 31663512, at \*7 (W.D.N.Y. Oct.3, 2002). Here, two different DNA tests determined that petitioner's semen was on the underwear the victim was wearing on the night of the rape. There was no evidence that Parisi ever had a consensual relationship with Castillo. Eyewitnesses testified that a man resembling Parisi was at the scene of the abduction around the time it occurred and again on the day petitioner was arrested. And two officers provided direct testimony of their altercation with Parisi, near the abduction site, in which he brandished a piece of wood, just as the perpetrator had done. In short, had the charge been given and applied to such evidence by the jury, the result would not have differed. This is a clear case where "overwhelming evidence of guilt" outweighs any possible error petitioner's counsel may have committed, and thus the Court finds no prejudice under *Strickland.*

#### 3. *Suppression of DNA Evidence from the Yellow Blanket*

**\*6** Petitioner also argues that his trial counsel should have moved to suppress both the DNA evidence obtained from the March 2, 2001 altercation and the DNA obtained from the July 27, 2001 buccal swab. Where an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under *Strickland* requires that the underlying suppression claim was "meritorious" and that "there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Maldonado v. Burge,* 697 F.Supp.2d 516, 525 (S.D.N.Y.2010) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986)).

When challenging the fruits of a search in the context of a New York state criminal prosecution, a successful suppression claim requires demonstration of a reasonable expectation of privacy in whatever was searched. *See People v. Ramirez–Portoreal,* 88 N.Y.2d 99, 108, 666 N.E.2d 207, 212, 643 N.Y.S.2d 502, 506 (1996); *see also California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy.") (quotation omitted). A person has a constitutional expectation of privacy if (1) he or she "manifested a subjective expectation of privacy in the object of that search" and (2) "society is willing to recognize that expectation as reasonable." *Ciraolo,* 476 U.S. at 211, 106 S.Ct. at 1811.

Parisi has not, however, demonstrated a bona fide subjective expectation of privacy in the yellow blanket or the DNA he left on it. Although he claims that the blood was "beat out of him" and that the blanket was taken away from him (Pet. Traverse Resp. 2), this self-serving statement is not supported by the record. The blood ended up on the blanket as a result of Parisi's own actions. The officers testified that Parisi was being abusive and started spitting at them, and it was necessary to cover his head with the blanket. The blanket was then found in or under the garbage in the holding room, and there is no evidence to suggest Parisi had any property or other interest at all in the blanket or his abandoned DNA sample until he filed his § 440.10 motion nearly three years later. Therefore the Court does not credit Parisi's assertion that he had a subjective expectation of privacy in the blanket.

Second, even if a subjective expectation of privacy existed, that expectation was not objectively reasonable. As for the blanket, a suspect arrested upon probable cause does not have a reasonable expectation of privacy in items discarded while in police custody, even if his DNA is later collected from them. *See, e.g., Roe v. Marcotte,* 193 F.3d 72, 80 (2d Cir.1999) ("With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment.") (quoting *Jones v. Murray,* 962 F.2d 302, 306 (4th Cir.1992)); *People v. Ayler,* No. 3217/2003, 2004 WL 2715317, at *4–5 (N.Y.Sup.Ct. Sep. 22, 2004) (finding no reasonable expectation of privacy in cigarette butts discarded in police interview room); *People v. Sterling,* 57 A.D.3d 1110, 1112, 869 N.Y.S.2d 288 (3d Dep't 2008) (finding no reasonable expectation of privacy in discarded milk carton). For example, *Ayler* involved a suspect in police custody who had smoked in the interview room; his

DNA was later collected from the discarded cigarette butts, yielding a DNA match with semen recovered from sexual assault kits from three different victims. The court there held that "defendant could have no reasonable expectation of privacy in the ... interview room or in any items he discarded there," and further that it is "not reasonable to expect that garbage discarded in a police interview room would remain undisturbed out of respect for the privacy of the person who left it there." *Ayler,* 2004 WL 2715317, at *5. That conclusion is no less true here. Parisi had no reasonable expectation of privacy in the holding room, any item left in the garbage there, or in the DNA that was collected from the blanket. *See, e.g., United States v. Amerson,* 483 F.3d 73, 85–86 (2d Cir.2007) ( "[W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it.") (quoting *Jones v. Murray,* 962 F.2d 302, 306 (4th Cir.1992)).

**\*7** Petitioner's arguments to the contrary are not persuasive. The case on which he relies, *Matter of Abe A.,* 56 N.Y.2d 288, 452 N.Y.S.2d 6, 437 N.E.2d 265 (1982), involved the forcible taking of blood samples without probable cause, which did not occur here. Quite to the contrary, petitioner spit onto the yellow blanket in the course of resisting arrest, providing a voluntary sample. Accordingly, it is plain that petitioner's trial counsel would have failed on a motion to suppress the DNA from the yellow blanket, and "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999). The state adjudication of this issue was thus more than reasonable.

### 4. *Suppression of DNA Evidence from Buccal Swab*
The petition also avers that counsel was ineffective for failure to move to suppress the DNA evidence collected from the buccal swab taken pursuant to court order on July 27, 2001. This argument too is unavailing, as the state court determination was reasonable and should not be disturbed.

Parisi bases the argument on New York Executive Law § 995–d and its interpretation in *People v. Rodriguez,* 196 Misc.2d 217, 764 N.Y.S.2d 305 (N.Y.Sup.Ct.2002). Significantly, Parisi misreads both § 995–d and *Rodriguez.* New York courts have held that "reliance on Executive Law § 995–d is unavailing to [support a] claim of suppression. There is nothing in the statute which provides for such a remedy for misuse or improper dissemination of DNA information in the context of a criminal prosecution." *People v. Midgeley,* 196 Misc.2d 19, 28, 763 N.Y.S.2d 419, 426 (N.Y.Sup.Ct.2003); *Rodriguez,* 196 Misc.2d at 226, 764 N.Y.S.2d at 312.

Rodriguez interpreted § 995–d to hold that DNA evidence from one case may be disclosed to the court, prosecution, and defense in another case "when a criminal action has been commenced," i.e., "when the People have a person who is alleged to have committed a charged crime." *Rodriguez,* 196 Misc.2d at 226, 764 N.Y.S.2d at 312. Here, by the time the buccal swab was taken on July 27, 2001, Parisi had already been charged and indicted for the rape of Castillo, i.e., a criminal action had been commenced against Parisi alleging that he was the perpetrator in the Castillo case. There was no violation of § 995–d, and there was no legitimate ground to support a motion to suppress the DNA results from the buccal swab. Consequently, Parisi's counsel cannot be declared ineffective on this basis.

### C. Insufficient Evidence

Petitioner also contends that there was insufficient evidence supporting his convictions. The state courts found this argument meritless. Federal constitutional precedents do not countenance disturbing that conclusion. The standard for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" in meeting this standard. *United States v. Rivalta,* 892 F.2d 223, 227 (2d Cir.1989) (citations omitted). "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence ... and this evidence must not be reviewed piecemeal, but rather as a whole." *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) (citations omitted). Moreover, "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and courts must "defer to the jury's assessments of both of these issues." *Id.* (citations omitted).

*8 Parisi has not met the burden established by *Jackson.* Viewed as a whole and in the light most favorable to the People, the evidence against Parisi, though circumstantial, was more than sufficient for a rational jury to convict him. Two different DNA tests matched Parisi's DNA with the DNA in the semen on Castillo's underwear; Parisi does not, and essentially cannot, contest the accuracy of those test results. *See McKithen v. Brown,* 565 F.Supp.2d 440, 481 (E.D.N.Y.2008) ("The results of modern DNA testing are of essentially unimpeachable reliability."), *rev'd on other grounds,* No. 08–4002–pr, 2010 WL 4671527 (2d Cir. Nov.19, 2010). Furthermore, the DNA-based evidence of

guilt was corroborated by eyewitness accounts placing a man of Parisi's description at the scene of the abduction on the same evening of the crime and then again on the day of his arrest. Additionally, the jury was also able to weigh the testimony and evidence regarding the injuries Parisi caused to Officer Langella and were given the full account of the altercation, in which two officers testified that Parisi violently resisted arrest. The Court, as it must, will defer to the jury's assessments of the facts. *See Maldonado,* 86 F.3d at 35. The state court determinations to that effect were more than reasonable, and no writ can issue based on this contention.

### D. Sentencing Arguments

Petitioner reiterates and incorporates the same arguments regarding sentencing that he asserted in his direct appeal. Given that these claims rest exclusively on state law, they are not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(d); *see also Estelle,* 502 U.S. at 67–68, 112 S.Ct. at 480 (1991). ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). [3]

[3]
Further, it is well-settled that the length of a prison sentence does not violate the Eighth Amendment prohibition on cruel and unusual punishment if it falls within the established statutory range. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."). Parisi's sentence is within the statutory range, and thus his challenge fails on this ground as well.

### E. Denial of the Section 440 Motion

Parisi also contends that the state court's denial of his § 440.10 motion based on ineffective assistance of counsel was contrary to federal law. (Pet.'s Supp. Memo at 20). This was not a claim included in Parisi's petition. But given that Parisi is a pro se litigant, the Court will construe the claim to be part of the habeas petition. *See Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999). The Suffolk County Court denied the motion to vacate on procedural grounds pursuant to § 440.10(2)(c), determining that sufficient facts appeared on the record for petitioner to have raised these claims on direct appeal. Petitioner now contests that denial, asserting that the state court failed to "make findings of fact" or "resolve

Parisi v. Artus, Not Reported in F.Supp.2d (2010)
Case 9:18-cv-01063-MAD-TWD    Document 27    Filed 04/21/21    Page 79 of 87
2010 WL 4961746

factual disputes" and that this resulted in an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2). Parisi also contends that the state court's decision to reject his claims without holding an evidentiary hearing was an abuse of discretion. He further claims that he is entitled to an evidentiary hearing in the instant habeas case, but he has not formally moved for one.

**\*9** These claims are not cognizable on habeas review. First, he presents these claims for the first time in his habeas petition, and he has not alleged that he ever asked for a hearing below. Before a state prisoner is entitled to review of his claims by a federal court, he must first present those claims and "exhaust [ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (1); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). Second, petitioner's supplemental brief to the Appellate Division indicates that the state court denied the motion on a procedural ground. Thus, the decision was based on an independent and adequate state ground and is procedurally barred. *See Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991). Moreover, the Suffolk County Court acted well within its authority in not holding an evidentiary hearing on Parisi's § 440 motion. No such hearing is required when a decision can be reached based on the trial record and a defendant's submissions. *See People v. Satterfield,* 66 N.Y.2d 796, 497 N.Y.S.2d 903, 488 N.E.2d 834 (1985).

Finally, the Court finds no need to hold an evidentiary hearing on Parisi's habeas petition. Where a federal habeas petitioner is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2),[4] which is not applicable in this case, the decision to grant such a hearing is in the discretion of the district court. *Schriro v. Ladrigan,* 550 U.S. 465, 468, 127 S.Ct. 1933, 1937, 167 L.Ed.2d 836 (2007). Here, Parisi's submissions provide sufficient detail to allow the Court to adjudicate his claims on the merits. An evidentiary hearing is unnecessary.

[4]  If an "applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (a) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (b) he facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e) (2).

## IV. CONCLUSION

For all of the foregoing reasons, Parisi's petition for a writ of habeas corpus is dismissed with prejudice, and the writ is denied. Since Parisi has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2010 WL 4961746

End of Document    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3778587
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lamount GREEN, Petitioner,
v.
William HAGGETT, Respondent.

No. 9:13–CV–0016 (GLS).
|
Signed July 31, 2014.

**Attorneys and Law Firms**

Lamount Green, Coxsackie, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Joanna R. Hershey, AAG., of Counsel, New York, NY, for Respondent.

**DECISION AND ORDER**

GARY L. SHARPE, Chief Judge.

**I. INTRODUCTION**

 **\*1** Petitioner Lamount Green, appearing pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, along with supporting papers and exhibits. Dkt. No. 1, Petition ("Pet.") at 2; Dkt. No. 1–2, Declaration Under Penalty of Perjury of Lamount Green ("Dec."); Dkt. No. 1–3, Exhibits A–C; Dkt. No. 1–4, Memorandum of Law ("Mem."). Respondent filed an answer to the petition and the relevant state court records, and petitioner has filed a reply. Dkt. No. 16, Answer; Dkt. No. 16–1, Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("R.Mem."); Dkt. No. 17, State Court Records; Dkt. No. 21, Petitioner's Reply to Respondent's Opposition to Petition for a Writ of Habeas Corpus ("Reply").

For the reasons that follow, the petition is denied and dismissed.

**II. BACKGROUND**

Petitioner challenges a 2008 judgment of conviction in Albany County Court, following a non jury trial, of second degree criminal possession of a weapon (N.Y. Penal Law §

265.03(3)). Pet. at 2; R. Mem. at 1. The Appellate Division, Third Department, briefly summarized the facts of this case:

> Police in the City of Albany stopped an automobile that had been reported stolen and ordered its three occupants, including [petitioner] who was in the front passenger seat, out of the vehicle. The vehicle was then searched and a loaded semiautomatic .380 caliber handgun was recovered beneath a mat on the floor in front of the back seat. [Petitioner], who was wearing a bulletproof vest, was arrested and charged with criminal possession of a weapon in the second degree and unauthorized use of a motor vehicle in the third degree. After a nonjury trial, County Court found [petitioner] guilty of criminal possession of a weapon in the second degree[.]

People v. Green, 84 A.D.3d 1499, 1500 (3d Dep't.2011). The specific facts are known to the parties and will be repeated only to the extent necessary to address petitioner's claims.

Prior to sentencing, petitioner moved to set aside the verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30. He claimed that a post-verdict affidavit from his co-defendant, Phillip Wilson, would have changed the outcome of his trial. Dkt. No. 17–3, Affirmation/Memorandum of Law, at 1–3; *see* Dkt. No. 1–3, Exhibit C, Wilson affidavit. Specifically, petitioner stated that in the Wilson affidavit, signed two weeks after petitioner was found guilty, Wilson stated the gun was his alone and that petitioner had no knowledge of its existence before the Albany Police Department found it. Dkt. No. 17–3, Affirmation/Memorandum of Law, at 1–3. Petitioner argued that the Wilson affidavit would have negated the presumption that all occupants of the vehicle equally possessed the gun. *Id.* at 3. He also argued that since Wilson was under indictment for possessing the same gun, but had not yet been tried at the time of petitioner's trial, Wilson's affidavit could not have been produced before Wilson pled guilty. *Id.* at 3–4.

 **\*2** On August 13, 2008, the trial court denied the motion, finding that the Wilson affidavit could have been obtained

with due diligence prior to petitioner's trial, and the affidavit "merely contradict[ed] the compelling evidence introduced at the trial." Dkt. No. 17–3, Decision and Order, Herrick, J., Aug. 13, 2008 at 2. Petitioner was sentenced, as a second felony offender, to serve 121/2 years in prison, followed by five years of postrelease supervision. *Green,* 84 A.D.3d at 1500; Dkt. No. 17–19, Sentencing Tr., Aug. 13, 2008 at 7–8. [1]

[1]    The Appellate Division's statement that petitioner was sentenced to serve 12 years in prison followed by five years post-release supervision appears to be a typographical error. *Green,* 84 A.D.3d at 1500.

Petitioner appealed to the Appellate Division, Third Department, arguing: (1) the evidence was insufficient because the prosecutor did not prove that petitioner possessed the gun outside his home or business; and (2) the trial court erred when it introduced into evidence a photograph of petitioner wearing a bullet proof vest. Dkt. No. 17–1, Brief and Appendix at 3–9. The Appellate Division ruled that petitioner failed to preserve his legal sufficiency claim because it was not raised in his "motion to dismiss[.]" *Green,* 84 A.D.3d at 1500. The court rejected petitioner's claim that he was deprived of a fair trial by the admission into evidence of the photograph because petitioner was not tried by a jury, and the trial judge, "by reasons of ... learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination based upon appropriate legal criteria, even if presented with evidence which should not have been admitted." *Id.* at 1500 (citations and internal quotation marks omitted). Finally, the Appellate Division ruled that the photograph, along with petitioner's statement to police that he "could have made it ugly [and] could have gone out and started shooting," was relevant to establish that petitioner "knew a loaded firearm was in the vehicle." *Id.* at 1500–1501. The New York Court of Appeals denied leave to appeal on November 7, 2011, and denied reconsideration on March 13, 2012. *Green,* 17 N.Y.3d 953 (2011), *recon. den.* 18 N.Y.3d 958 (2012).

Petitioner filed a writ of error coram nobis, dated March 23, 2012, in which he argued appellate counsel failed to: (1) present the Appellate Division with proof that petitioner preserved his legal sufficiency claim; and (2) argue that the trial court improperly denied petitioner's CPL § 330.30 motion without holding an evidentiary hearing. Dkt. No. 17–11, Notice of Motion for a Petition for a Writ of Error Coram Nobis with Supporting Affidavit ("Writ"). On May 18, 2012, the Appellate Division denied the writ, and on December 27,

2012, the New York Court of Appeals denied leave to appeal. Dkt. No. 17–12, Decision and Order on Motion; Dkt. No. 17–13, Order Denying Leave.

Petitioner also filed a motion to vacate his conviction pursuant CPL § 440.10 in the Albany County Court, in which he argued that the People failed to prove he did not possess the gun in his home or place of business. Dkt. No. 17–14, Affidavit in Support of Motion to Vacate Judgment, at 2–4. The People opposed the motion. Dkt. No. 17–15, Affirmation in Opposition. On August 20, 2012, the Albany County Court denied the motion pursuant to CPL § 440.10(2)(a) because the claim was previously heard on direct appeal. Dkt. No. 17–16, Decision and Order, Herrick, J., Aug. 20, 2012. The Appellate Division denied leave to appeal on November 19, 2012. Dkt. No. 17–18, Decision, Spain, J., Nov. 19, 2012.

## III. THE PETITION

*3 Petitioner raises the following grounds for habeas relief: the evidence was legally insufficient, and he is innocent, because the People failed to plead or prove that he possessed the gun outside his home or business (Grounds One and Four); the trial court erred by denying his CPL § 330.30 motion without conducting an evidentiary hearing based on the Wilson affidavit (Ground Two); and appellate counsel was ineffective (Ground Three). Pet. at 5–6; Dec. at 1–7; Dkt. No. 1–3, Exhibits; Mem. at 1–16.

## IV. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1398, 1400 (2011); *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 739 (2011); *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) (per curiam) (quoting *Renico*

2014 WL 3778587

*v. Lett,* 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Nevada v. Jackson,* ⸺ U.S. ⸺, 133 S.Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter,* ⸺ U.S. ⸺, 131 S.Ct. 770, 786 (2011)); *see Metrish v. Lancaster,* ⸺ U.S. ⸺, 133 S.Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (quoting *Richter,* 131 S.Ct. at 786–87)).

Additionally, AEDPA foreclosed " 'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews,* ⸺ U.S. ⸺, 132 S.Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen,* 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro,* 550 U.S. at 473. Finally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Id.* at 473–74 (quoting § 2254(e)(1)).

### B. Sufficiency of the Evidence

**\*4** Petitioner argues in Grounds One and Four of his petition, as he did on direct appeal, that the evidence was insufficient to prove his guilt because the People failed to prove that he did not possess the gun in his home or place of business. Pet. at 5–6; Mem. at 2–6; 9–16.

The Appellate Division rejected petitioner's sufficiency claim because he "never made this argument before County Court in his motion to dismiss and, thus, has not preserved this issue for appellate review." *Green,* 84 A.D.3d at 1500. Though the court did not explicitly cite to the statute, its holding and the cases to which it cited refer to New York's

procedural requirement that errors of law be preserved by objection or protest at the time of the challenged ruling, or "at any subsequent time when the court had an opportunity of effectively changing" the ruling. CPL § 470.05(2). Respondent argues that petitioner's sufficiency claim is barred by an adequate and independent state court finding of default because the Appellate Division relied upon the preservation rule to preclude review of that claim. R. Mem. at 14–16. This court agrees.

Federal habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." *Downs v. Lape,* 657 F.3d 97, 101 (2d Cir.2011). Substantive review of a habeas claim is prohibited if the state court rested its decision on "a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Cone v. Bell,* 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).

In this case, the Appellate Division's ruling that petitioner failed to preserve his sufficiency claim "for appellate review constitutes a state ground that is indisputably independent" of the constitutional question of whether the evidence was sufficient. *Downs,* 657 F.3d at 102. The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs,* 657 F.3d at 104 (citations omitted). Petitioner argues, however, that the Appellate Division's application of the preservation rule was inadequate, exorbitant and serves no legitimate state interest. Reply at 14–18. This court must therefore determine whether the state procedural ground is adequate to preclude federal habeas review in this case. *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (stating that the adequacy of a state procedural bar " 'is itself a federal question.' ") (quoting *Douglas v. Alabama,* 380 U.S. 415, 422 (1965); *Downs,* 657 F.3d at 102 (citing *Walker v. Martin,* ⸺ U.S. ⸺, 131 S.Ct. 1120, 1127 (2011)).

To assess adequacy, this court must examine whether the state court's application of the procedural rule constitutes an "exorbitant misapplication" that does not serve a "legitimate state interest." *Downs,* 657 F.3d at 102 (quoting *Walker,* 131 S.Ct. at 1127); *see Lee,* 534 U.S. at 376 (noting that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."). Several considerations are relevant to that determination: (1) whether

the alleged procedural violation was actually relied on in the trial court and whether perfect compliance with the rule would have changed the trial court's decision; (2) whether the state case law indicates compliance with the rule was demanded in this case; and (3) whether petitioner "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate state governmental interest. *Lee,* 534 U.S. at 387; *Whitley v. Ercole,* 642 F.3d 278, 289–92 (2d Cir.2011); *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003).

**\*5** There is nothing in this record to conclude that the Appellate Division's application of the preservation rule was exorbitant. The first *Lee* consideration, "whether perfect compliance" with the preservation rule "would have changed the trial court's decision," is "not very relevant" in cases like this. *Whitley,* 642 F.3d at 289. Given the absence of a preserved argument, "it is impossible to conclusively determine, as the [Supreme] Court did in *Lee,* that perfect compliance with the procedural rule would have had no effect on the outcome below." *Id.; Cotto,* 331 F.3d at 242. Moreover, the Appellate Division's ruling differs from that in *Lee,* "which demanded formally perfect compliance with the state's procedural rule without regard to its underlying objectives[ .]" *Downs,* 657 F.3d at 107. Instead, the ruling advanced New York's legitimate interest in ensuring that " 'parties draw the trial court's attention to any potential error while there is still an opportunity to address it[.]' " *Whitley,* 642 F.3d at 288 (citations omitted) (quoting *Cotto,* 331 F.3d at 245, and *Garcia,* 188 F.3d at 82); *see also Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir.2007) ("[D]emanding compliance with [§ 470.05(2) ] serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error.").

Additionally, New York law courts regularly apply the preservation rule to parties in petitioner's "predicament," *Lee,* 534 U.S. at 382, who want to argue on appeal that the evidence at trial was insufficient to sustain their convictions. *See People v. Hawkins,* 11 N.Y.3d 484, 491 (2008) ( "Preservation-or, more precisely, the lack of preservation-frequently accounts for the disposition of criminal cases in this Court. The issue, therefore, again merits some elaboration, not only to explain the result in the appeals before us but also in the interest of encouraging that a proper record be made in the first instance."); *see also People v. Carncross,* 14 N.Y.3d 319, 324–25 (2010) (" 'where a motion to dismiss for insufficient evidence [is] made,

the preservation requirement compels that the argument be specifically directed at the alleged error[.]' ") (quoting *People v. Gray,* 86 N.Y.2d 10, 19 (1995), quoting *People v. Cona,* 49 N.Y.2d 26, 33 n. 2 (1979) (alteration in original)); *People v. Hines,* 97 N.Y.2d 56, 61 (2001) ("Because defendant waived review of the mid-trial decision by testifying himself and presenting the testimony of other witnesses this was not an issue of law that could properly be adjudicated in a CPL 330.30 motion. As the trial court lacked jurisdiction to address the sufficiency of the People's case-in-chief in the context of the CPL 330.30 motion, and this issue was the basis for its decision to set aside the guilty verdict, reversal of that decision was warranted. We, therefore, affirm the order of the Appellate Division reversing the trial court's CPL 330.30 determination and reinstating the guilty verdict.") (internal citation omitted); *People v. Heary,* 104 A.D.3d 1208, 1209 (4th Dep't.2013) (finding that a sufficiency argument was "not preserved for our review inasmuch as defendant did not move for a trial order of dismissal on that ground.") (citation and internal quotation marks omitted).

**\*6** Finally, although petitioner argues that counsel "substantially complied" with the preservation rule given the "realities of trial," this court disagrees. Reply at 16–17 (citing *Lee,* 534 U.S. at 387 and *Cotto,* 331 F.3d at 240). In support of his argument, petitioner points to a page of the trial transcript containing part of trial counsel's closing argument, in which he stated:

> Something else actually just occurred to us in that there's been absolutely, absolutely no testimony that the exception did not apply. That exception that Mr. Green possessed this firearm in a place that wasn't his home or place of business. Your Honor, this is an exception that needs to be proven beyond a reasonable doubt, did not apply to Mr. Green. There's been no testimony that this wasn't his home, that this wasn't his place of business, and while it might seem obvious, it can't be ruled out there.

Dkt. No. 1–3, Exhibit A, Trial Tr. at 200–201. As the Appellate Division pointed out, however, trial counsel did not

2014 WL 3778587

make this argument in his motion to dismiss the indictment after the People rested. *Green,* 82 A.D.3d at 1500. Nor did counsel make this argument after he rested petitioner's case. Dkt. No. 17–19, Trial Transcript, Jun. 24, 2008, at 187–190, 197; CPL § 470.05(2). Instead, counsel made the argument in summation, when the trial court's function shifted to that of fact-finder. Trial Tr. at 197–206. The Appellate Division apparently concluded that raising a sufficiency claim in summation, as a reason the trial court should acquit petitioner, was insufficient to preserve it. *Green,* 84 A .D.3d at 1500. This court has found no case-and petitioner has cited none-in which the Appellate Division ruled that a sufficiency argument was preserved for appellate review when it was raised for the first time in summation during a non jury trial. Based on the record, counsel did not substantially comply with the preservation rule.

In sum, the Appellate Division's "finding of non-preservation fell within the boundaries of the normal application" of New York's preservation rule. *Downs,* 657 F.3d at 107. The Appellate Division's ruling "reinforced valid state interests in this case, and it does not fall within the 'limited category' of 'exceptional cases' contemplated by *Lee,* 534 U.S. at 376." *Downs,* 657 F.3d at 108. Petitioner's sufficiency claim is therefore procedurally barred by an adequate and independent state court ground.

Petitioner's claim may be reviewed only if he shows cause for the procedural default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536–39 (2006); *Schlup v. Delo,* 513 U.S. 298, 327 (1995). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas,* ––– U.S. ––––, 132 S.Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier,* 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985).

**\*7** In an apparent attempt to show cause, petitioner argues that appellate counsel was ineffective for failing to alert the Appellate Division that the sufficiency claim was preserved by trial counsel's summation. Pet. at 6. The ineffectiveness of counsel for not raising or preserving a claim in state court

will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001). As discussed more fully below, petitioner's appellate counsel claim is without merit, and therefore may not serve as "cause" for a procedural default. *Aparicio,* 269 F.3d at 91–92. Petitioner has failed to demonstrate cause, and the court therefore need not decide whether he suffered actual prejudice. *Murray,* 477 U.S. at 496; *Stepney,* 760 F.2d at 45.

Finally, petitioner has not presented any new evidence that he is actually innocent of the crimes for which he was convicted, or that the failure to review his sufficiency claim would result in a fundamental miscarriage of justice. *House,* 547 U.S. at 536–39; *Schlup,* 513 U.S. at 327. Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623–24 (1998). To make a credible claim of actual innocence, a petitioner must present "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" which makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Doe v. Menefee,* 391 F.3d 147, 161–62 (2d Cir.2004) (quoting *Schlup,* 513 U.S. at 324, 327 (internal quotation marks omitted).

As the trial court found when it denied petitioner's CPL § 330.30 motion, the Wilson affidavit could have been discovered and obtained prior to petitioner's trial. Dkt. No. 17–3, Decision and Order, Herrick, J., Aug. 13, 2008 at 2–3. Moreover, this court cannot conclude that no reasonable juror would have convicted petitioner had the Wilson affidavit been produced at petitioner's trial. As the trial court also found, the affidavit merely contradicts the evidence of petitioner's guilt, including: he was an occupant in a vehicle police initially identified as stolen; the loaded, operable gun was recovered in the vehicle; petitioner was wearing a bullet-proof vest; DNA testing could not exclude petitioner as a contributor of the DNA sample found on the gun;[2] petitioner's statement at arraignment that he "could have made it ugly for you all. [He] could have gone out and started shooting," and petitioner's admission that the gun belonged to him. Dkt. No. 17–19, Trial Tr. at 35–35, 37–38, 40–41, 46–48, 57–58, 68–69, 72, 80, 85–86, 99, 113–14, 117, 135–37, 139–40, 160–63, 174–75, 194–95.[3]

2
The DNA did not "match exactly either [petitioner] or Philip Wilson[.]" Dkt. No. 17–19, Trial Tr. at 161.

3
It is also worth noting that trial counsel presented evidence that Wilson told Detective Jason Vogel he met the occupants of the car at a party and they gave him a ride, but he did not know them, and Wilson did not react when he was told a gun was recovered from the car near where he was sitting. Dkt. No. 17–19, Trial Tr. at 194–95.

Finally, to the extent petitioner is raising a free-standing claim of actual innocence based on the Wilson affidavit (Ground Four), no relief is due. *See* Pet. at 6; Dkt. No. 1–2, Dec. at 1–7. A claim of " 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404 (1993).

**\*8** For the foregoing reasons, Grounds One and Four of the petition are procedurally defaulted and are dismissed. [4]

4
Even if petitioner's sufficiency claim was properly before the court, no relief would issue. Evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews,* —— U.S. ——, 132 S.Ct. 2148, 2152 (2012) (per curiam) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera,* 506 U.S. at 402 (emphasis in original). Based on this record, the court cannot say that the trier of fact's decision to convict petitioner was irrational, and the verdict is well supported by the record evidence. *See* Dkt. No. 17–19, Trial Transcript.

### C. Denial of CPL § 330.30 Motion

Petitioner argues in Ground Two of the petition that the trial court erred by refusing to grant him an evidentiary hearing to review new evidence that he discovered after trial. Pet. at 5. Specifically, petitioner argues that the Wilson affidavit

exonerates him because in the affidavit, Wilson claimed sole ownership of the gun. Petitioner claims he could not have discovered this information sooner because the affidavit was signed after his trial, and he could not have called Wilson to testify because, at the time of petitioner's trial, Wilson was still under indictment and his case was not yet disposed. *See id.,* Dkt. No. 1–2, Dec. at 1–7; Reply at 21–22. Respondent argues that this claim is not cognizable on federal habeas review. R. Mem. at 13–14. This court agrees.

A federal court can grant a writ of habeas corpus only where the petitioner is in state custody in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The United States Constitution does not compel states to provide post-conviction proceedings for relief. *Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 402 (2001); *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987). Therefore, "alleged errors in a post-conviction proceeding are not grounds for § 2254 review." *Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011) (per curiam). Petitioner's claim is that there was a procedural defect in the conduct of a state post-conviction proceeding, because the trial court failed to hold a hearing, and federal habeas relief is not available for such alleged defects. *Word,* 648 F.3d at 132; *see Smalls v. Bradt,* No. 1:11–CV–0915, 2012 WL 3722222 at \*10 (W.D.N.Y .Aug. 27, 2012) ("Petitioner's claim that the trial court erred in denying his CPL § 330.30 motion without conducting a hearing does not implicate federal law and is not cognizable for habeas review."); *Jones v. Duncan,* 162 F.Supp.2d 204, 217–18 (S.D.N.Y.2001) (petitioner's claim that the trial court violated his due process right by denying his Section 330.30 and 440.10 motions without holding a hearing was not cognizable on habeas review).

Accordingly, Ground Two is dismissed.

### D. Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground Three of his petition that appellate counsel was ineffective for failing to: (1) alert the Appellate Division that his sufficiency claim was preserved for review by trial counsel's statement during his summation; and (2) argue that his CPL § 330.30 motion was improperly denied without a hearing to develop the record with regard to the Wilson affidavit. Pet. at 6; Dkt. No. 1–2, Dec. at 6–7; Reply at 6–8.

Petitioner raised these claims in his writ of error coram nobis, and in his application for leave to appeal the denial of that writ in the New York Court of Appeals. Dkt. No.

17–11, Writ. The Appellate Division rejected them on the merits, and that decision is entitled to AEDPA deference. Dkt. No. 17–12, Decision and Order on Motion; *see Mosby v. Senkowski,* 470 F.3d 515, 519 (2d Cir.2006) ("Although the Appellate Division's summary rejection of Mosby's coram nobis petition did not mention Mosby's federal claim, it nonetheless constituted an adjudication on the merits.").

**\*9** The *Strickland* test was originally formulated in the context of evaluating claims of trial counsel's ineffectiveness, but the same test applies to appellate counsel. *Smith v. Robbins,* 528 U .S. 259, 285–86 (2000); *Evitts v. Lucey,* 469 U.S. 387, 394 (1985). To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance fell below an objective standard of professional reasonableness, and but for appellate counsel's errors, the results of the proceedings would have been different, *i.e.,* the error caused prejudice to the petitioner. *Smith,* 528 U.S. at 285–286; *Strickland,* 466 U.S. at 688, 694. A petitioner must show more than counsel's failure to raise a non-frivolous argument, because counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument, regardless of merit, urged by the petitioner. *Evitts,* 469 U.S. at 394; *Jones v. Barnes,* 463 U.S. 745, 751–52 (1983); *Sellan,* 261 F.3d at 317. A reviewing court must determine not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether, under *Strickland,* it was "objectively unreasonable." *Mosby,* 470 F.3d at 519. Petitioner's disagreement with the choices counsel made, even if those choices proved unsuccessful, does not render counsel ineffective. *Strickland,* 466 U.S. at 690–91.

Petitioner's first claim, that appellate counsel was ineffective for not presenting evidence on appeal that his sufficiency claim was preserved, warrants no relief. Appellate counsel likely recognized, as noted above, that trial counsel did not properly preserve petitioner's sufficiency claim. Counsel was not ineffective for failing to raise a meritless argument. *See Torres v. McGrath,* 407 F.Supp.2d 551, 562 (S.D.N.Y.2006) ("[f]ailure to make a meritless argument does not amount to ineffective assistance.") (internal quotations and citation omitted). [5]

[5] It is worth noting that the Appellate Division has the power to review unpreserved claims in the interest of justice pursuant to CPL § 470.15(3)(c). Counsel may have decided to argue petitioner's

sufficiency claim, despite the lack of preservation, in the hope that the Appellate Division exercised that power. Appellate counsel is not ineffective simply because the Appellate Division found the claim unpreserved and declined to review it in the interest of justice. *See Anderson v. Keane,* 283 F.Supp.2d 936, 946 (S.D.N .Y.2003) (noting that the Appellate Division retains "substantial authority to decide whether review is warranted, based on the entirety of the circumstances.").

Petitioner's second claim, that appellate counsel failed to argue that the trial court improperly denied his CPL § 330.30 motion without a hearing despite petitioner's request that he include this claim, also fails. It bears repeating that counsel is not required to advance every argument urged by the petitioner. *Evitts,* 469 U.S. at 394. Appellate counsel filed a brief in which he advanced the claims he believed had the greatest chance of success. Dkt. No. 17–1, Brief and Appendix at 3–10. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751–52).

In sum, the Appellate Division's rejection of petitioner's appellate counsel effectiveness claims was not objectively unreasonable, nor was it contrary to clearly established Supreme Court precedent. Ground Three of the petition is therefore denied and dismissed.

## IV. CONCLUSION
**\*10 WHEREFORE,** it is

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED;** and it is further

**ORDERED** that no certificate of appealability shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2); [6] and it is further

[6] *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) (" § 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' "); *Richardson v. Greene,* 497 F.3d 212, 217 (2d

Cir.2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (emphasis in original) (citation omitted)).

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3778587

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.